The Honorable Thomas S. Zilly
United States District Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BAO XUYEN LE, INDIVIUALLY, and as the
Court appointed PERSONAL
REPRESENTATIVE OF THE ESTATE OF
TOMMY LE, HOAI "SUNNY" LE, Tommy
Le's Father, DIEU HO, Tommy Le's Mother,
UYEN LE and BAO XUYEN LE, Tommy Le's
Aunts, KIM TUYET LE, Tommy Le's
Grandmother, and QUOC NGUYEN, TAM
NGUYEN, DUNG NGUYEN, AND
JEFFERSON HO, Tommy Le's Siblings,

                              Plaintiffs,

        vs.

MARTIN LUTHER KING JR. COUNTY as a
sub-division of the STATE of WASHINGTON,
and KING COUNTY DEPUTY SHERIFF
CESAR MOLINA,

                              Defendants.

No. 2:18-CV-00055-TSZ

DEFENDANT KING COUNTY'S
MOTION FOR SUMMARY
JUDGMENT

*Noted for: April 12, 2019*

## INTRODUCTION

Just minutes before midnight on June 13, 2017, Zachry Schwiethale and Kevin

Hernandez called 911 after each was chased by a stranger, later identified as 20-year-old

Tommy Le, who threatened them with a knife in his fist saying, "I am the Creator. I am

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 1

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

the Killer." Hernandez, so frightened by the attack just outside the door of his home, and fearing for his life, fired a warning shot into the ground near Le's feet. But rather than scare Le away, Le quickened his pace toward Hernandez lunging at him. Hernandez retreated into his house, barely slamming his front door in advance of Le stabbing his knife into the doorway. Le turned and left the scene. King County Sheriff deputies immediately responded to the victims' calls for help. Over the next 105 seconds, Le reappeared at the scene agitated, fists clenched, advancing on the deputies and, despite their attempts to get him to stop through verbal commands and the deployment of two, non-lethal Tasers, Le would not stop. Deputies were repeatedly told he had a knife, but it later turned out that his clenched fist held a black pen. Finally, King County Sheriff Deputy Cesar Molina fired his service firearm shooting Le in order to protect the lives of other deputies and the civilian victims who were still nearby.

## I.    RELIEF REQUESTED

Plaintiffs, all family relatives of Le, assert two separate federal civil rights claims and four state law claims against King County and Deputy Molina.[1] Defendant King County respectfully requests this Court grant summary judgment dismissal of all of these claims.

Most of the individually-named plaintiffs do not have standing to assert Fourth and Fourteenth Amendment claims. For the remaining plaintiffs who do, they are unable to establish racially selective law enforcement or actions by the deputies that "shock the conscience" under the Fourteenth Amendment or unconstitutional municipal customs or policies in violation of the Fourth Amendment.

Plaintiffs' separate state law claims fail for each of their own reasons, including the immunity afforded RCW 4.24.420; the public duty doctrine; the lack of qualified

---

[1] Plaintiffs' Fourth Cause of Action, the claim of Reckless or Negligent Infliction of Emotional Distress (NIED) was dismissed, with prejudice, on October 15, 2018. Dkt. 38. Plaintiffs also voluntarily dismissed their Fifth Cause of Action, Negligent Selection, Training and Supervision on February 27, 2019. Dkt 65.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 2

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

statutory beneficiaries for the wrongful death and survival statutes; the absence of extreme and outrageous behavior for the tort of outrage and the inapplicability of an independent cause of action for respondeat superior.

## II.  STATEMENT OF FACTS

1.   <u>Factual History</u>

A.   **King County Sheriff Deputies Arrive on the Scene within Minutes of Two Felony Assaults.**

On June 13, 2017, at 11:57 p.m., King County 911 dispatch received a five-minute call from a civilian, Zachry Schwiethale, who was in a residential neighborhood of Burien, Washington to visit a friend, Kevin Hernandez. Declaration of Daniel L. Kinerk (Kinerk Decl.), Exhibit 1 pg. 2; Exhibit 2, 10:21-25 - 11:1-3. Schwiethale reported an unknown stranger, later identified as 20-year-old Tommy Le, had just approached him, threatening him with a knife. Kinerk Decl., Exh. 3; Exh. 4. Schwiethale described that Le, dressed in a black shirt and black shorts with no shoes, was jogging in the street yelling, "I am the Creator," "I am the Creator of the World." Kinerk Decl., Exh. 2, 24:14-15. Upon seeing Schwiethale approaching the home of his friend Mr. Hernandez, Le veered toward Schwiethale with one of his arms raised holding something that appeared to be a knife or sharp object now saying, "I am the Killer. I am the Killer." Kinerk Decl., Exh. 2, 24:10-22. Schwiethale yelled for help, pounded on Mr. Hernandez's door and took off running to escape. *Id.* at 27:23-25 - 28:1-17.

Schwiethale called 911 to provide information for police after he had outrun his attacker but was still following him. *Id.* at 32:3-5. While on the 911 call, Schwiethale clarified "I don't know if it's a knife. It just looked like a pointy – it could have been a screwdriver, it could have been a knife, it was something he clearly was intending on harming something with – somebody with."  Kinerk Decl., Exh. 1, 5:10-15. At one point during the call, Le reversed course and began to backtrack to return to the site of the first attack again following Schwiethale. Kinerk Decl., Exh. 2, 33:7-25. Schwiethale then

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 3

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

watched in shock as his friend, Mr. Hernandez, who had come out of his house to investigate the disturbance, was also threatened at knifepoint.

At 12:00 a.m., Mr. Hernandez, called 911 to report that he had fired his personal firearm at Le who tried to attack him with a knife in front of his home. Kinerk Decl., Exh. 5, 2:14-16. Hernandez described that Le advanced toward him with a knife raised, saying, "I am the Creator, I am the Killer." Kinerk Decl., Exh. 6, 28:9. Fearing for his life, Hernandez pled for Le to stop and drop his weapon, then fired a warning shot from his personal firearm into the ground at Le's feet. *Id.* at 36:18-25-37:1-8. After hesitating a moment, Le quickened his pace toward Hernandez, lunging at him with the knife. *Id.* at 42:3-10. Hernandez retreated into his house, slamming his front door. *Id.* at 43:15-19. Out a window in the door, Hernandez saw Le stab the door and slam into it, laughing and smiling. *Id.*  Le then walked away from Hernandez's front door and north on 3rd Street South into the neighborhood. *Id.* at 47:14-25. Hernandez's next-door neighbor, Anthony Rice, also came outside with his gun, in response to Hernandez's cries for help. Kinerk Decl., Exh.7, 15:15-20.

At 12:02 a.m., just 5 minutes after the knife attack calls first came in to 911, King County Sheriff deputies began arriving at the intersection of 3rd Avenue South and South 136th St. in Burien. Kinerk Decl., Exh. 4. King County Deputy Tanner Owens arrived first in his marked police car. Declaration of Tanner Owens (Owens Decl.), ¶9. Deputies Matt Paul and Cesar Molina arrived just behind him in their marked patrol cars. Owens Decl., ¶10; Kinerk Decl., Exh. 4. Deputy Molina arrived on the scene at 12:03:11 a.m. Kinerk Decl., Exh. 4, pg. 2.

**B.      Only 105 Seconds Elapsed Between King County Sheriff Deputies Arriving on Scene to Investigate Assaults And Shots Fired to Stop Le's Threatening Advance toward Deputies and the Civilian Victims.**

Deputies Paul and Owens immediately spoke to Schwiethale, Rice and Hernandez who were standing in the yard of Hernandez's home, which is just southeast of the

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 4

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

intersection. Owens Decl. ¶14; Declaration of Matt Paul (Paul Decl.) ¶7-9. Hernandez was still on the phone with 911 and holding his firearm when police arrived. Kinerk Decl., Exh. 6, 51:15-23. Deputy Owens got out of his patrol car, firearm drawn against his chest and pointed downward, his police vehicle lights and spotlight directed at the three men because the dispatch call involved knives and a gun. Owens Decl. ¶12. Owens ordered Hernandez to drop his weapon and to end his call with 911. *Id.* at ¶13. Victim Hernandez told Deputy Owens that an Asian male, who was in a black shirt and possibly high, had attacked him with a knife just minutes earlier. Owens Decl., ¶14. Upon his arrival, Deputy Molina asked which direction Le had gone. Declaration of Cesar Molina (Molina Decl.) ¶9. Hearing from the victims that Le went north on 3rd Avenue S., Deputy Molina walked to the intersection near the middle of South 136th Street to keep watch in case Le returned while Deputies Paul and Owens continued to talk to the civilian victims. *Id.*

### i. Victims of the Attack Recognize the Suspect Returning to the Scene And Advancing Toward Deputies.

While the victims were explaining to the deputies what had just transpired, the victims yelled that Le, who earlier had a knife, was re-approaching the intersection from the north. Kinerk Decl., Exh. 6, 57:13-25-58:1-14. Hernandez yelled, "Yo, that's him. Like, that's the guy. That's the guy who was just here." *Id.* Hernandez also said to the deputies, "…be careful. You know, like, he had a – he had a knife when he, he encountered us." *Id.* Rice's father, Lawrence Rice, who also ran outside to defend Hernandez, heard Hernandez yelling at the officers to be careful, "he has a knife, he has a knife." Kinerk Decl., Exh. 8, pg. 4. The deputies responded, "Okay." Kinerk Decl., Exh. 6, 58:14.

About the same time, Deputy Owens heard Deputy Molina yelling commands such as "drop it!" Owens Decl. ¶15. He turned around and saw Deputy Molina near the middle of South 136th Street and a male standing on the north side of the road, wearing a black t-shirt, black boxer shorts and no shoes. *Id.* The male appeared angry and

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 5

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

agitated with clenched fists at his side near his waistline. *Id.* The street lights illuminated the man fairly well but Owens could not see if he was holding anything. *Id.*

Deputy Molina moved to get a better view of Le and confirmed that the man moving fast toward him from the north matched the description from dispatch. Molina Decl. ¶10. Deputy Molina also saw that Le looked very agitated, with his hands closed in a fist, holding a dark object in his hand. *Id.* at ¶10-11. Deputy Owens then holstered his firearm and drew his Taser as he began running to assist Deputy Molina, leaving Deputy Paul with the civilian victims. Owens Decl. ¶16. Deputy Paul turned momentarily shining his flashlight to the north and located Le about 30 feet away. Decl. Paul ¶10. Deputy Paul then turned his attention back to the three males in the yard whom he directed to move into the street. *Id.* at ¶11; ¶13.

