1                                                          The Honorable Thomas S. Zilly

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
8                                      AT SEATTLE

9    BAO XUYEN LE, INDIVIDUALLY, and as the
     Court appointed PERSONAL
10   REPRESENTATIVE OF THE ESTATE OF                    No. 2:18-CV-00055-TSZ
     TOMMY LE, HOAI "SUNNY" LE, Tommy
11   Le's Father, DIEU HO, Tommy Le's Mother,
     UYEN LE and BAO XUYEN LE, Tommy Le's
12   Aunts, KIM TUYET LE, Tommy Le's                    DEFENDANT KING COUNTY'S
     Grandmother, and QUOC NGUYEN, TAM                  REPLY IN SUPPORT OF MOTION
13   NGUYEN, DUNG NGUYEN, AND                           FOR SUMMARY JUDGMENT
     JEFFERSON HO, Tommy Le's Siblings,
14
                                                        *Noted for: April 12, 2019*
15                                      Plaintiffs,

16          vs.

17   MARTIN LUTHER KING JR. COUNTY as a
     sub-division of the STATE of WASHINGTON,
18   and KING COUNTY DEPUTY SHERIFF
     CESAR MOLINA,
19
                                        Defendants.
20

21

22                                   **INTRODUCTION**

23          Plaintiffs' Response reflects they have abandoned the following claims asserted

     in their Second Amended Complaint for Damages against King County:

DEFENDANT KING COUNTY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT - 1

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

- All of plaintiffs' Fourteenth Amendment claims alleging racially selective law enforcement.

- All of the plaintiffs' Fourth Amendment claims alleging excessive force as no vicarious liability principles apply.

- All of plaintiffs' claims under Washington's death statutes, RCW 4.20.010 and RCW 4.20.020, due to the absence of any first-tier or qualified second-tier statutory beneficiaries.

- All of plaintiffs' claims under Washington's special survival statute, RCW 4.20.060, due to the absence of any first-tier or qualified second-tier statutory beneficiaries.

- All of plaintiffs' claims of negligence predicated on use of force.

- All of plaintiffs' claims asserted under respondeat superior.

The evidence plaintiffs submitted in support of their single, remaining federal claim against King County under *Monell,*[1] and the state claims under RCW 4.20.046 (personal representative only) and the tort of Outrage fails to create genuine issues of material fact and, thus, all of these remaining claims should be dismissed.[2]

## I.   AUTHORITY AND ARGUMENT

### A. Plaintiffs' *Monell* Claim is Factually and Legally Insufficient to Survive Summary Judgment

A municipality may be liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury**."** *Monell v. Dep't. of Soc. Serv.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Monell* liability will only attach if the plaintiff suffered an underlying constitutional violation. See *County of Sacramento v. Lewis,* 523 U.S. 833, 837-8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (no liability where there

---

[1] Local governments *cannot* be held vicariously liable for their employees' constitutional violations. *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013). Therefore, plaintiffs' (Le's parents and the personal representative of the Le estate only) constitutional claim against King County is under *Monell*.
[2] On page 13 of their 80 page brief, plaintiffs concede that these are the sum total of all their actual claims. Dkt. 108 at p. 13, lines 2-18.

DEFENDANT KING COUNTY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT - 2

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

is no underlying constitutional right violated); *Cooper v. Dupnik,* 924 F.2d 1520, 1528 (9th

Cir. 1991) ("If the conduct of the individual officers is not a constitutional violation, then

the fact that the two law enforcement departments condoned such conduct cannot turn it

into one."). Plaintiffs cannot establish Deputy Molina committed a constitutional

violation and even if they could, municipal liability does not follow in this case. Liability

under *Monell* cannot be imposed by proof of a single incident of unconstitutional activity

unless proof of the incident includes proof that it was caused by an existing

unconstitutional policy, which policy can be attributed to a municipal policymaker.

*Sanders v. City of Bakersfield,* 2005 WL 6267361.

Municipal liability may arise under § 1983 under three separate ways:

> First, the plaintiff may prove that a city employee committed
> the alleged constitutional violation pursuant to a formal
> governmental policy or a longstanding practice or custom
> which constitutes the standard operating procedure of the
> local government entity. Second, the plaintiff may establish
> that the individual who committed the constitutional tort
> was an official with final policy-making authority and that
> the challenged action itself thus constituted an act of official
> governmental policy. Whether a particular official has final
> policy-making authority is a question of state law. Third, the
> plaintiff may prove that an official with final policy-making
> authority ratified a subordinate's unconstitutional decision
> or action and the basis for it.

*Gillette v. Delmore,* 979 F.2d 1342, 1346-47 (9th Cir. 1992).

Plaintiffs have tacitly conceded the lack of viability of their claims based on the

first two theories and limited their argument to the third theory of liability – ratification,

which fails as well.[3] Municipal liability under this theory of section 1983 attaches only

where "a deliberate choice to follow a course of action is made from among various

---

[3] Dkt.108 at p. 39-42. Plaintiffs' argument that King County "conflates the ratification policy with the custom or usage theory" is misplaced. King County simply established and plaintiffs' Response reflects that they cannot establish any alleged constitutional violation by the KCSO deputies was the result of a longstanding practice or custom.