### ii. Deputy Molina's Unsuccessful Attempts To Communicate With Le to Stop and Drop His Weapon.

Deputy Molina continued to attempt to communicate with Le to stop his advance after he reappeared at the scene. Both Deputy Molina and Deputy Owens were dressed in marked police uniforms with their lighted patrol cars parked in close proximity. Owens Decl. ¶7; Molina Decl. ¶14. Deputy Molina had extensive training in dealing with mentally impaired individuals and had completed the King County Sheriff's Office (KCSO) crisis intervention training only a week earlier. Molina Decl. ¶3. Hernandez recalls the deputies trying to engage Le verbally saying, "Hey, can we talk to you? We want to talk to you."  Kinerk Decl., Exh. 6, 58:15-25-59:1. He also heard deputies instructing him to "show us your hands, show us your hands." *Id.* at 59:11-12. Schwiethale noted, "They instruct him to put his arms up, to drop his weapon, to stop." Kinerk Decl., Exh. 2, 50:18-21. Schwiethale noted, "I saw him walking towards them aggressively, like he had been walking aggressively toward us ... even though I was hearing them say, Stop." *Id.* at 50:8-11. Another bystander in the neighborhood described that Le, "continued to run in um more of a trot … at the policemen an, an they started

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 6

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

yelling at him telling him to stop and he acted like he didn't even hear 'em but he just kept goin' for 'em … ." Kinerk Decl., Exh. 9, p. 3. Deputy Owens recalled that Le made noises that were audible but he did not speak to them. Owens Decl. ¶18. Neither Molina nor Owens' attempts to verbally engage Le appeared to affect him.

While Le was advancing toward the deputies his fists were clenched. Kinerk Decl., Exh. 6, 59:6-12. A bystander near the scene, civilian Corene Bohna, could not see if Le had anything in his hand, but she remarked that he, "acted like he did …The way that he was flailing his arms is like . . . he had something in his hand." Kinerk Decl., Exh. 9, p. 4. When Le did not stop or drop anything from his fists, Hernandez heard the deputies yell, "We're going to tase you." Kinerk Decl., Exh. 6, 59:13-14. Deputy Molina could still see Le's fists clenched with a "pointy object" in his right hand. Molina Decl. ¶11. King County Deputy Marty Cotchaleovitch, who just arrived on the scene, saw Le charging toward Deputies Molina and Owens, with his arm moving. Kinerk Decl., Exh. 10, 22:6-16. Again, the deputies' commands to Le did not cause him to stop or hesitate. Kinerk Decl., Exh. 2, 51:14-16.

### iii.   Deputies Molina and Owens Attempt to Stop Le's Advance by Deploying Their Tasers.

As Le continued to move toward Deputy Molina, he fired his Taser at Le's chest. Molina Decl. ¶11. The Taser did nothing to stop Le's advance toward deputies Molina and Owens. Owens Decl., ¶17. Victim Hernandez saw Le get hit by the Taser but Le kept going. Kinerk Decl., Exh. 6, 59:22-24. Hernandez observed, "So, like, when he was--so he got Tased, and then he wasn't going down; he was, like – he was yelling. And then they're, like, Show us your hand. Show us your hand. Then he was, like, coming towards the officers." Kinerk Decl., Exh. 6 at 60:15-19. Schwiethale also saw that the Taser had no effect on Le. Kinerk Decl., Exh. 2 at 51:8-9. He observed, "They deploy a Taser, which does not dissuade him. He still continues with his arm raised moving towards them [Officers]." Kinerk Decl., Exh. 22 at 5:10-11. The bystander described Le when they shot

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 7

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

the Taser, "He just didn't even act like it touched him but it did.  I mean it was hooked to him. And and he just kept, kept towards 'em . . . ."  Kinerk Decl., Exh. 9, p. 4.

Deputy Molina retreated, stepping backward and off to the side of Le. Molina Decl. ¶12. However, Le continued to run with his right hand raised above his head directly toward Deputy Owens. Owens Decl. ¶17. With Le now five to seven feet from Deputy Owens, he could see something in his right hand. Fearing that Le was holding a knife, Owens fired his Taser at Le. *Id.* at ¶ 18-19. While Le pivoted, he did not stop his advance now towards Deputy Paul and the civilians. *Id.* at ¶20.

After Deputy Owens fired his Taser and began to holster it to pull his firearm, he heard gunshots. *Id.* at ¶21. Officer Molina, believing that Le posed an immediate threat of death or serious injury to Officer Owens, other officers at the scene and the nearby civilians, fired his service weapon to stop him. Molina Decl. ¶13. Le stumbled and fell at Owens' feet. *Id.* at ¶22. Three of the bullets struck Le and three bullets struck a nearby house and fence. Declaration of Chris Johnson (Johnson Decl.), ¶5. Deputy Paul radioed dispatch that shots were fired at 12:04:56 a.m. Paul Decl. ¶14.

Over this rapidly evolving event lasting just 105 seconds, deputies responded to the victims' calls for help, which ended tragically in Le's death.

C.     **King County Sheriff Deputies Secure Le with Handcuffs and Render First Aid.**

After Le fell to the ground, King County Sheriff Deputies Blakeman, Owens, Cotchaleovitch and Paul surrounded him, but he continued to keep his hands in fists and attempted to stand up. Kinerk Decl. ¶23. Deputy Cotchaleovitch noticed that Le still held something in his hand after his fall. Kinerk Decl., Exh. 10, 24:18-19; 26:19-22. Deputy Cotchaleovitch was focused on the tip of the object cupped in Le's hand, "trying to determine whether it was a nail or an X-Acto knife or something like that." *Id.* at 33:5-8. Deputy Cotchaleovitch instructed Deputy Owens to kick it out of Le's hand before attempting to handcuff Le. *Id.* at 26:19-22. Deputy Owens did so and recalls seeing an

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 8

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

object that looked like a pen in Le's right hand. Owens Decl., ¶24. The deputies then put Le in handcuffs to secure him while providing medical aid to him. *Id.* at ¶24. Medics arrived and transported Le to Harborview Medical Center where he was later pronounced dead. Johnson Decl. ¶6. The King County Medical Examiner (Medical Examiner) took custody of Le's body on June 14, 2017, after his death at Harborview Medical Center to conduct an autopsy.

King County Major Crimes responded to the scene, and Detective Chris Johnson was the lead detective to conduct the shooting investigation. Johnson Decl. ¶4. Because Le had no identification at the time of his death, Detective Johnson worked with the Medical Examiner and the statements of bystanders to identify him. Johnson Decl. ¶7.

On June 14, 2017, Detective Johnson met with Le's father, grandmother and later that same day spoke with more of Le's family at their home after confirming Le's identity. Johnson Decl. ¶8; ¶13.

On August 31, 2017, the Medical Examiner released its report on Le's autopsy. Johnson Decl. ¶18. The report indicated that the cause of Le's death was multiple gunshot wounds to the left lateral back, the medial left back and the left wrist sustained in a confrontation with police. *Id.*

A toxicology test report dated July 26, 2017 included with the autopsy indicated that there were no drugs present in Le's system at the time of death based on a routine drug screening. *Id.* at ¶19. However, a supplemental toxicology report, dated October 24, 2017, which was requested by the Medical Examiner to test for the presence of LSD and Psilocin (associated with mushrooms) confirmed the presence of LSD in Le's blood at the time of his death. *Id.* at ¶20.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 9

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

**D.** **King County Sheriff's Office Provides Press Release Information to the Media the Day of the Incident and Supplemented that Information Nine Days Later.**

On the day of the shooting, King County Sergeant Jason Houck provided a press release to the media regarding the preliminary investigation into the shooting. Declaration of Jason Houck (Houck Decl.), ¶5, Exh. 1. The factual summary provided an overview of the 911 reports by the civilian victims regarding Le's threats with a "knife or some sort of sharp object," that KCSO deputies arrived and confronted Le ordering him to "get on the ground and drop what he was holding" and that, when Le did not comply, the deputies deployed their Tasers, which were not effective, and at that point, "one deputy fired at least 1 round, striking the suspect in the torso." *Id.*

On June 23, 2017, the King County Sheriff's Office issued a second press release in this matter. Declaration of Sergeant Cindi West (West Decl.), ¶4, Exh. 1. This release specifically identified the suspect as Tommy Le, that the object Le "had in his hand at the time of the shooting was a pen" and that the number of times Le was hit by bullets would come from the Medical Examiner's Office. *Id.*

Neither of the press releases issued by the King County Sheriff's Office stated that "Tommy Le was shot because he was attacking the deputies with a knife." Houck Decl., Exh. 1; West Decl., Exh. 1. According to Le's half-brother, Quoc Nguyen, the Le family was notified of this updated information within nine days of the shooting. Kinerk Decl., Exh. 11, 50:23-25-51:1-5. Le's aunt, Bao Xuyen Le, also confirmed this information with Detective Johnson on June 23, 2017. Johnson Decl. ¶17.

**E.** **Then King County Sheriff John Urquhart's Meeting with Le's Family and Community Forums.**

Then Sheriff John Urquhart was alerted to this officer-involved shooting in the early morning hours of June 14, 2017. Declaration of John Urquhart (Urquhart Decl.), ¶3. Subsequently, he was provided the name of decedent, Tommy Le, and arranged to meet with the family on July 7, 2017. *Id.* at ¶6. At this family meeting, the Sheriff and his Chief

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 10

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

of Staff Chris Barringer provided the family members with information regarding the facts leading up to the shooting and the next steps that would be taken. *Id.* at ¶8. The conversation was challenging due to language barriers for some of those present and because neither the Sheriff nor his Chief of Staff speak Vietnamese. *Id.*

The Sheriff also met with community leaders and attended a public forum at the Asian Counseling and Referral Services regarding the Le shooting on July 19, 2017. *Id.* at ¶9. On October 11, 2017, the Sheriff attended a meeting with the Asian Pacific Director's Coalition to discuss the status of the ongoing investigation with their leaders. *Id.* at ¶10.

Given the Sheriff's lack of previous contact with the Le family, he had no personal knowledge that any of the family would be particularly susceptible to severe emotional distress as a result of his contact with them or statements attributed to him. *Id.* at ¶11. At no time did he make remarks or statements, or discuss this ongoing investigation, or the steps to be taken regarding it, with a conscious disregard of the emotional toll it would cause them. *Id.*

## 2. **Procedural History**

On January 16, 2018, the personal representative of Tommy Le's estate, his grandmother, parents, two aunts and five siblings and step-siblings, filed a Complaint for Damages for Violation of Civil Rights and under Washington State Law against John Urquhart, Dow Constantine, King County, King County Sheriff's Office and King County Deputy Cesar Molina. Dkt. 1.[2]

On April 3, 2018, Plaintiffs filed their First Amended Complaint removing Dow Constantine as a defendant, acknowledging that the King County Sheriff's Office is a sub-division of King County and not a separate defendant, and correcting the spelling of King County Deputy Cesar Molina. Dkt. 17.

---

[2] The City of Burien contracts with King County to provide police services to Burien using King County Sheriff's Office deputies who work out of the Burien Police Department. Paul Decl. ¶2.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 11

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1

2          By Minute Order on April 5, 2018, the Court corrected the spelling of Defendant

John Urquhart. Dkt. 18.