DEFENDANT KING COUNTY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT - 3

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–84 (1986) (plurality opinion); *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988).

A plaintiff must show that an individual with final policymaking authority ratified a subordinate's unconstitutional action and the basis for that action. *Jenssen v. County of Fresno*, 2019 WL 132271 (2019) (citing *Gillette v. Delmore,* 979 F.2d 1342 (1992)). The policymaker must approve of the improper basis for the decision. *Ellins v. City of Sierra Madre*, 710 F.3d 1049 (9th Cir. 2013) (citing *Clothier v. Cty. of Contra Costa,* 591 F.3d 1232, 1253 (9th Cir. 2010)("As we stated in *Gillette,* '[t]o hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983 law [creating an] end run around *Monell.'"))*; *Estate of Levy v. City of Spokane,* 534 Fed. Appx. 595 *(2013)(*"Here, plaintiffs point to no evidence to support their ratification theory. For instance, plaintiffs never identify the relevant "authorized policymakers" for any defendant. [citation omitted] Nor do plaintiffs present evidence that demonstrates that any authorized policymaker approved of the individual defendants' actions.").

Plaintiffs' state in their Response that the King County Sheriff was the final policymaker for purposes of establishing liability against defendant King County under a *Monell* ratification theory in this case.[4] Plaintiffs, however, fail to prove this critical prerequisite for establishing their ratification theory. First, plaintiffs produce no evidence in support of their assertion that Sheriff Mitzi Johanknecht was the final policymaker on behalf of King County on this issue.[5] Plaintiffs have also failed to produce any law that Sheriff Johanknecht was the final policy-making authority. As the court in *Gillette* stated, "[w]hether a particular official has final policy-making authority

---

[4] Dkt. 108 at p. 72, line 15.

[5] Plaintiffs' only citation in support of this assertion is contained in a footnote to their briefing citing to the KCSO General Orders Manual chain of command section regarding the ranks of authority and the internal chain of command within the KCSO. Dkt. 108 at pg. 72, fn. 293.

DEFENDANT KING COUNTY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT - 4

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

is a question of state law." Accordingly, plaintiffs have failed to adequately establish for the record the identity of the final policy decision maker under *Monell*.

More importantly, even if one assumes the final policy maker was the King County Sheriff, plaintiffs have produced no evidence of the Sheriff's involvement in this matter. Plaintiffs have produced no evidence that she approved or rejected the findings and recommendations from the administrative review of the incident by the KCSO Use of Force Review Board. Nor have plaintiffs produced evidence that the Sheriff made any pronouncements, demonstrating a conscious, affirmative choice to ratify the findings of the Use of Force Review Board findings and recommendations.[6] In fact, the KCSO press release announcing the release of the Use of Force Review Board findings does not contain any comments from the Sheriff. Supplemental Declaration of Daniel L. Kinerk (Kinerk Supp. Decl.), ¶3, Exh. 1. Moreover, plaintiffs present no evidence that the Sheriff knew that the action of the involved deputy was unconstitutional and yet ratified the conduct of the deputy or the decision of the Use of Force Board despite such knowledge. Plaintiffs are obligated to present evidence of a "conscious, affirmative choice" on the part of the authorized policymaker before liability can be imposed under the *Monell* ratification theory and they do not. *Gillette*, 979 F.2d at 1347.

While plaintiffs' attempt to deflect their failure to produce this evidence by stating that the KCSO failed to produce any such documentation of it[7], if plaintiffs truly believed such documentation existed, a motion to compel could have been filed, and none was. In addition, plaintiffs could have taken the deposition of the Sheriff, but none was taken. Kinerk Supp. Decl. ¶6. Recognizing this fatal flaw in their ratification argument, plaintiffs assert that because no documentation was provided, the Sheriff has

---

[6] Clearly, plaintiffs' statements regarding former Sheriff John Urquhart's alleged remarks regarding how he might have apprehended Le by wresting him to the ground, do not rise to a conscious, affirmative choice to ratify Deputy Molina's use of force. Arguably, it suggests the opposite. It certainly doesn't introduce a genuine issue of material fact regarding ratification.

[7] Dkt. 108 at p. 72, line 2-3.

DEFENDANT KING COUNTY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 5

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1   "given final approval . . . *by default.*"[8] Clearly, there is no basis in law to infer ratification

2   "by default" so as to impose liability against King County under *Monell.*

3          Examining plaintiffs' ratification theory further, plaintiffs' reliance on *Thomas v.*

4   *Cannon* to establish liability under a ratification theory here is misplaced due to

5   important factual distinctions between this case and that matter. In *Thomas v. Cannon,*

6   2017 WL 2289081 (2017), the court denied the defendant city's motion for summary

7   judgment on plaintiffs' *Monell* ratification theory, holding that a rational jury could find

8   that the officer's decision to shoot was not constitutionally justified and that the city,

9   through its Shooting Review Board ratified that unconstitutional decision by

10  determining it was lawful and within policy. *Id.* at 13. This case, however, is not akin to

11  *Thomas* in one critical manner. In *Thomas,* the Assistant Chief of Police for defendant

12  Lakewood who was also the officer overseeing field operations during the subject

13  incident, was the ranking member of the Shooting Review Board. *Id.* at 3, 7. Here, there

14  is no evidence that the Sheriff in this case had any involvement in the KCSO Use of

15  Force Review Board, nor did she make any pronouncements regarding their findings,

16  nor was she involved in the incident. Because plaintiffs have failed to present any

17  evidence to establish that Sheriff Johanknecht constituted the final policy maker for the

18  County on this matter, or that, even if she was the official policymaker, she approved of

19  or ratified the findings of the KCSO Use of Force Board, plaintiffs' *Monell* ratification

20  theory must fail on that basis.