3          On May 24, 2018, the parties filed a Stipulation and Order requesting that Plaintiffs

4    be permitted to again amend their Complaint to remove John Urquhart, Dow

5    Constantine and the King County Sheriff's Office as defendants and correcting the

6    spelling of King County Deputy Cesar Molina's name. Dkt. 25.

7           The Court granted Plaintiffs' request for leave to amend their Complaint on May

8    29, 2018. Dkt. 26. On May 30, 2018, Plaintiffs filed their Second Amended Complaint for

Damages. Dkt. 27.

9          On October 15, 2018, the Court entered a Minute Order dismissing, with prejudice,

10   Plaintiffs 'Fourth Cause of Action for Reckless or Negligent Infliction of Emotional

11   Distress and extending expert witness disclosures until mid-December. Dkt. 38.

12         The Court entered an additional Minute Order on February 7, 2019 extending the

13   discovery cutoff in this case to March 14, 2019. Dkt. 58. Then on February 8, 2019, the

Court granted in part and denied in part Defendant King County's Motion to Continue

14   the Trial Date in this matter. Dkt. 63. The Court ordered that the jury trial in this case be

15   continued to June 10, 2019 and extended certain other case scheduling dates. Dkt. 63.

16         On February 22, 2019, the parties signed a Stipulation and Order dismissing, with

17   prejudice, Plaintiff's Fifth Cause of Action for Negligent Selection, Training, and

18   Supervision. Dkt. 64. The Court signed this Stipulation and Order on February 27, 2019.

Dkt. 65.

19

20         On March 12, 2019, the parties signed and filed a Stipulation and Order

dismissing Julia Nguyen from the case. Dkt. 71.

21         The remaining causes of action against King County include alleged violations of

22   the Fourth and Fourteenth Amendments to the United States Constitution under 42

23

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 12

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

U.S.C. § 1983; State law claims of negligence; wrongful death and survival action under RCW 4.20.020 and 4.20.046; the tort of outrage; and lastly, respondeat superior. Dkt. 27.

### III.    STATEMENT OF ISSUES

1. Should decedent Tommy Le's relatives' (other than his parents) claims for violation of the Fourteenth Amendment be dismissed because they had no constitutionally protected liberty interest in the companionship of him?

2. Should the Court dismiss the Fourteenth Amendment claim alleging racially selective law enforcement by Defendant King County arising out this incident where there is no factual or legal support for it?

3. Should plaintiffs' Fourteenth Amendment due process claim be dismissed when there is no evidence the deputies "shocked the conscience" by acting with a purpose to harm unrelated to a legitimate law enforcement objective?

4. Should the individually named plaintiffs' claims of excessive force under the Fourth Amendment against King County be dismissed as they cannot be vicariously asserted?

5. Should the Court dismiss the Fourth Amendment claims brought by the Personal Representative of the Estate of Tommy Le under 42 U.S.C. § 1983 because she fails to establish any alleged unconstitutional custom or policy?

6. Should plaintiffs' state law claims against King County be dismissed under vicarious liability principles when their claims against Deputy Molina and other deputies are barred by RCW 4.24.420 and all the deputies were acting within the course and scope of their employment at the time of this incident?

7. Should plaintiffs' claims under Washington's wrongful death statutes, RCW 4.20.010 and RCW 4.20.020, be dismissed due to the absence of any first-tier or qualified second-tier statutory beneficiaries?

8. Should plaintiffs' claims under Washington's special survival statute, RCW 4.20.060, be dismissed due to the absence of any first-tier or qualified second-tier statutory beneficiaries?

9. Should plaintiffs' claims under Washington's general survival statute, RCW 4.20.046, for pain and suffering, anxiety, emotional distress, and humiliation be dismissed due to the absence of first-tier or qualified second-tier statutory

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 13

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

beneficiaries and any claims brought on behalf of the heirs be limited to lost net accumulations of the estate of Le?

10. Should the Court dismiss plaintiffs' state-law claim of outrage as a matter of law where the conduct alleged was not sufficiently extreme and outrageous nor was any emotional distress inflicted intentionally or recklessly?

11. Should the Court dismiss plaintiffs' negligence claim because there is no viable cause of action for negligent use of force recognized in Washington?

12. Should the Court dismiss plaintiffs' negligence claim because they cannot establish any legal duty and no exceptions to the public duty doctrine apply?

13. Should the Court dismiss plaintiffs' claim for respondeat superior when it is not a recognized as an independent cause of action?

## IV.     EVIDENCE RELIED UPON

King County's motion for Summary Judgment is based on the following evidence:

1.  Declaration of Daniel L. Kinerk, with exhibits;

2.  Declaration of Jason Houck, with exhibit;

3.  Declaration of Cindi West, with exhibit;

4.  Declaration of Cesar Molina, with exhibits[3];

5.  Declaration of Tanner Owens;

6.  Declaration of Matt Paul;

7.  Declaration of Leslie Groce;

8.  Declaration of Chris Johnson;

9.  Declaration of John Urquhart; and

10. The pleadings on file with the Court.

---

[3] Declaration of Cesar Molina is filed with Defendant Cesar Molina's Motion for Summary Judgment.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 14

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

# V. AUTHORITY AND ARGUMENT

## A.      Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial.**"** *Celotex Corp. v. Cotrett*, 477 U.S. 317, 324,106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir.1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

## B.      Le's Fourteenth Amendment Claims are Factually and Legally Insufficient to Survive Summary Judgment.

Plaintiffs allege that all the defendants are liable for the deprivation of Le's civil rights under the Fourteenth Amendment to be free from "racially selective law enforcement and/or the use of deadly force." Dkt. 27, p.19, lines 17-20. Plaintiffs' claims fail for the reasons outlined below.

### 1.      Le's siblings and other relatives (excluding his parents) have no constitutionally protected liberty interest in his companionship under the Fourteenth Amendment.

The Ninth Circuit has held that a sibling does not possess a constitutionally protected liberty interest in the companionship of another sibling. Neither the

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 15

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1  legislative history nor Supreme Court precedent supports an interest for siblings

2  consonant with that recognized for parents and children. *Ward v. City of San Jose,* 967

3  F.2d 280, 284, (9th Cir. 1991) citing *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir. 1984).

4  According to *Bell:*

5
> [I]f we were to hold that the federal Constitution entitles the
6
> siblings to recover for loss of society and companionship
> there could be no principled way of limiting such a holding
7
> to the immediate family or perhaps even to blood
> relationships. Obviously many human relationships stem
8
> from the "emotional attachments that derive from the
> intimacy of daily association," but we are unwilling to attach
9
> constitutional significance to such attachments outside the
> closely guarded parent-child relationship.

10 746 F.2d at 1247.

11     Plaintiffs Quoc Nguyen, Tam Nguyen, Dung Nguyen, and Jefferson Ho are all

12 siblings of Le. They have no cognizable liberty interest in their half-brother's

13 companionship under the Fourteenth Amendment, therefore their claims must be

14 dismissed.

15     The Fourteenth Amendment claims asserted by Le's aunts and grandmother are

16 likewise subject to dismissal for the same reasons - they do not possess a place similar to

17 his parents in the constitutional or statutory scheme. Decedent  Le's aunts, plaintiffs Bao

18 Xuyen Le and Uyen Le, and his grandmother, plaintiff Kim Tuyet Le's claims should also

    be dismissed.

19         **2.    Plaintiffs' Fourteenth Amendment claim as to racially selective**
               **law enforcement fails.**
20
       Without a scintilla of evidence, plaintiffs allege that "one factor that influenced
21
22 King County Sheriff Deputy Cesar Molina's decision to employ deadly force by

    shooting unarmed Tommy Le was Tommy Le being of Asian descent." Dkt. 27, p. 14,

23 lines 6-7. To succeed on a claim alleging a violation of the Fourteenth Amendment's

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 16

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

Equal Protection Clause, plaintiffs must prove that Deputy Molina, "acted in a discriminatory manner and that the discrimination was intentional." *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948 (9th Cir. 2003), *overruled on other grounds by Edgerly v. City & County of San Francisco,* 599 F.3d 946 (9th Cir. 2010). Plaintiffs must present evidence "sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that [the] decision … was racially motivated." *Id.* at 949 citing *Keyser v. Sacramento City Unified Sch. Dist.,* 265 F.3d 741, 754 (9th Cir.2001) (quoting *FDIC v. Henderson,* 940 F.2d 465, 473 (9th Cir.1991)) (alterations in original); *cf. Navarro v. Block,* 72 F.3d 712, 716 (9th Cir.1995) (stating that "a long line of Supreme Court cases make clear that the Equal Protection Clause requires proof of discriminatory *intent* or *motive*"). The uncontroverted evidence is that Deputy Molina, who is of Hispanic descent, never had any history of use of deadly force with any suspect of Asian descent. Molina Decl. ¶4. Deputy Molina had never had an encounter with Le before this incident. *Id.*

Plaintiffs must show that Defendants acted with an intent or purpose to discriminate against Le based on membership in a protected class. See *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied,* 525 U.S 1154, 119 S.Ct. 1958, 143 L.Ed.2d 63 (1999). A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant. *Id.* citing *May v. Enomoto,* 633 F.2d 164, 167 (9th Cir. 1980). Plaintiffs cannot point to any evidence that Deputy Molina or King County acted with an intent or purpose to discriminate against Le by using deadly force based on his Vietnamese descent. In addition, there is no evidence that KCSO's Use of Force policy has been applied in a racially discriminatory fashion against suspects of Asian descent. In the last ten years, 26 people have been shot by members of the KCSO. Declaration of Leslie Groce (Groce Decl.), ¶4. Of that total, only one other Asian individual was shot (not fatally). *Id.* at ¶5.

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

Plaintiffs cannot establish that the KCSO's Use of Force policy has had a disproportionate impact on an identifiable group—namely, Asian/Vietnamese individuals--because it has not. While disproportionate impact is not the sole touchstone of an invidious racial discrimination claim, plaintiffs are still required to establish some invidious or discriminatory purpose underlying the County's policy. See *Village of Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252, 264-266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Plaintiffs are unable to do and, therefore, their claims of violation of the Equal Protection Clause of the Fourteenth Amendment should be dismissed.

### 3. The Fourteenth Amendment claims of excessive force alleged by decedent Le's parents and the Estate of Le fail.

While the Ninth Circuit has recognized that parents have a Fourteenth Amendment liberty interest in the companionship and society of their children, the criteria necessary to establish such a due process violation cannot be met here. The standard that a plaintiff must satisfy to establish a due process violation under the Fourteenth Amendment is higher than the standard for excessive force claim under the Fourth Amendment. Whereas an alleged Fourth Amendment violation is evaluated under a reasonableness standard, *Ohio v. Robinette*, 519 U.S. 33, 34 (1996), "the Due Process Clause is violated by executive action only when it can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense. *County Of Sacramento v. Lewis*, 523 U.S. 833, 846, (1998).