21         Plaintiffs' also cite *German v. Roberts,* 2017 WL 6547472 (2017) in support of the

22  proposition that "[a] sham investigation supports a *Monell* claim"[9] and state that the

23  Use of Force Review Board hearing here was also faulty. However, plaintiffs' assertions

    are incorrect in law and in fact. The court in *German*, like the court in *Kanae v. Hodson,*

    294 F.Supp.2d 1179, 1191-92 (D. Haw. 2003) found that *Monell* liability under the

---

[8] Dkt. 108 at p. 72, line 5.
[9] Dkt. 108 at p. 75, line 3.

DEFENDANT KING COUNTY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT - 6

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

ratification theory requires "something more" than "an investigative group accept[ing] an officer's version over a victim's differing version" of the circumstances surrounding a shooting. 2017 WL 6547472 at 4 (citing *Kanae,* 294 F.Supp.2d at 1191). The court noted, "[r]atification … generally requires more than acquiescence." 2017 WL 6547472 at 2 (citing *Sheehan v. City & Cty. of San Francisco,* 743 F.2d 1211, 1231 (9th Cir. 2014), *rev'd on part on other grounds, City & Cty. of San Francisco v. Sheehan,* 135 S. Ct. 1765 (2015)). In concluding that the review board process was not flawed in *German*, the court noted that the shooting review board considered numerous reports, some of which supported the officer's account and some of which created factual questions. *Id.* However, the court stated that "[i]n reaching its decision to believe [the officer's] description of the shooting, the review board neither unreasonably relied on any particular unbelievable evidence nor disregarded any compelling evidence. *Id.* (citing *Larez v. City of Los Angeles,* 946 F.2d 630 (9th Cir. 1991)). The court also noted that the City had "no history of ignoring unfavorable evidence over credible allegations." *Id.* Because the court found that the review board and the Chief of Police had relied upon the factual account of the officer to determine the shooting was within the City's use of force policy and because plaintiff failed to present material evidence showing the internal investigation was genuinely flawed, the court in *German* granted the City's motion for summary judgment. *Id.* at 4-5.

Plaintiffs have failed to present this court with evidence that KCSO's Use of Force Review Board had a history of ignoring unfavorable evidence over credible allegations. Further, their contention that the KCSO Use of Force Review Board investigation was negligent and the hearing deficient, resulting in ratification of Deputy Molina's use of force is factually inaccurate and legally insufficient. For instance, plaintiffs assert that Deputy Molina was not disciplined following the shooting and instead received a paid promotion, the clear inference being he was rewarded for his

DEFENDANT KING COUNTY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT - 7

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

use of deadly force.[10] The undisputed evidence is Deputy Molina received a pay raise shortly after the June 14, 2017 incident because he was assigned to work on an undercover operation requiring a Spanish–speaking deputy. Supplemental Declaration of Cesar Molina[11] (Molina Supp. Decl.) at ¶3. Deputy Molina is Spanish-speaking. *Id.* at ¶3. Deputy Molina's assignment to this position was not as a result of this incident but a result of his qualifications for the position. *Id.* at ¶4. Deputy Molina is currently a Deputy for KCSO and has not been promoted to the position of Detective. *Id.* at ¶5. The Ninth Circuit is clear that a single failure to discipline does not rise to the level of ratification. *Haugen v. Brosseau*, 339 F.3d 857, 875 (2003) *rev'd on other grounds*, 543 U.S. 194 2004 (2004). *See Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989) ("we cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability").

Plaintiffs also assert that the KCSO Use of Force Review Board hearing was a "sham" investigation establishing ratification. This argument is again factually misleading and legally insufficient. First, plaintiffs' ratification argument regarding an insufficient review fails for lack of causation.[12] In *Long v. City and Cty. of Honolulu*, 378 F.Supp.2d 1241, 1248 (D. Haw. 2005), aff'd 511 F.3d 901 (9th Cir. 2007), also an officer involved shooting case, the court stated that plaintiff's claim that the City ratified the officer's actions by failing to discipline him "or otherwise having a defective internal affairs investigation policy," failed for lack of causation. In granting summary judgment for the City, the court held, "Even if the after-the-fact internal investigation here was somehow a "coverup" (and there is no such evidence), it would not have prevented the

---

[10] Dkt. 108 at p. 70, line 14.

[11] Plaintiffs failed to ask Deputy Molina the reasons underlying his promotion at his deposition. Kinerk Supp. Decl. ¶4, Exh. 2.