The standard of culpability for a due process right to a familial association claim is whether the officer's conduct "shocks the conscience." *Porter v. Osborn,* 546 F.3d 1131, 1137 (9th Cir 2008). To show that an officer's conduct "shocks the conscience, "a plaintiff must demonstrate that the officer "acted with deliberate indifference," or with a "purpose to harm … that was unrelated to legitimate law enforcement objectives," which is a more demanding showing." *Id.* at 1137. The deliberate indifference standard,

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

"a[s] the very term 'deliberate indifference' implies," applies "only when actual deliberation is practical." *Lewis* at 523 U.S. 833, 851 (1998).

In determining whether excessive force shocks the conscience, the court must first ask "whether the circumstances are such that actual deliberation [by the officer] is practical." *Porter*, 546 F.3d at 1137 (quoting *Moreland v. Las Vegas Metro Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998). Where actual deliberation is practical, then an officer's "deliberate indifference" may suffice to shock the conscience. *Id.* "On the other hand, where a law enforcement officer makes a snap judgment, because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Wilkson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).[4]

In *Porter,* the court found that actual deliberation was not practical where a five-minute altercation between the officers and the victim evolved quickly and forced the officers to make "repeated split-second decisions." *Porter,* 546 F.3d at 1139. The court noted "deliberation" should not be interpreted in the narrow, technical sense, reasoning that the Supreme Court had rejected the deliberate indifference standard even in cases where an officer giving chase could have deliberated while pursuing the suspect. *Id.* at 1139-1140. Instead the heightened purpose-to-harm standard applies where a suspect's evasive actions force the officers to react quickly. *Id.* at 1140.

The uncontroverted facts in this case demand application of the purpose-to-harm standard. The rapidly-evolving incident between Le and Deputy Molina lasted approximately 105 seconds. Molina Decl. ¶3. Within seconds after Deputy Molina's arrival at the scene, Le re-appeared at the crime scene. Molina Decl. ¶10. The situation immediately escalated from Deputy Molina's use of various levels of non-deadly force to the need to deploy his service weapon all in matter of seconds. Molina Decl. ¶11.

---

[4] An example of a purpose-to-harm might be found where an officer uses force to "teach him a lesson" to a suspect or "get even." *Porter* at 1140.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 19

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

Deputy Molina said there was little time between when he directed Le to the ground and when shots were fired. Molina Decl. ¶19. He was simply trying to protect the other deputies and the civilian victims. Molina Decl.¶19. Applying this standard, there is no evidence Deputy Molina had a purpose to harm Le apart from legitimate law enforcement objectives.

Deputy Molina and the other deputies were involved in a rapidly evolving situation requiring them to make split-second judgments. Any suggestion that the deputies had time to actually deliberate and formulate an alternative plan that didn't involve deadly force, after multiple unsuccessful attempts with non-deadly force, in an unpredictable, dangerous situation was neither practical nor required. Their reactions, based on split-second decisions, were taken in response to Le's unpredictable actions.

The deputies' conduct can only be found to shock the conscience if they acted with a purpose to harm unrelated to legitimate law enforcement objectives. There is simply no evidence of conduct by the deputies that shocks the conscience. The deputies were informed that Le was armed[5], had attacked others and was a possible "220" or individual in mental crisis. Deputy Molina initially used minimal force to attempt to restrain Le in the form of verbal commands, which were unsuccessful, then non-deadly force with a Taser, which was also unsuccessful, before he finally resorted to deadly force as Le closed in on the victims he originally attacked.

Le's parents and personal representative cannot establish a substantive due process claim under the purpose-to-harm standard and their claim should be dismissed.

### C.   Plaintiffs' Fourth Amendment Claims against King County fail.

#### 1.   The individually named plaintiffs' claims of excessive force against King County in violation of the Fourth Amendment must be dismissed.

---

[5] The knife v. pen is a distinction without a difference. "While the pen is not always mightier than the sword, a properly wielded writing instrument may inflict lethal force." *Gregory v. County of Maui,* 523 F.3d. 1103, 1106 (9th Cir. 2008).

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 20

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

All of the individually named plaintiffs' § 1983 claims for recovery for alleged Fourth Amendment violations of excessive force against decedent Le should be dismissed. In *Smith v. City of Fontana*, 818 F.2d 1411, 1417 (9th Cir. 1987) *overruled on other grounds, by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999), a § 1983 civil rights lawsuit was filed by the administratrix of the decedent, as well as his children, after he was detained, assaulted and ultimately fatally shot by two police officers in response to a domestic incident. In dismissing the children's individual claims for relief under the Fourth Amendment, the Ninth Circuit held:

> "…the Supreme Court has held that "Fourth Amendment rights are personal rights … which may not be vicariously asserted." *Alderman v. United States,* 394 U.S. 165, 174, 89 S. Ct. 961, 966, 22 L.Ed.2d 176 (1969). The children were not directly subjected to excessive use of state force and therefore cannot maintain personal causes of action under section 1983 in reliance on this Fourth Amendment theory.

818 F.2d at 1417.

The same analysis applies in this case. While plaintiff Bao Xuyen Le, as personal representative of the estate of Tommy Le can assert a Fourth Amendment claim[6], she and the rest of the plaintiffs, appearing individually, cannot. Their claims must be dismissed.

### 2. The claims brought on behalf of decedent Le's estate for alleged Fourth Amendment violations must be dismissed.

Plaintiffs allege King County is liable for violation of decedent Le's Fourth Amendment right to be free from "unreasonable seizure in the form of Deputy Sheriffs' use of excessive (deadly) force." Dkt. 27, p.19, lines 11-14.

Bao Xuyen Le, the personal representative of the estate of Tommy Le, cannot establish a valid Fourth Amendment claim against King County. To do so, she must show that any Fourth Amendment violation was caused by the County's policy, custom

---

[6] This claim is subject to dismissal on other grounds, as discussed below.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 21

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1    or usage. See *Monell v. New York Dep't of Social Services,* 436 U.S. 658, 691 98 S. Ct. 2018,

2    56 L.Ed.2d 611 (1978). Thus, to state a constitutional claim  against a municipality, a

3    plaintiff must: (1) identify the specific "policy" or "custom," (2) fairly attribute the

4    policy or custom and fault for its creation to the municipality and (3) establish the

5    necessary "affirmative link" between the identified policy or custom  and the specific

6    constitutional violation. *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103

7    L.Ed.2d 412 (1989). Additionally, liability only exists where the municipality acts with

8    "deliberate indifference" to the rights of the plaintiff. *Id.* at 388, 109 S.Ct. 1197. Stated

9    another way, the plaintiff must show that the identified deficiency represents a

10   conscious choice by the municipality to expose a plaintiff to likely injury. *Merritt v.*

11   *County of Los Angeles,* 875 F.2d 765, 769-70 (9th Cir. 1989). In short, King County must be

12   the "moving force" behind the constitutional violation. *Oviatt By &Through Waugh v.*

13   *Pearce,* 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton, Ohio v. Harris*, 489 U.S.

     378, 389-91 (1989)).

14           In the absence of any formal policy, a plaintiff must identify a "longstanding

15   practice or custom which constitutes the standard operating procedure" that caused his

16   alleged constitutional deprivation. *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996)

17   (quoting *Gillette v. Delmore,* 979 F.2d 1342, 1346-47 (9th Cir. 1992)). The custom must be

18   so 'persistent and widespread' that it constitutes a 'permanent and well-settled . . .

19   policy' of the municipality. *Id.,* quoting *Monell,* 436 U.S. at 691, 98 S.Ct. 2036.

20   Municipality liability for improper practices or custom cannot be "predicated on

21   isolated or sporadic incident; it must be founded upon practices of sufficient duration,

22   frequency, and consistency that the conduct has become a traditional method of

23   carrying out policy." *Id.* (additional citations omitted). Additionally, no municipal

     liability exists if no constitutional violation occurred. *City of Los Angeles v. Heller,* 475

     U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986) (emphasis omitted).

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 22

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

There is no proof any King County formal policy violated Le's constitutional rights. Plaintiffs' complaint is fraught with references to the "unconstitutional policies, practices, and operating procedures of the King County Sheriff's Office"[7] but strikingly absent is any reference to a specific policy, practice or operating procedure. Any suggestion that King County deputies violated an unnamed KCSO General Orders Manual (GOM) provision still fails to establish the "affirmative link" between the policy and any constitutional violation. Plaintiffs' own liability expert declined to offer any opinions critical of the KCSO's policies or customs. Kinerk Decl., Exh. 12, 128:3-21.

Any argument that the deputies' actions, be it verbal commands, use of non-lethal Tasers or Deputy Molina's deployment of his service weapon equate to a Fourth Amendment violation by King County ignores the well-established rule that a municipality cannot be held vicariously liable for the actions of its officers. *Monell,* 436 at 691. ("They [local governments] are not vicariously liable under § 1983 for their employees' actions."); *Sandoval v. County of Sonoma*, 912 F.3d 509, 517, (9th Cir. 2018); *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed2d 452 (1986) citing *Monell* ("… under § 1983, local governments are responsible only for "their *own* illegal acts."). Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Connick v. Thompson,* 563 U.S. 51, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011); *Pembur, supra,* at 480-481, 106 S.Ct. 1292. Even if plaintiffs were able to establish a constitutional violation occurred, there is no evidence that King County decision makers or King County Sheriff's Office policymaking officials adopted a persistent and widespread practice of using unreasonably deadly force that practically had the force of law.

---

[7] Dkt. 27, p.17, lines 15-17.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 23

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

Plaintiffs' conclusory allegation that violation of Le's constitutional rights was attributable to "the improper selection, training and supervision of Deputy Sheriffs by the King County Sheriff's Office"[8] also fails. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." In order to prove liability on a failure-to-train theory, a plaintiff must show that a municipality's training failure "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Additionally, a plaintiff must show that "inadequate training actually caused deprivation of constitutional rights." *Merritt v. County Of Los Angeles*, 875 F.2d 765, 770 (1989). Plaintiffs cannot meet this standard.

In *Connick, supra,* the U.S. Supreme Court addressed the deliberate indifference standard in a § 1983 lawsuit alleging prosecutorial "lack of training" following an admitted constitutional violation that resulted in a prisoner's unjust conviction and incarceration. *See* 563 U.S. at 51, 131 S.Ct. 1350 at 1359. The Court stated that deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequent of his action." *Id.* at 61, 131 S.Ct. at 1360 (citing *Board of Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 410 (1997)). The Court, further emphasized that "a pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* A pattern of constitutional violations is also necessary to prove a *Monell* claim under a "failure to supervise" theory. *City of Canton*, 489 U.S. at 397-98, 109 S.Ct. 1197.

Applying these standards to the instant case, there is absolutely no evidence that any alleged constitutional violation resulted from King County's deliberate indifference

---

[8] Dkt. 27, p.17, lines 18-20. It is noteworthy that plaintiffs voluntarily dismissed their state-law claims of negligent selection, training and supervision. Dkt.65.