[12] Plaintiffs' election to pursue a ratification theory for liability under *Monell* places causation at issue. Generally, under the other liability theories under *Monell* of an alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom or an alleged constitutional violation by an individual with final policy-making authority so as to constitute an act of official governmental policy, the issue of causation is apparent and is not contested.

DEFENDANT KING COUNTY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT - 8

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

shooting of Long." *Accord Kaur v. City of Lodi,* 263 F.Supp.3d 947 (2017) (citing *Mettler v. Whitledge,* 165 F.3d 1197, 1205 (8th Cir. 1999) ("However, even if we are to assume as true that there were shortcomings in the investigation into the January 22 shooting, the shortcomings would not prove the flawed investigation was a moving force behind the deputies' alleged misconduct.")). The Ninth Circuit also rejected a similar ratification theory in *Haugen v. Brosseau,* stating, "Plaintiff cannot, of course, argue that the municipality's later action (or inaction) caused the earlier shooting." 351 F.3d 372, 393 (9th Cir. 2003), *rev'd on other grounds,* 543 U.S. 194 (2004). As the court in *Kaur* noted, "A single inadequate investigation following the subject incident will not sustain a claim of municipal liability, because the after-the-fact inadequate investigation could not have been the legal cause of the plaintiff's injury." 263 F.Supp.3d 947 (E.D. Cal. 2017) (*citing Feliciano v. City of Miami Beach,* 847 F.Supp.2d 1359, 1367 (S.D. Fla. 2012)). Here, based on the above precedent, plaintiffs' claims that the KCSO Use of Force Review Board investigation and hearing were faulty do not provide adequate support for imposing *Monell* liability under a ratification theory in this case.

The KCSO Use of Force Review Board investigation and hearing in this case was similar to the type of review undertaken and approved by the courts in *German* and *Kanae* and therefore is not flawed. The Use of Force Board was chaired by KCSO Undersheriff Scott Sommers and consisted of 5 additional voting members from patrol, legal, training, and the police union. Dkt. 109-17 at p. 2-3. None of the voting members on the Board were involved in the shooting. Declaration of Lisa Mulligan (Mulligan Decl.) at ¶4. In addition to the 6 voting members, 15 non-voting members were present including a representative from the Office of Law Enforcement Oversight (OLEO)[13], Rick Fuentes, and KCSO subject matter specialists on firearms, tasers, crisis intervention

---

[13] OLEO describes its role on its website as, "The Office of Law Enforcement Oversight (OLEO) that represents the interests of the public in its efforts to hold the King County Sheriff's Office accountable for providing fair and just police services."

DEFENDANT KING COUNTY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT - 9

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

training, defensive tactics training, internal investigations and patrol division. Dkt. 109-17 at p. 3; Mulligan Decl. at ¶5. Presentations to the Board were made by the Major Crimes Unit, the Sergeant of the Administrative Review Team, and Deputies Molina and Owens. Dkt. 109-17 at p. 3-7; Mulligan Decl. at ¶6. KCSO Major Crimes Unit Detective Chris Johnson, who oversaw the criminal investigation regarding whether Deputy Molina's actions constituted a crime presented an overview of the incident from the criminal investigative perspective to the Review Board. Dkt. 109-17 at p. 3; Mulligan Decl. at ¶6(i). Sergeant Jason Escobar, the lead investigator of the KCSO Administrative Review Team (ART), reported on his administrative review of the incident and the involved training, equipment and policy updates needed as a result of it. Dkt. 109-17 at p. 3; Mulligan Decl. at ¶6(ii). Deputy Molina, who testified regarding his recollection of events, did not work in either Detective Johnson's or Sergeant Escobar's units at the time of the review nor was he supervised by either at the time of the review. Molina Supp. Decl. at ¶6.

Following the presentations and discussion at the Use of Force Review hearing, the non-voting members and presenters were excused and the Board considered the seven questions it was required to answer as set out in the KCSO General Orders Manual. Dkt. 109-17 at p. 8-10; Mulligan Decl. at ¶8. For purposes of the seven questions, the Board was allowed to consider only the information that Deputy Molina knew prior to and at the time of the shooting. Dkt. 109-17 at p. 7-10; Mulligan Decl. at ¶8. One of the issues discussed by the Review Board was whether there were reasonable alternatives to the use of force. Dkt. 109-17 at p. 8-9; Mulligan Decl. at ¶8. The Review Board also considered whether the use of force was justified or unjustified. Dkt. 109-17 at p. 8-9; Mulligan Decl. at ¶8. The Board determined based on the information presented and after consideration of State and Federal law, that the use of force was justified. Dkt. 109-17 at p. 8-10; Mulligan Decl. at ¶8. In addition, the

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

Undersheriff asked the Board to review and deliberate on additional issues related to use of force such as whether first aid was rendered, whether there were any issues with supervision or command at the scene, whether there were any issues with communications or equipment and whether there were other issues with policies or procedures or other policy violations not identified in the use of force. Dkt. 109-17 at p. 10-11. The Board considered these issues and provided the Undersheriff with their answers. Dkt. 109-17 at pg. 10-11; Mulligan Decl. at ¶9. In sum, the Use of Force Review Board considered information regarding the shooting from many different sources, from differing perspectives, and all members were encouraged to ask questions. In fact, the representative from the independent law enforcement oversight office was an active participant in the hearing. Mulligan Decl. at ¶7.