DEFENDANT KING COUNTY'S MOTION FOR SUMMARY JUDGMENT - 24

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

to a known need to train its deputies or from a failure to supervise them. First, no constitutional violation occurred. Second, even if one was established, plaintiffs cannot point out any pattern of similar constitutional violations by King County. Plaintiffs' conclusory allegations that King County failed to properly train or supervise its deputies, including Deputy Molina, regarding the use of deadly force are not only unsupported by the evidence, but refuted by it. Deputy Molina and Deputy Owens underwent extensive training at the police academy and received department training in a variety of subjects including, but not limited to, defensive tactics, use of force, firearms, bias based policing, tactics regarding edged weapons and contacting people with mental health issues or in behavioral crisis. Molina Decl.¶3; Owens Decl. ¶6. Plaintiffs' hindsight analysis that King County was negligent in its de-escalation training for deputies dealing with individuals "suffering from apparent mental or psychological episodes"[9] conveniently ignores that Deputy Molina completed the King County Sheriff's Office Critical Intervention Training (CIT), one week *before* this incident[10] and his extensive previous work experience in that area. Plaintiffs' Fourth Amendment claim against King County based upon policy, custom or usage must be dismissed.

> **D.    Plaintiffs' claims against all the King County Deputies, including Deputy Molina, are barred by RCW 4.24.420 and therefore, their state law claims against King County must be dismissed on vicarious liability grounds.**

It is undisputed that Tommy Le had committed at least two felonies during the course of events leading up to his shooting. Plaintiffs' own experts concede he was committing felony assaults against Zachry Schwiethale and Kevin Hernandez triggering the 911 calls and response by the KCSO deputies. Kinerk Decl., Exh. 12, 29:7-

---

[9] Le's family denies he had any history of mental illness. Kinerk Decl., Exh. 13. The Washington State Toxicology Laboratory Report did find positive results for LSD in Le's body at the time of his death. Johnson Decl. ¶20.
[10] Molina Decl.¶3.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 25

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

19**.** It is also undisputed that, under RCW 4.24.420, it is a "complete defense to any action for personal injury or wrongful death" when the person killed was engaged in the commission of a felony at the time of the injury." Summary judgment is warranted on a claim for damages for wrongful death if the decedent was engaged in the commission of a felony at the time of the occurrence causing death, and the felony was a proximate cause of the death. See *Estate of Lee ex. rel. Lee v. City of Spokane,* 101 Wn. App. 158, 2 P.3d 979 (2000).

Deputy Molina and the other KCSO deputies responded to Le's crime scene in response to 911 calls from his victims, Schwiethale and Hernandez. Le's felony crimes were a proximate cause of the ensuing actions by the KCSO Deputies. All the deputies were acting in the course and scope of their employment at the time of their use of force and, therefore, their statutory immunity under RCW 4.24.420 extends to King County under vicarious liability principles. All of plaintiffs' state law claims against King County must be dismissed.

### E.     Plaintiffs' Wrongful Death Claims Should be Dismissed as the Necessary Beneficiaries are lacking.[11]

To the extent that plaintiffs' state law claims, barred under RCW. 4.24.420, could survive dismissal against King County on vicarious liability principles, they still fail on separate grounds.

---

[11] It is unclear from plaintiffs' complaint whether they are asserting their Fourth Amendment claim in reliance on Washington's wrongful death statutes or independently. A 42 U.S.C. § 1983 claim "that accrued before death survives the decedent when state law authorizes a survival action as a 'suitable remed[y] … not inconsistent with the Constitution and laws of the United States….' " *Ostling v. City of Bainbridge Island,* 872 F. Supp.2d 1117 (2012) (citations omitted). As such, Washington law determines standing to assert Fourth Amendment claims, specifically Washington's five relevant statutes (survival statutes RCW §§ 4.20.046, 046) and three wrongful death statutes (RCW §§ 4.20.010, 020: 4.24.010). *Id.* Under the four applicable statutes, only the personal representative may assert any claims. As stated previously, only Bao Xuyen Le, as personal representative of the Le estate, can pursue a Fourth Amendment claim in this case. In addition, unlike claims asserted independently under Washington's death statutes, a § 1983 claim can include non-economic damages. *Id.* That being said, plaintiffs' Fourth Amendment claim in this case fails, rendering the scope of damages moot.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 26

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

Plaintiffs' cause of action for recovery under Washington's wrongful death statutes should be dismissed.[12] The courts have long recognized that causes of action for wrongful death strictly arise from a comprehensive set of statutes and no cause of action for wrongful death is available under common law theories in Washington. *Tait v. Wahl,* 97 Wn. App. 765, 987 P.2d 127 (1999), *review denied,* 140 Wn.2d 1015, 5 P.3d 9 (2000). Wrongful death actions in Washington are strictly statutory. RCW 4.20.010 creates a cause of action brought by the personal representative of the deceased where the wrongful act of another causes his or her death. It states:

> When the death of a person is caused by the wrongful act, neglect or default of another his or her personal representative may maintain an action for damages against the person causing the death…

RCW 4.20.020 then creates a two-tier system of beneficiaries. *Philippides v. Bernard*, 151 Wn.2d 376, 88 P.3d 939 (2004). It identifies who may recover under RCW 4.20.010 for wrongful death:

> Every such action shall be for the benefit of the wife, husband, stated registered domestic partner, child or children, including stepchildren, of the person whose death shall have been so caused. If there is no wife, husband, state registered domestic partner, or such child or children such action may be maintained for the benefit of the parents, sisters, or brothers, who may be dependent upon the deceased person for support, and who are resident within the United States at the time of his or her death.

Wrongful death actions are those brought strictly on behalf of statutory beneficiaries. As outlined above, first-tier statutory beneficiaries in such actions include (1) a spouse or registered domestic partner, or (2) a child of the decedent. In the event there are no first-tier beneficiaries, an action may be maintained on behalf of the second-

---

[12] Plaintiffs' second amended complaint cites two of Washington's wrongful death statutes, RCW 4.20.020 and RCW 2.20.046, in claiming "all the defendants are liable to the Estate of Tommy Le for compensatory damages for negligently causing the death of Tommy Le." Dkt. No. 27, p.20, lines 9-12.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 27

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

tier beneficiaries which are siblings and parents but only if they were dependent upon the decedent for support. *Id.* The term "support" is limited to financial support. *Triplett v. Washington State Dept. of Social & Health Services*, 166 Wn. App. 423, 269 P.3d 1027 (2012). Here, Le was neither married nor had any children. Kinerk Decl., Exh. 17, 116:23-24. No first-tier beneficiaries exist under RCW 4.20.020. Le never provided financial support to his parents, father Hoai Le or mother Dieu Ho, or to his siblings Quoc Nguyen, Tam Nguyen, Dung Nguyen, and Jefferson Ho so no second-tier beneficiaries can recover under RCW 4.20.020.[13] Kinerk Decl., Exh. 11, 59:7-9; Exh. 14, 11:10-20; Exh. 15, 9:13-25-10:1-12; Exh. 16, 27:1-4; Exh. 17, 116:25-117:1-8; Exh. 18, 40:21-24; Exh. 19, 29:18-21. Washington's statutory causes of action for wrongful death (and survival – see below) each require that parents be 'dependent for support' on a deceased adult child in order to recover. *Philippides v. Bernard*, 151 Wash.2d 376, 386, 88 P.3d 939 (2004). Likewise, siblings must be "dependent for support" on a deceased sibling in order to recover. *Rentz v. Spokane County*, 2006 WL 8437720 (E.D. Wash 2006).

Le's grandmother, Kim Tuyet Le and aunts, Bao Xuyen Le and Uyen Le, are not recognized as either first-tier or second-tier beneficiaries under RCW 4.20.020. Given the absence of qualified statutory beneficiaries, no viable wrongful death claims can be maintained and they must be dismissed.

### F. Plaintiffs' Survival Statute Causes of Action Fail, with the exception of Le's Net Accumulation loss under RCW 4.20.046.

Plaintiffs also assert they are entitled to recovery under Washington's survival statutes, RCW 4.20.060 and RCW 4.20.046.[14] RCW 4.20.060, the special survival statute, limits personal injury claims to those injuries connected with the decedent's death. They may only be brought by the personal representative on behalf and for the benefit of

---

[13] The undisputed evidence is just the opposite. Le's father, Hoai Le, provided Mr. Le a monthly stipend of $500 a month. Kinerk Decl., Exh.14, 13:7-14.

[14] Plaintiffs' complaint references RCW 4.20.060 in its caption but then references RCW 4.20.046 in the body of their complaint. Dkt. No. 27, p. 1, p. 20, lines 9-12.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 28

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

statutory beneficiaries identified in RCW 4.20.020. If no statutory beneficiaries exist, then the claims must be dismissed. *Benoy v. Simons*, 66 Wn. App. 56, 831 P.2 167 (1992), *review denied*, 120 Wn.2d 1014, 844 P.2d 435 (1992). Plaintiffs' claims under RCW 4.20.060 fail for the same reasons their claims under the RCW 4.20.010, the wrongful death statute, fail - there are no first-tier beneficiaries or any qualified second-tier beneficiaries. Any claims alleged under RCW 4.20.060 must be dismissed.

RCW 46.20.046, the general survival statute, preserves all causes of action that a decedent could have brought if he or she survived. *Estate of Otani v. Broudy,* 151 Wn.2d 750, 755-56, 92 P.3d 192 (2004):

> Washington's general survival statute, RCW 4.20.046(1), "does not create a separate claim for the decedent's survivor," but "merely preserves the causes of action a person could have maintained had he or she not died … Therefore, unlike the wrongful death and special survival statutes, the decedent's personal representative can recover damages under RCW 4.20.046(1) on behalf of the decedent's estate … limited to the lost net accumulations of the decedent.

*Tait v. Wahl,* 97 Wn. App. 765, 772, 774, 987 P.2d 127 (1999)

RCW 4.20.046 specifically limits recovery for damages related to pain and suffering, anxiety, emotional distress, or humiliation personal to and suffered by a deceased <u>on behalf of those beneficiaries enumerated in RCW 4.20.020</u>. Again, as there are no first-tier or qualified second-tier beneficiaries to Le under RCW 4.20.020, there can be no recovery for those type of damages under RCW 4.20.046. To the extent that the personal representative is permitted to make claims on behalf of Le's estate for distribution to heirs (as opposed to statutory beneficiaries), recovery is limited to lost net monetary accumulations of the decedent.[15] *Higbee v. Shorewood Osteopathic Hospital,*

---

[15] Plaintiffs' estate claim under this statue fails due to the inability to establish all the required negligence elements. See Section H, pp.42-47.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 29

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

105 Wn.2d 33, 38, 105 P.2d 306 (1985). All claims for damages related to pain and suffering, anxiety, emotional distress, or humiliation under RCW 4.20.046 must be dismissed if that claim could survive. The issue is moot as the claim fails.

### G.    Plaintiffs' outrage claim fails because they cannot establish the elements of this tort as a matter of law.

The Le family members claim that the defendants are liable for the tort of outrage. Dkt. No.27, p.20, lines 13-16. They cannot establish the elements necessary to proceed on this theory as a matter of law, and, therefore, it should be dismissed.