While the plaintiffs' expert criticizes aspects of the Use of Force Review Board work, those comments alone do not defeat summary judgment. In fact, the court in *Kanae* granted the County's summary judgment even though plaintiff submitted a police practices expert's report critical of the County's review board investigation. The court did so, stating "while the court must view the facts in the light most favorable to Kanae, inferences drawn from the underlying facts must be reasonable." *Kanae* at 1187. The court should do the same here for the same reasons.

Plaintiffs' expert's criticism of the Use of Force Review Board attempts to create factual issues and offer the court unreasonable inferences from the underlying facts to imply ratification. For instance, he opines that the Use of Force Review Board was not informed that neighbor "eyewitnesses" saw Tommy's hands were empty before he was shot.[14] First, it is undisputed that that the neighborhood "eyewitnesses" referred to by plaintiffs' expert were <u>not present</u> at the shooting and their Declarations confirm this. Dkts. 116, 117, and 119. Second, the Declaration by the neighbor "eyewitness," Mr.

---

[14] Dkt. 108 at p. 41, lines 14-15.

DEFENDANT KING COUNTY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT - 11

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

O'Brien, indicating that he could see that Le was unarmed at all times,[15] was obtained by plaintiffs' counsel in preparation for this litigation, one year after KCSO took an earlier statement from him. Since this Declaration was not produced in discovery but was first disclosed when used as an exhibit at the deposition of Detective Chris Johnson on January 29, 2019, five months after the Use of Force Review Board hearing, it would have been impossible for the Review Board to have considered it as suggested by plaintiffs' expert. Kinerk Supp. Decl. at ¶7. Further, this Declaration is not consistent with Mr. O'Brien's earlier statement about the incident taken by KCSO on June 22, 2017, just over a week after the incident. *Id.* At that time, when O'Brien was ask whether the darkness affected his view of Tommy, he stated, "I wasn't super close to him [Tommy Le] so yeah, it's possible he had something in his hands and I didn't see it. That is possible." Kinerk Supp. Decl. at ¶5, Exh. 3. Plaintiffs' cannot defeat summary judgment by creating disputed facts through their own witnesses. *See e.g. Radobenko v. Automated Equipment Corp.,* 520 F.2d 540 (1975) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.")

Plaintiffs' expert's opinion that Detective Johnson's investigation to the Use of Force Review Board was flawed "because it never addressed the fact that Tommy was shot in the back" conveniently ignores the undisputed evidence that Le's autopsy report, including the wounds, the cause of death and photos from the autopsy, was part of the evidence presented to the Use of Force Review Board. Dkt. 109-17 at p. 5. In addition, the Detective told the Review Board "the likely position of Deputy Molina when the shots were fired *and where they struck*." Dkt. 109-17 at p. 5 (emphasis added). Unreasonable inferences from underlying facts construed by plaintiffs or their experts, do not raise a genuine issue of material fact to support ratification in order to defeat

---

[15] Dkt. 108 at p. 20, lines 2-13.

DEFENDANT KING COUNTY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT - 12

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

summary judgment. In addition, even if one accepts all of criticisms directed at the

KCSO Use of Force Review Board investigation, they do not establish that the

investigation was the legal cause of Le's death. Simply put, plaintiffs' are requesting

this court adopt a theory of ratification that is not the law:

> The law does not say that every failure to discipline an
> officer who has shot someone is evidence of a "whitewash"
> policy or some other policy of "sham" investigations. The
> law does not say that, whenever an investigative group
> accepts an officer's version over a victim's differing version,
> this acceptance establishes a policy for which a municipality
> may be held under § 1983. If that were the law, counties
> might as well never conduct internal investigations and
> might as well always admit liability. But that is not the law.
> The law clearly requires "something more." As Kanae
> presents nothing more than the failure to discipline Hodson,
> the County is entitled to summary judgment on Kanae's §
> 1983 ratification claim.

*Kanae* at 1191.

In order for plaintiffs' *Monell* claim to survive summary judgment under a

ratification theory, they needed to submit the following evidence: 1) identification of the

individual with final policymaking authority over the matter; 2) evidence that the final

policy decision maker approved Deputy's Molina's alleged unconstitutional action,

and; 3) the policy decision maker adopted the improper basis for it as their own.

Plaintiffs have failed to meet any of these criteria to defeat summary judgment. On a

wholly separate basis, plaintiffs' ratification theory also fails due to a lack of causation

between the injury suffered and any alleged shortcomings of the subsequent KCSO Use

of Force Review Board investigation and hearing. Ratification requires adoption of the

action or decision and the basis for it as well as "something more" beyond an isolated

failure to discipline or the mere adoption of the review board findings. Plaintiffs have

DEFENDANT KING COUNTY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT - 13

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

failed to provide sufficient evidence to support their *Monell* claim and it should be dismissed.

### B. Plaintiffs State Law Claims are also Factually and Legally Insufficient to Survive Summary Judgment

1. Plaintiffs have not provided this court with evidence of conduct by King County that is so "Extreme and Outrageous" to warrant a factual determination of the claim by a jury.