To establish an outrage claim, the plaintiffs must show (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff. *Hong Ha v. City of Liberty Lake*, No. CV–08–382–RHW2010, 2010 WL 4065491, U.S. Dist. LEXIS 110346, (E.D.Wash.2010), *citing Kloepfel v. Bokor*, 149 Wn.2d 192, 66 P.3d 630 (2003). A claim for intentional infliction of emotional distress requires the alleged conduct to be objectively "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* See also *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989) (citing *Grimsby v. Samson*, 85 Wn.2d 52, 530 P.2d 291 (1975).

In *Grimsby*, the requirements of each of these elements were outlined:

> First, the emotional distress must be inflicted intentionally or recklessly; mere negligence is not enough. Second, the conduct of the defendant must be outrageous and extreme… It is not enough that a 'defendant has acted with an intent which is tortious or even criminal, or that he intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages in another tort.' Liability exists 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 30

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

community.' ... Clearly, a case-by-case approach will be necessary to define the precise limits of such conduct. Nevertheless, among the factors a jury or court should consider are the position occupied by the defendant, whether plaintiff was peculiarly susceptible to emotional distress and defendant's knowledge of this fact, and whether defendant's conduct may have been privileged under the circumstances. Third, the conduct must result in Severe emotional distress to the plaintiff. Resulting bodily harm would, of course, be an indication of severe emotional distress, but a showing of bodily harm is not necessary. Fourth, the plaintiff must be an immediate family member of the person who is the object of the defendant's actions, and he must be present at the time of such conduct.

85 Wn.2d at 59.

### 1.   Extreme and Outrageous Conduct

The requirement of outrageousness is not an easy one to meet. *Christian v. Tohmeh,* 191 Wn. App. 709, 736, 366 P.3d 16. The level of outrageousness required is extremely high. *Id.* at 736 *citing Reigel v. SavaSeniorCare LLC,* 292 P.3d 977, 990 (Colo. Ct. App. 2011). A trial court faced with a summary judgment motion must "make an initial determination as to whether the conduct may reasonably be regarded as so 'extreme and outrageous' as to warrant a factual determination by the jury." *Doe v. Corp. of the President of the Church of Jesus Christ of Latter–Day Saints,* 141 Wn. App. 407, 429, 167 P.3d 1193 (2007) quoting *Jackson v. Peoples Fed. Credit Union,* 25 Wn. App. 81, 84, 604 P.2d 1025 (1978).

The alleged extreme and outrageous conduct plaintiffs assert consists of words, not actions, and words not about them, but about Le. They allege that King County representatives misrepresented to the public, press and Le family members that Le was shot because he was attacking the deputies with a knife. Dkt. No.27, p.17, lines 3-9.[16]

[16] For purposes of this motion only, it can be assumed *arguendo* that the information shared by the King County representatives with the Le family at their home and publicly, was as alleged in their complaint. This avoids factual disputes regarding exactly what was said and the context in which statements were

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1   While it is undisputed that no knife was recovered from Le after he was shot, it is also

2   uncontroverted that neighborhood victims Kevin Hernandez and Zachry Schwiethale

3   each called 911 reporting Le was armed with a knife, and minutes later, alerted the

4   responding deputies at the scene that Le was armed with a weapon. Kinerk Decl., Exh.

5   1, 2:3-5; Exh. 5, 2:6-9. Deputies Owens and Molina believed Le was armed with a

6   weapon immediately before deploying their Tasers. Molina Decl. ¶11; Owens Decl. ¶19.

7   Deputy Molina still believed Le was armed with a weapon at the time he discharged his

    firearm. Molina Decl. ¶13. According to the neighborhood victims, Le disappeared from

8   the scene before the deputies arrived, only to reappear a short time later brandishing

9   what was later determined to be a pen in a threatening manner.[17] Kinerk Decl., Exh. 2,

10  59:2-7; Exh. 6, 57:13-25-58:5.   The theory that Le discarded his knife en route to his

11  house or while inside and then secured a pen before returning to the scene was

12  plausible, not outrageous. It was derived from information received by the King County

    investigating detectives from the neighborhood victims and witnesses during and

13  immediately after the incident.

14      Any representation that Le was armed with a knife, which turned out instead to

15  be a pen[18], is neither extreme nor outrageous conduct. The initial information released to

16  the public in a KCSO press release was accurate. Houck Decl. ¶5. The clarification

17  contained in the second KCSO press release nine days later specifying that Le was not

18  found to be armed with a knife, but instead a pen, at the time of the shooting was neither

19  extreme nor outrageous conduct. West Decl. ¶4. In addition, the entire Le family was

20  informed of the clarification at that time. Kinerk Decl., Exh. 11, 50:23-25-51:1-5. Lastly,

21

22  made.
    [17]  The search of Le's residence up the street later that morning after obtaining a search warrant revealed a
    number of knives there. Johnson Decl. ¶21.

23  [18] It is uncontroverted Le held what turned out to be a pen in a threatening manner as he approached the
    deputies and civilian witnesses and ignored the deputies' verbal commands to stop and to drop it. Kinerk
    Decl., Exh. 2, 50:18-21

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 32

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

neither of the KCSO press releases stated Le was carrying a knife. West Decl. ¶4; Houck Decl. ¶5.

The remarks plaintiffs attribute to King County Detective Chris Johnson and former KCSO Sheriff John Urquhart[19] were neither outrageous nor extreme.  Plaintiffs allege Detective Johnson did not timely identify Le as the decedent. Detective Johnson confirmed Le as the assailant involving the civilians to the Le family only after his identity was confirmed, which occurred the day of the shooting, a fact plaintiffs now acknowledge. Kinerk Decl., Exh. 11, 51:15-25; Johnson Decl. ¶14. As for Sheriff Urquhart's remarks, his initial contact with the Le family occurred at their home and consisted of sharing some of the facts leading up to the shooting and the next steps to be taken. Urquhart Decl.¶8. He was speaking with the Le family as a criminal investigation was ongoing. Urquhart Decl. ¶8. His later remarks in a public forum as to how he personally would have apprehended Le fail to meet the outrageous or extreme conduct requirement. Outrageous conduct is conduct "which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'" *Browning v. Slenderella Sys.*, 54 Wn.2d 440, 448, 341 P.2d 859 (1959) (quoting Restatement of Torts § 46(g) (Supp.1948)).

In *Lawson v. Boeing,* 58 Wn. App. 261, 792 P.2d 545 (1990) the plaintiff, a Boeing employee, was demoted to a non-supervisory position after a company investigation into complaints about his behavior. A number of Boeing female employees complained he had touched them improperly, propositioned them and made sexually explicit comments. Lawson contended the other employees "deliberately, maliciously, and outrageously lied about him." *Id.* at 270. He argued that for purposes of summary judgment, the complaints had to be considered false, and that the false complaints were

---

[19] Sheriff Urquhart's remarks are also arguably entitled to First Amendment protections and are privileged. See *Gold Seal Chinchillas, Inc. v. State,* 69 Wn.2d 828, 832–34, 420 P.2d 698 (1966).

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 33

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

intended to be outrageous. In affirming the trial court's summary judgment dismissal of the outrage claim, the court held Lawson's allegations did not reach the "high threshold" defined in *Grimsby*. The official and informal information about Le's actions made by Detective Johnson and Sheriff Urquhart similarly do not meet the high threshold in *Grimsby*.

In *Jackson v. Peoples Fed. Credit Union,* 25 Wn. App. 81, 604 P.2d 1025 (1979) the court stated that while the question of whether certain conduct is sufficiently outrageous is ordinarily a question of fact, it is up to the court to determine in the first instance that reasonable minds could differ on whether the conduct had been sufficiently extreme and outrageous to result in liability. *Id.* at 82.

In making this determination, the court must consider: (1) the position occupied by the defendants; (2) whether plaintiffs were particularly susceptible to emotional distress, and if defendant knew this fact; (3) whether defendants' conduct may have been privileged under the circumstances; (4) whether the degree of emotional distress caused by a party was severe as opposed to mere annoyance, inconvenience, or normal embarrassment; and (5) whether the actor was aware that there was a high probability that his or her conduct would cause severe emotional distress and proceeded in a conscious disregard of it. *Id.*

The KCSO representatives who provided information to the Le family privately and to the public in press releases and public forums were responding to an ongoing and open criminal investigation in their official capacities. Johnson Decl. ¶15. They had never had any contact with the Le family prior to this incident and had no personal knowledge whether they were *particularly susceptible* to emotional distress. Johnson Decl. ¶16; Urquhart Decl. ¶5; ¶11. They were certainly unaware that there was any probability, let alone a *high* probability, that the release of the information regarding Le would cause severe emotional distress. Lastly there is no evidence they had that

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

knowledge, and still proceeded to share it in a conscious disregard of it. Johnson Decl.

¶16; Urquhart Decl. ¶11.When the conduct offered to establish the first element of the

tort of outrage is not extreme, a court must withhold the case from a jury,

notwithstanding proof of intense emotional suffering. *Brower v. Ackerly,* 88 Wn. App. 87,

101 943 P.2d 1141 (1997). King County's conduct was neither extreme nor outrageous as

a matter of law, thus plaintiffs' outrage claim fails.

### 2.    Intentional or Reckless Infliction of Emotional Distress

The intentional or reckless infliction element of emotional distress is also

deficient. The emotional distress must be inflicted intentionally or recklessly; mere

negligence is not enough. *Grimsby,* 85 Wn.2d at 58. WPI 14.03.03 defines the elements of

intentionally or recklessly causing emotional distress as follows:

> A person intentionally or recklessly causes emotional
> distress if the person:
>
> (1) acts with the intent to cause emotional distress; or
> (2) knows that emotional distress is certain or substantially
> certain to result from *[his] [her]* conduct; or
> (3) is aware that there is a high degree of probability that
> *[his] [her]* conduct will cause emotional distress and proceeds
> in deliberate disregard of it.

None of the King County representatives acted with the intent to cause the Le

family emotional distress, nor did they know that emotional distress was substantially

certain to result from issuing information regarding the Le investigation. Johnson Decl.

¶16; Urquhart Decl. ¶11. Lastly, there is no evidence they were aware that their conduct

would cause plaintiffs severe emotional distress and then proceeded to disseminate it in

deliberate disregard of it.