Plaintiffs have deserted nearly all of their state law claims against King County, except the tort of Outrage.[16] They readily concede that an outrage claim requires the alleged conduct to be objectively "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[17] They also acknowledge that *Grimsby v. Samson*, 85 Wn.2d 52, 530 P.2d 291 (1975) outlines the elements of an outrage claim that must be established.[18] Conduct must go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 59. The court must determine whether or not reasonable minds could differ as to whether the conduct was sufficiently outrageous. *Monetti v. City of Seattle,* 875 F.Supp.2d 1221, 1231 (2012) (citing *Phillips v. Hardwick,* 29 Wash.App. 382, 387, 628 P.2d 506 (1981). Plaintiffs do not dispute that it is proper for a trial court faced with a summary judgment motion to "make an initial determination as to whether the conduct may reasonably be regarded as so 'extreme and outrageous' as to warrant a factual determination by the jury."[19] Lastly, they admit in determining whether a case should go to a jury, the trial court needs to consider the following:

---

[16] Dkt. 108 at p. 13, lines 5-18.
[17] Dkt. 108 at p. 77, lines 13-16.
[18] Dkt. 108 at p. 7, lines 7-12.
[19] Dkt. 108 at p. 79, lines 10-17.

DEFENDANT KING COUNTY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 14

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

> (1) the position occupied by the defendants; (2) whether plaintiffs were particularly susceptible to emotional distress, and if defendant knew this fact; (3) whether defendants' conduct may have been privileged under the circumstances; (4) whether the degree of emotional distress caused by a party was severe as opposed to mere annoyance, inconvenience, or normal embarrassment; and (5) whether the actor was aware that there was a high probability that his or her conduct would cause severe emotional distress and proceeded in a conscious disregard of it.

*Jackson v. Peoples Fed. Credit Union,* 25 Wn. App. 81, 84, 604 P.2d 1025 (1978).

Nonetheless Plaintiffs fail to provide the court with evidence of extreme or outrageous behavior by any King County representative. Plaintiffs' Response continues to maintain that their outrage claim is based on "KCSO misstatements to the Le family in their home and the facts of a cover-up to protect the deputy and department."[20] However, the statements plaintiffs' complain of fail to meet the high standard to be regarded as 'extreme and outrageous' for the tort of Outrage and they fail to provide any additional evidence regarding the conduct about which they complain apart from asserting that there was a "cover-up."

The statements plaintiffs continue to allege are "extreme and outrageous" for the tort of outrage consist of alleged misrepresentations by KCSO Detective Chris Johnson and former KCSO Sheriff John Urquhart to the family, press and public not about plaintiffs but about Tommy Le. The alleged misstatements identified by Plaintiffs are that Chris Johnson stated to Le's father, grandmother and aunt at their home that Le was shot because he was attacking the deputies with a knife[21] and, a remark attributed to former Sheriff Urquhart who allegedly said that Deputy Molina should have wrestled Tommy to the ground and taken the pen, which is what he would have done.[22] Neither of these statements meet the definition of extreme and outrageous.

---

[20] Dkt. 108 at p. 80, lines 9-10.
[21] Dkt. 108 at p. 44, line 4.
[22] Dkt. 108 at p. 76, lines 16-17.

DEFENDANT KING COUNTY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT - 15

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

Plaintiffs also fail to allege the conduct that rises to the level of outrage in support of their assertion that KCSO engaged in a "cover-up" regarding this shooting.[23] Although the plaintiffs state that the "cover-up" amounts to the repetition of the above misstatements that are memorialized in the Use of Force Review Board Findings, a cursory read of the Use of Force Board Report Memorandum belies plaintiffs' claims.[24] There is no dispute that the Use of Force Review Board Memorandum states that Tommy Le was armed with a pen, not a knife, and that the Memorandum acknowledges that the Medical Examiner's autopsy, the wounds, and the cause of death were all considered in the review.[25] None of these issues were covered up. Accordingly, plaintiffs fail to provide sufficient evidence to the court to meet the "high threshold" of extreme or outrageous statements or conduct as required in *Grimsby* and summary judgment granted.

The submission of declarations by plaintiffs and members of the community that they feel "outraged" by the remarks allegedly made by Sheriff Urquhart does not establish the tort of Outrage. Plaintiffs present a number of declarations from themselves and community members chronicling the complexity of their feelings and experiences following the death of Le.[26] However, these declarations fail to establish that either the alleged misstatements made by KCSO representatives or the alleged KCSO "cover-up" was so unconscionable as to rise to the level of outrage and further, they do not present sufficient evidence of severe emotional distress suffered by the plaintiffs. Plaintiffs' present no evidence that any of the representatives were aware that there was a <u>high</u> probability that their conduct, in speaking with the family, press and public in their capacities as police officers investigating this shooting would cause plaintiffs <u>severe</u> emotional distress, nor do plaintiffs' provide evidence that these

---

[23] Dkt. 108 at p. 44, line 9-12.
[24] *Id.*
[25] Dkt. 109-17 at p. 3-7.
[26] Dkt. 115, 118, 120, & 122.