### 3.    Severe Emotional Distress

The third element of outrage, the establishment of *severe* emotional distress, is

absent. " 'Emotional distress' includes 'all highly unpleasant mental reactions, such as

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 35

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea.' " *Kloepfel v. Bokor,* 149 Wn.2d 192, 203, 66 P.3d 630 (quoting *872 Restatement (Second) of Torts § 46, cmt. j). However, liability arises only when the emotional distress is <u>extreme.</u> Restatement (Second) of Torts § 46, cmt. j., (emphasis added). There must be more than "'transient and trivial emotional distress.'" *Kloepfel,* 149 Wn.2d at 198, 66 P.3d 630 (quoting Restatement (Second) of Torts § 46, cmt. j). It is predictable and normal that anyone losing a loved one, no matter what the circumstances, would be saddened and upset. There is no evidence, however, that the plaintiffs suffered severe emotional distress. The plaintiffs were seen collectively on one occasion over a year after the incident by a psychologist their attorneys referred them to visit. Kinerk Decl., Exh. 11, 57:1-25-58:1-3; Exh. 17, 111:1-13. This forensic expert opined "…" As for the Le "younger family members"[20] she did not have an opinion as to a diagnosis for them as she was not asked to conduct a full assessment of any of them. Kinerk Decl., Exh. 21, p. 9.  While an objective symptomology is unnecessary for an outrage claim[21]  none of these plaintiffs sustained severe emotional distress.

Any *inference* of severe emotional distress can only be based on long-term outrageous conduct and only when the plaintiff has provided some evidence of significant emotional distress. *Sutton v. Tacoma School District No. 10,* 180 Wn. App. 859, 874, 324 P.3d 763, 874 (2014) (*Brower v. Ackerley v.* 88 Wn. App. 87, 943 P.2d 1141 (1997)(Defendant engaged in 20-month campaign of harassing telephone calls to plaintiff that included threats to injure and kill her); *Kloepfel v. Bokor*, 149 Wn.2d 192, 66 P.3d 630 (2003)(Defendant threatened plaintiff, called her home 640 times, called her

---

[20] Quoc Nguyen, Tam Nguyen, Dung Nguyen, Jefferson Ho, Uyen Le and Bao Xuyen Le. Kinerk Decl., Exh. 21, p. 2.
[21] A negligent infliction of emotional distress (NIED) claim, however, does require that element. Plaintiffs' previously dismissed their NIED claim. Dkt. 38.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 36

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

work 100 times, called the homes of men she knew several times and repeatedly drove past her house at all hours).

There is no evidence of long-term outrageous conduct. Detective Johnson's contact with certain Le family members occurred the day of the shooting. Johnson Decl. ¶8; ¶13. The clarification of the knife versus pen issue was made within nine days after the shooting in a supplemental KCSO press release. West Decl. ¶4, Exh. 1. Sheriff Urquhart's meeting with certain Le family members at their home occurred within weeks of the incident. Urquhart Decl. ¶6-8. The public forum that the Le family attended in July 2017 where Sheriff Urquhart fielded questions (and where Le family members voluntarily spoke) does not qualify as outrageous conduct, let alone long-term outrageous conduct. Ironically, some of the plaintiffs subsequently attended a public news conference to announce their intent to file a lawsuit against the defendants, thereby re-introducing the very incident they allegedly caused them public humiliation and embarrassment. Kinerk Decl., Exh. 11, 59:10-25.

Plaintiffs' fail to satisfy the severe emotional distress component of their outrage claim, thus it should be dismissed.

### 4.   Immediate Family Member Present

Lastly, *Grimsby* references two other elements necessary to proceed with a viable outrage claim - the plaintiff must be an *immediate family member* of the person who is the object of the defendant's actions, and he must be *present at the time of such conduct.* 85 Wn.2d at 61 (citing Restatement (Second) of Torts § 46 (1965) and comments thereto). The term closely related or immediate family member was addressed by this Court in *Lindsey v. Visitec Inc.,* 804 F. Supp. 1340 (1992) in which a claim for negligent infliction of emotional distress made by the fiancée of the decedent in a fatality auto accident in which she had been a passenger. In denying the claim, the court noted:

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 37

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

> The Washington courts have clearly indicated an
> unwillingness to extend recovery beyond family members
> described in the State's wrongful death statute and this
> Court is bound to apply Washington law.

*Id.* at 1344.

While the term "immediate family member" has not been directly addressed in the context of an outrage claim, the definition of those individuals in the wrongful death statutes is instructive. As outlined earlier, Le's aunts and grandmother are not beneficiaries recognized under RCW 4.20.020 and, therefore, should not be able to proceed with an outrage claim.[22] While Le's parents and siblings are identified as potential second-tier beneficiaries under RCW 4.20.020, no courts have specifically addressed the issue whether family members described in the State's wrongful death statute includes not only their relationship to the decedent under RCW 4.20.020 but whether they were also financially dependent on the decedent. As previously stated, it is uncontroverted that none of the potential statutory beneficiaries were financially dependent on Le.

In this case plaintiffs Dieu Ho, Dung Nguyen, Jefferson Ho, Tam Nguyen, Uyen Le and Quoc Nguyen were not present at the time Detective Johnson visited the Le residence. Kinerk Decl., Exh. 11, 31:11-23; Exh. 15, 18:9-14; Exh. 16, 25:3-11; Exh. 18, 23:6-23; Exh. 19, 21:22-25; Exh. 20, 23:24-25-24:9. Plaintiffs Dung Nyuyen, Hoai Le, Jefferson Ho, and Tam Nguyen were not present at the Le residence when Sheriff Urquhart visited there. Kinerk Decl., Exh. 14, 19:10-15; Exh. 16, 25:19-22; Exh. 18, 26:9-12; Exh. 19, 22:1-6. Simply put, many of the plaintiffs, assuming their status as immediate family members, were not present when these KCSO representatives allegedly engaged in extreme and outrageous conduct. Therefore, they have no viable outrage claim.

---

[22] In *Percival v. General Electric Co.*, 708 F.Supp.2d 1171 (2010), the court ruled that in "bystander" NEID claims, grandchildren were not excluded from the class of potential plaintiffs. The extent of that bystander NEID claim was subsequently distinguished in *Watson v. City of Vancouver*, 2014 WL 1778401.

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

King County's alleged actions, even viewed in a light most favorable to plaintiffs, were not "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency…" See *Vargas Ramirez v. United States*, 93 F.Supp.3d 1207, 1234-35 (W.D.Wash. 2015). King County's actions were neither intentionally nor recklessly inflicted nor resulted in severe emotional distress. Lastly, the actions did not occurr in the presence of all of the plaintiffs, and some of whom who were present do not meet the "immediate family member" requirement under RCW 4.20.020. Plaintiffs are unable to establish all the elements of outrage, thus their claim should be dismissed.

### H.    Plaintiffs' Negligence claim is Legally Insufficient and, therefore, fails.

Plaintiffs' caption in their second amended complaint references negligence but they do not list it as one of their causes of action. Dkt. 27, p.1; pgs. 19-21. Rather, within the body of their complaint, they assert "the negligence of the King County's Sheriff's Office was a contributing cause of the death of Tommy Le. " Dkt. 27, p. 18, lines 1-2. They further assert that the "Defendants … negligent shooting and killing of Tommy Le … caused the Plaintiff Le family to suffer emotional and psychological harm." *Id.* at p. 16, lines 12-14. Lastly, they contend that by virtue of the facts set forth in their complaint, King County is liable for "negligent selection, training, and supervision of the King County Deputy Sheriffs, including Deputy Cesar Molina." *Id.* at p, 21, lines 1-3.[23] All of these claims fail for the reasons set forth below.

#### 1.    Plaintiffs cannot premise a negligence claim on an intentional act, so any negligence claims based on the shooting must be dismissed.

To the extent plaintiffs' negligence claim is predicated upon Deputy Molina's use of deadly force, such a claim is not cognizable. This Court has held that a plaintiff may not base a claim on an intentional act, like excessive force. See *Willard v. City of*

---

[23] Plaintiffs voluntarily dismissed their Fifth Cause of Action for Negligent Selection, Training and Supervision. Dkt. 65.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 39

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

*Everett*, 2013 U.S. Dist. LEXIS 126409, 2013 WL 4759064 at 4-5 (W.D. Wash. Sept. 4, 2013) (citing *Nix v. Bauer*, 2007 U.S. Dist. LEXIS 14951, 2007 WL 686506 at 4 (W.D. Wash. Mar. 1, 2007); *Tegman v. Accident & Med. Investigations, Inc.*, 150 Wn.2d 102, 75 P.3d 497 (2003) ("fault" within the meaning of RCW Chapter 4.22 which encompasses liability for negligence, does not include intentional acts or omissions). See also *Brutsche v. City of Kent*, 164 Wn.2d 664, 679 193 P.3d 100 (2008) (declining to address negligence claim where officer's act of breaching the door on plaintiff's was intentional, nor accidental); *Roufa v. Constantine*, 2017 U.S. Dist. LEXIS 4966, at 30-31 (W.D. Wash. Jan. 11, 2017) (plaintiff cannot base a claim of negligence on alleged intentional actions, such as excessive force or unlawful arrest); *Lawson v. City of Seattle*, 2014 U.S. Dist. LEXIS 55883, at 37-40 (W.D. Wash. Apr. 21, 2014). See also Ninth Circuit Model Civil Jury Instruction 9.12 ("A person acts 'intentionally' when the person acts with a conscious objective to engage in a particular conduct.").

In this case, there is no evidence to establish that Deputy Molina's discharge of his service weapon was accidental. He clearly intended to discharge his weapon at suspect Le. Molina Decl. ¶22. The same analysis applies to the Deputy Molina and Deputy Owens' deployment of their Tasers. Molina Decl. ¶11; Owens Decl. ¶25. Their application of non-lethal and lethal force was intentional and, therefore, those acts cannot support a negligence claim.

There is no recognized theory of negligent use of force in Washington because it is inapposite to allege the negligent commission of an intentional act.

I.   **The public duty doctrine bars plaintiffs' negligence claims not premised on Deputy Molina's use of deadly force.**

In order to establish a viable negligence claim, a plaintiff must submit competent and credible evidence of a legal duty owed by the defendants, that the defendants breached that duty, that the duty resulted in injury, and that the breach of duty was the proximate cause of plaintiff's injury. See *Hartley v. State*, 103 Wn.2d 768, 698 P.2d 77

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 40

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1   (1985). The existence of a duty is the threshold question in any negligence action and the

2   action will fail if no duty is established. *Cummins v. County*, 156 Wn.2d 844, 852, 133 P.3d

3   458 (2006). The existence of a legal duty is a pure question of law. *Folsom v. Burger King*,

4   135 Wn.2d 658, 671, 958 P.2d 301 (1998).

5          The public duty doctrine is a focusing tool, used by the court to determine the

6   scope of the duty owed by governmental entities under the specific circumstances of the

7   case. *Moore v. Wayman*, 85 Wn. App. 710, 717, 934 P.2d 707, review denied, 133 Wn.2d

8   1019 (1997). The doctrine recognizes that some duties owed by the government are duties

9   imposed for the good of society as a whole and as such, those duties will not generally

10  support a negligence action.[24] In other words, "<u>governments, unlike private persons, are

11  tasked with duties that are not legal duties within the meaning of tort law</u>." *Washburn v.

    City of Federal Way*, 178 Wn.2d 732, 753, 310 P.3d 1275 (2013).

12         "Where the plaintiff claims the government entity has breached a duty owed to the

13  public in general, he or she may not recover in tort for lack of an actionable legal duty."