DEFENDANT KING COUNTY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT - 16

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

representatives would know that the plaintiffs were susceptible to emotional distress as a result of their words.  Moreover, the plaintiffs provide no evidence that the representatives' were aware that there was a high probability that their words would cause plaintiffs severe emotional distress and yet they proceeded to disseminate public information in conscious disregard of that distress. Plaintiffs had the opportunity to develop this issue with Detective Johnson at his deposition and never inquired about it. The uncontroverted evidence before this court is that Detective Johnson never had any contact with the Le family members prior to June 14, 2019.[27] Johnson had no knowledge that his statements to Le's father, grandmother and aunt on the day of the shooting or anytime later would result in a high probability of severe emotional distress to them, and that he consciously chose to disregard that effect.[28] With regard to former Sheriff Urquhart, again plaintiffs could have attempted to develop this element of the tort of Outrage through a deposition, but plaintiffs chose not to depose him. Kinerk Supp. Decl. at ¶6. Again, the only evidence before this court on this issue is former Sheriff Urquhart's declaration which states:

> Given my lack of previous contact with the Le family, I had no personal knowledge that any of the family would be particularly susceptible to severe emotional distress as a result of my contact with them or statements attributed to me. I was acutely aware and sympathetic to the fact that they had lost their son, grandson, brother, and nephew. However, I was unaware that the release of information regarding this officer involved shooting would result in severe emotional distress to the Le family, let alone a high probability of causing any of them severe emotional distress. At no time did I make remarks or statements, or discuss this ongoing investigation, or the steps to be taken regarding it with a conscious disregard of the emotional toll it would cause them.

---

[27] Dkt. 82 at ¶16.
[28] Dkt. 82at ¶16.

DEFENDANT KING COUNTY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT - 17

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

Dkt. 85 at ¶11.

Plaintiffs also fail to provide evidence to this court regarding why the statements of the KCSO representatives were not privileged. Washington courts have afforded police officers a qualified privilege as to statements or communications made in the performance of their official duties. *Bender v. City of Seattle,* 99 Wn.2d 582, 601 (1983). This qualified privilege protects police officers in releasing information to the public and press for a public purpose. *Id.* Detective Johnson was and continues to be a police officer involved in the criminal investigation of this case. Former Sheriff Urquhart was the publicly elected police officer for King County at the time of this incident. As such both are entitled to this qualified privilege given that all Plaintiffs' alleged misstatements were provided within the scope of their roles. It is the plaintiffs' burden to establish any abuse of this qualified privilege to recover under their claim. Plaintiffs have provided no evidence to the court regarding the abuse of this privilege so as to afford them a basis for recovery under the tort of Outrage.

Finally, plaintiffs have failed to provide the court with evidence that satisfies the final criteria articulated in *Grimsby,* that the plaintiff must be an immediate family member of the person who is the object of the defendants' actions, *and he must be present at the time of such conduct. Grimsby,* 85 Wn.2d at 59-60 (citing the Restatement (Second) of Torts § 46 (1965). Plaintiffs' representation in their memorandum that "presence is not an issue"[29] is simply inconsistent with *Grimsby.* Plaintiffs don't dispute that Dieu Ho, Dung Nguyen, Jefferson Ho, Tam Nguyen, Uyen Le and Quoc Nguyen were not present at the time Detective Johnson visited the Le residence.[30] Plaintiffs don't contest that Dung Nyuyen, Hoai Le, Jefferson Ho, and Tam Nguyen were not present at the Le residence when Sheriff Urquhart visited there.[31] Even if all of the plaintiffs are assumed to be immediate family members, the plaintiffs identified above were not present when

---

[29] Dkt. 108 at p. 78, line 18.
[30] Dkt. 78 at p.38 lines 14-19.
[31] Dkt. 78 at p.38 lines 14-19.

DEFENDANT KING COUNTY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT - 18

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

the KCSO representatives allegedly engaged in extreme and outrageous conduct. It was incumbent on plaintiffs to submit additional supporting materials demonstrating the existence of a material issue of fact with regard to this issue, and they have not. CR 56(e). While there may be sympathy for the frustration over the death investigation in this case, plaintiffs have failed to provide evidence to establish that they were present when the conduct occurred, a crucial element for the tort of Outrage.

This court has no option but to dismiss plaintiffs' Outrage claim because the record is insufficient to allow it to proceed. The beliefs of some of the plaintiffs that "KCSO's conduct is in contradiction of the laws and values of our democracy"[32] doesn't establish that the statements and conduct in question were so "extreme and outrageous" as to warrant consideration by a jury. Outrage is not premised on sympathy for the loss of a relative nor is it contingent on plaintiffs' insistence that different facts about Le or the incident should have been included in press releases or other remarks made.[33] The necessary requirements for the tort of Outrage have not been met. The statements cited by plaintiffs as "extreme and outrageous" are privileged and plaintiffs have provided no evidence otherwise. Further, each of the plaintiff have not shown that they were present for the alleged statements and conduct complained of. As such, summary judgment is warranted.

2. <u>Plaintiffs' record to support a claim under RCW 4.20.046 is legally deficient and should be dismissed on summary judgment.</u>

Plaintiffs' Complaint alleges that they are entitled to recovery under both Washington's wrongful death and survival statutes.[34] In its opening memorandum, King

---

[32] Dkt. 108 at p. 76, lines 6-7.