14  *Id.* Thus, a plaintiff seeking recovery from a municipal corporation in a negligence action

15  must show that the duty breached was owed to the injured plaintiff as an *individual*, as

16  opposed to society at large ("a duty to all is a duty to no one"). Washington courts have

    consistently held that the duties owed by police "are owed to the public at large and are

17

18  [24] In *Munich v. Skagit Emergency Comm'n Center*, 175 Wn.2d 871, 879, 288 P.2d 328 (2012), in a concurring
    opinion, Justice Chambers asserted that the public duty doctrine only applied to functions required by
    statute (as opposed to functions that have been deemed to be governmental, instead of proprietary).

19  While later courts have continued to analyze the application of the public duty doctrine by reference to
    governmental versus proprietary functions (and without reference to statutorily imposed duties) (see,

20  e.g., *Sunshine Heifers, LLC v Dep't of Agric.,* 188 Wn. App. 960, 966-68, 355 P.3d 1204, 1208-09 (2015); *Fabre v
    Town of Ruston,* 180 Wn. App. 150, 159-60, 321 P.3d 1208, 1213 (2014)), this distinction is of no import

21  when analyzing application of the doctrine to law enforcement activities. Law enforcement is a uniquely
    governmental function, one specifically authorized by constitutional police powers and mandated by

22  statute. See Fourth Amendment to the United States Constitution; Article XI, section 11 of the Washington
    Constitution; RCW §35.22.280(35)(2015) (tasking first class cities with duty and authority to enforce the
    laws and keep the peace). See also *Munich,* 175 Wn.2d at 895 (Chambers, *concurrence*) ("We must

23  recognize that some governmental functions are not meaningfully analogous to anything a private person
    or corporation might do.")(citing *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 252-53, 407
    P.2d 440 (1965)).

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 41

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

unenforceable as to individual members of the public." *Chambers-Castanes v. King County,* 100 Wn.2d 275, 284, 669 P.2d 451 (1983). "The relationship of police officer to citizen is too general to create an actionable duty. Courts generally agree that responding to a citizen's call for assistance is basic to police work and not special to a particular individual." *Torres v. City of Anacortes,* 97 Wn. App. 64, 74, 981 P.2d 891 (1991) (rev. denied 140 Wn.2d 1007) (2000). Therefore, in order to establish their negligence claims, plaintiffs must first establish an exception to the public duty doctrine which would establish a particularized duty owed to Le.

In Washington, the four recognized exceptions to the public duty doctrine are: (i) the legislative intent exception, (ii) the failure to enforce exception, (iii) the rescue doctrine exception, and (iv) the special relationship exception. See *Cummins v Lewis County,* 156 Wn.2d 844, 853, 133 P.3d 458 (2006). If plaintiffs cannot establish one of these four exceptions, then no liability may be imposed for a public officer's negligent conduct, based on the reasoning that a duty was not owed specifically to the individual plaintiff, as opposed to the public in general. *Cummins,* 156 Wn.2d at 852.

During the course of discovery, plaintiffs have not identified any facts to establish any of the recognized exceptions to the public duty doctrine. With regards to the first three exceptions, no applicable regulatory statute has been cited that evidences a clear legislative intent to identify and protect a particular and circumscribed class of persons; no statute has been identified that defendants were responsible for enforcing and failed to enforce despite actual knowledge of a violation thereof, and no allegation has been made that defendants assumed a duty to warn or come to Le's aid. See *Bailey v. Town of Forks,* 108 Wn.2d 262, 268, 737, P.2d 1257 (1987); *Honcoop v. State,* 111 Wn.2d 182, 188-90, 759 P.2d 1188 (1988). Nor are plaintiffs able to establish that Le had a special relationship with the County or its deputies. To establish a special relationship creating an actionable duty on the part of a governmental entity, plaintiffs must show: (i) Le had direct contact or

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 42

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

privity with a public official, thereby setting him part from the general public; (ii) the public official gave "express assurances" to him; and (iii) he justifiably relied on such express assurances to detriment. See *Cummins*, 156 Wn.2d at 854. In this case, there is simply no evidence to support that any of the elements of this exception. No basis exists for concluding that King County or any of its deputies owed Le a duty specifically and apart from the duty owed to the public in general.[25]

**J.     Respondeat Superior is not a Recognized Cause of Action and should be dismissed.**

The doctrine of respondeat superior "imposes liability on an employer for the torts of an employee who is acting on the employer's behalf." *Niece v. Elmview Group Home*, 131 Wn.2d 39, 929 P.2d at 420 (1997). Respondeat superior, however, "is not an independent cause of action." *Zellmer v. Constantine*, No. C10-1288MJP, 2015 WL 1611939, at *3 (W.D. Wash. Apr. 9, 2015); *Fulbright v. Dayton Sch. Dist. No. 2*, No. C13-0030TOR, 2013 WL 1497388, at *6 (E.D. Wash. Apr. 10, 2013) ("Respondeat superior ... is a theory of liability rather than a separate cause of action." (citing *Hollinger v. Titan Capital Corp*, 914 F.2d 1564, 1576-77 n.28 (9th Cir. 1990)). Plaintiffs have no basis to assert a vicarious liability theory against a King County for their federal civil rights claims. As for their state law claims, King County readily acknowledges Deputy Molina and the other King County deputies were acting in the course and scope of their employment at the time of this incident. (Dkt. No. 33, p.5, lines 3-6). That, however, does not transform respondeat superior into a separate, standalone cause of action. Plaintiffs' inability to

---

[25] As this Court in *Willard* noted, the Supreme Court's decision in *Robb v. City of Seattle*, 176 Wn.2d 427, 295 P.3d 212 (2013), does not change application or analysis of the public duty doctrine. In *Robb*, the Supreme Court recognized that police *misfeasance*, as opposed to *nonfeasance*, could give rise to a duty absent a special relationship; that duty, however, was the duty to control the conduct of a third person so as to prevent him or her from causing harm to another. *Id* at 433-29. In this case, no contention is made that King County and its deputies failed to protect Le from some third person, and the *Robb* decision has no applicability. Accord *Washburn v City of Federal Way*, 178 Wn.2d 732, 753, 310 P.3d 1275 (2013) (citing Restatement §302B and the *Robb* case to support the contention that a duty arises to control the conduct of a third person in situations of misfeasance).

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 43

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

establish the necessary elements of a viable negligence claim outlined above defeats their state law claims. Therefore, plaintiffs' cause of action for respondeat superior should be dismissed.

## VI.   CONCLUSION

King County respectfully requests the Court grant its motion for summary judgment. Individual plaintiffs Bao Xuyen Le, Uyen Le, Kim Tuyet Le, Quoc Nguyen, Tam Nguyen, Dung Nguyen, and Jefferson Ho are decedent Le's siblings and non-parental relatives and, therefore, have no viable Fourteenth Amendment claims. Le's parents, plaintiffs Hoai "Sunny" Le and Dieu Ho, and Bao Xuyen Le, as Personal Representative of the Estate of Tommy Le, cannot establish racially selective law enforcement in violation of the Equal Protection Clause and therefore, this claim fails. There is no evidence that the King County deputies engaged in conduct that "shocked the conscience" with a purpose to harm unrelated to legitimate law enforcement objectives in violation of the Due Process Clause of the Fourteenth Amendment and, therefore, these claims must be dismissed.

All the individually named plaintiffs in this action are precluded from asserting a claim of a Fourth Amendment violation of excessive force. Plaintiff Bao Xuyen Le, the personal representative of Le's estate cannot establish King County engaged in an unconstitutional custom, policy or practice, thus their Fourth Amendment claim must be dismissed.

Plaintiffs Bao Xuyen Le, Uyen Le, Kim Tuyet Le, Quoc Nguyen, Tam Nguyen, Dung Nguyen, Jefferson Ho, Hoai "Sunny" Le and Dieu Hos' wrongful death claims under RCW 4.20.010 and 4.20.020 must be dismissed because they are neither first-tier nor qualified second-tier statutory beneficiaries.

Plaintiffs  Bao Xuyen Le, Uyen Le, Kim Tuyet Le, Quoc Nguyen, Tam Nguyen, Dung Nguyen, Jefferson Ho, Hoai "Sunny" Le and Dieu Hos'  survival claims under

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 44

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

RCW 4.20.060 must be dismissed because they are neither first-tier nor qualified second-tier statutory beneficiaries.

Plaintiffs' claims for outrage must be dismissed because King County's conduct was neither extreme nor outrageous nor was any severe emotional distress inflicted intentionally or recklessly.

Plaintiffs' claims for negligence must be dismissed due to lack of a cognizable claim predicated upon Deputy Molina's or Deputy Owen's intentional use of force and lack of a legal duty under the public duty doctrine. This includes the general survival claim asserted by the personal representative of the Le estate on behalf of the estate heirs under RCW 4.20.046, limited to lost net monetary accumulations of Le, because of the inability to establish all the requirements of a viable negligence claim.

Finally, plaintiffs' cause of action for respondeat superior is not a recognized cause of action and must be dismissed.

DATED this 21st day of March, 2019 at Seattle, Washington.

DANIEL T. SATTERBERG
King County Prosecuting Attorney


/s/Daniel L. Kinerk
/s/Kathy Van Olst
DANIEL L. KINERK, WSBA #13537
KATHY VAN OLST, WSBA #21186
Senior Deputy Prosecuting Attorneys
Attorneys for Defendant King County
King County Prosecuting Attorney
500 Fourth Avenue, Suite 900
Seattle, WA. 98104
(206) 296-8820   Fax (206) 296-8819
dan.kinerk@kingcounty.gov
kathy.vanolst@kingcounty.gov

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 45

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1

## CERTIFICATE OF MAILING AND SERVICE

2

3       I hereby certify that on March 21, 2019, I electronically filed the foregoing

document(s) with the Clerk of the Court using the CM/ECF System which will send

4       notification of such filing to the following participants:

5

6                              **Jeffrey M. Campiche**
                              **Philip G. Arnold**
7                           **Attorneys for Plaintiffs**
                           **CAMPICHE ARNOLD PLLC**
8                          **1201 Third Ave, Suite 3810**
                              **Seattle, WA 98101**
9                              **(206) 281-9000**
                       **jcampiche@campichearnold.com**
10                       **parnold@campichearnold.com**

11

12                           **Timothy R. Gosselin**
                     **Attorney for Defendant Cesar Molina**
13                        **GOSSELIN LAW OFFICE, PLLC**
                        **1901 Jefferson Ave., Suite 304**
14                           **Tacoma, WA 98402**
                              **253-627-0684**
15                        **tim@gosselinlawoffice.com**

16       I declare under penalty of perjury under the laws of the United States and the

17       State of Washington that the foregoing is true and correct.

18

19       DATED this 21st day of March, 2019 at Seattle, Washington.

20

21                              s/*Angela Lindsey*_____
                              ANGELA LINDSEY
22                              Legal Secretary
                              King County Prosecuting Attorney's Office
23

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 46

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819