[33] The second KSCO press release issued 9 days after the incident clarified that Le was armed with a pen, not a knife at the time of the shooting, a fact Le's family readily acknowledges. Dkt. 86 at ¶4; Dkt. 79-11 at p. 4-5, lines 23-3.

[34] Their complaint references the death statute, RCW 4.20.020 and the special survival statute, RCW 4.20.060 while their second cause of action within the complaint references the general survival statute, RCW 4.20.046.

DEFENDANT KING COUNTY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 19

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

County pointed out that plaintiffs do not have any first-tier or qualified second-tier statutory beneficiaries under RCW 4.20.020 and RCW 4.20.060 and therefore, those claims fail. Plaintiffs' silence in their Response to King County's argument again is a tacit concession they have no viable claims under RCW 4.20.020 or RCW 4.20.060.

King County did indicate, however, that the personal representative for the Le Estate could assert a claim under RCW 4.20.046, the general survival claim. While the limitation on non-economic damages generally dictated by RCW 4.20.046 does not apply in a survival § 1983 claim,[35] plaintiffs must still establish a viable § 1983 claim. As outlined above, they are unable to establish a viable *Monell* claim.

Their eligibility to recover under RCW 4.20.046 (outside § 1983) does not equate with viability of a claim. In order to establish a viable claim for negligence, for instance, the personal representative must submit competent and credible evidence of the type of claim alleged and the evidence in support thereof. Here, Bao Xuyen Le, as personal representative of the Le estate, was required to provide evidence of the following: a legal duty owed to Le by King County, a breach of the duty by King County, that the duty resulted in injury to Le, and that the breach of duty was the proximate cause of Le's injury. See *Hartley v. State*, 103 Wn.2d 768, 698 P.2d 77 (1985). The existence of a duty is the threshold question in any negligence action and the action will fail if no duty is established. *Cummins v. County*, 156 Wn.2d 844, 852, 133 P.3d 458 (2006). The existence of a legal duty is a pure question of law. *Folsom v. Burger King*, 135 Wn.2d 658, 671, 958 P.2d 301 (1998). King County included in its opening brief that the public duty doctrine bars any of their negligence claims not premised on intentional acts. The Le representative cannot establish any legal duty of the County specifically to decedent Le and she filed nothing with the court to refute King County's position. Since she has not put forth any facts to support the

---

[35] *Ostling v. City of Bainbridge Island*, 872 F. Supp.2d 1117 (W.D. Wash. 2012).

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

elements of a negligence claim against King County, any recovery under RCW 4.20.060 is barred.

The same result applies to any negligence theories asserted against King County premised on Deputy Molina's actions that are protected by RCW 4.24.420 under vicarious liability principles. Plaintiffs' state laws claims should be dismissed.

## II. CONCLUSION

King County respectfully requests this court grant its motion for summary judgment. Plaintiffs' *Monell* claim is legally and factually deficient under a ratification theory, as they failed to establish the individual with final policymaking authority, that the policy maker approved Deputy's Molina's alleged unconstitutional action, and adopted the basis for it. Plaintiffs' *Monell* claim also fails due to lack of causation necessitating summary judgment dismissal.

Plaintiffs have also failed to provide this court with material facts raising a genuine issue of extreme and outrageous conduct that would allow their outrage claim to survive summary judgment.

All of plaintiffs' negligence claims fail as the duty element necessary to establish negligence is lacking, therefore rendering the state law claims subject to summary judgment dismissal.

DATED this 12th day of April, 2019.

DANIEL T. SATTERBERG
King County Prosecuting Attorney

*/s/ Daniel L. Kinerk*
DANIEL L. KINERK, WSBA #13537
KATHY VAN OLST, WSBA #21186
Senior Deputy Prosecuting Attorney
Attorneys for Defendant King County
King County Prosecuting Attorney
500 Fourth Avenue, Suite 900
Seattle, WA. 98104

DEFENDANT KING COUNTY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT - 21

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

(206) 296-8820   Fax (206) 296-8819
dan.kinerk@kingcounty.gov
kathy.vanolst@kingcounty.gov

## CERTIFICATE OF MAILING AND SERVICE

I hereby certify that on April 12, 2019, I electronically filed the foregoing document(s) with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following participants:


**Jeffrey M Campiche**
**Philip G. Arnold**
**Attorneys for Plaintiffs**
**CAMPICHE ARNOLD PLLC**
**1201 Third Ave, Suite 3810**
**Seattle, WA 98101**
**(206) 281-9000**
**jcampiche@campichearnold.com**
**parnold@campichearnold.com**

**Timothy R. Gosselin**
**Attorney for Co-defendant Cesar Molina**
**GOSSELIN LAW OFFICE, PLLC**
**1901 Jefferson Ave., Suite 304**
**Tacoma, WA 98402**
**253-627-0684**
tim@gosselinlawoffice.com


I declare under penalty of perjury under the laws of the United States and the State of

Washington that the foregoing is true and correct.


DATED this 12th day of April, 2019 at Seattle, Washington.


s/_____
ANGELA LINDSEY
Legal Secretary
King County Prosecuting Attorney's Office

DEFENDANT KING COUNTY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT - 22

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819