The Honorable Thomas S. Zilly

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| BAO XUYEN LE, INDIVIDUALLY, and as the Court appointed PERSONAL REPRESENTATIVE OF THE ESTATE OF TOMMY LE, HOAI "SUNNY" LE, Tommy Le's Father, DIEU HO, Tommy Le's Mother, UYEN LE and BAO XUYEN LE, Tommy Le's Aunts, KIM TUYET LE, Tommy Le's Grandmother, and QUOC NGUYEN, TAM NGUYEN, DUNG NGUYEN, JULIA NGUYEN AND JEFFERSON HO, Tommy Le's Siblings,<br><br>Plaintiffs,<br><br>vs.<br><br>MARTIN LUTHER KING JR. COUNTY as sub-division of the STATE of WASHINGTON, and KING COUNTY DEPUTY SHERIFF CESAR MOLINA,<br><br>Defendants. | NO. 2:18-cv-00055-TSZ<br><br>DEPUTY SHERIFF CESAR MOLINA'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT<br><br>**NOTE ON MOTION CALENDAR:**<br>**April 12, 2019.** |

**JOINDER IN DEFENDANT KING COUNTY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Molina joins in Defendant King County's Reply in Support of Motion for Summary Judgment. As with his joinder in King County original motion, to the extent the statement of facts, evidence, grounds for relief and argument apply with equal force to Deputy Molina,

DEPUTY SHERIFF CESAR MOLINA'S
REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT
[No. 2:18-cv-00055-TSZ]
Page - 1

GOSSELIN LAW OFFICE, PLLC
1901 JEFFERSON AVENUE, SUITE 304
TACOMA, WASHINGTON 98402
OFFICE: 253.627.0684 FACSIMILE: 253.627.2028

Molina incorporates them herein without repeating them.

## REPLY ARGUMENT

Plaintiffs acknowledge that "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (1989). Then, however, they offer a multitude of factual allegations that simply invite hindsight analysis. Many of the facts Molina could not have known, such as what other non-reporting witnesses saw, whether Le had a criminal record, what other officers saw or perceived, that tasing Le would "accelerate" the shooting, and whether Le was actually armed, among many others. Many of the facts are irrelevant or only marginally relevant to the issues before the court. Many are simply fraught with inconsistency.[1]

The two major factual disputes are whether Le was carrying something at the time he was shot, and whether Deputy Molina shot Le while Le was on the ground. Under the circumstances of this case, neither fact may be relevant, but certainly neither is material.

The question here is not whether Le was actually armed. That fact is only determined with hindsight. The question here is whether a reasonable officer could reasonably believe Le was armed. The law is clear that officers may use deadly force based on a reasonable belief the suspect is armed even if hindsight proves the belief to be incorrect. *Reese v. County of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018)(suspect answered his door with a knife, retreated into his home, dropped the knife, then returned to the door where the officer shot him).

---

[1] For example, Plaintiffs argue that, based on the citizen reports, Molina should have been so concerned that Le was armed that he should have taken a position of cover instead of placing himself between the other officers and any line of entry Le may take back into the scene. Response at 21-23  Then, they argue that Molina should have directly engaged Le by wrestling him to the ground.

Likewise, they claim Le was not armed, but if he was armed he was armed with only a pen. Either he was armed or he wasn't. Molina does not dispute that after the fact Le was discovered to have been armed with only a pen. But, if he wasn't armed with a pen, Plaintiffs have yet to explain why their own expert determined that after Le was shot he had ink on his right hand – the hand that was not shot, the hand from which the pen was kicked, and what they claim was his non-dominant hand in which, so they contend, he could not have been carrying a pen in it.. See Supplemental Declaration of Timothy Gosselin, Exhibit 1.

Plaintiffs claim an issue of fact exists because Molina said he shot Le in the torso, and not the back. Dkt. 108 at 58. Under Plaintiff's theory a torso does not have a front and back. That is an obviously incorrect premise. Molina has never denied where his bullets struck Le. He simply testified he fired at Le's torso and did not know where he hit. Dkt. 88 at 6.

DEPUTY SHERIFF CESAR MOLINA'S
REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT
[No. 2:18-cv-00055-TSZ]
Page - 2

GOSSELIN LAW OFFICE, PLLC
1901 JEFFERSON AVENUE, SUITE 304
TACOMA, WASHINGTON 98402
OFFICE: 253.627.0684 FACSIMILE: 253.627.2028

1   Here, Plaintiffs actually concede that Molina had a reasonable fear Le was armed. Dkt. 108 at 21, ln. 15-16.  In fact, Plaintiffs themselves contend Molina should have been so concerned Le was armed that he should have taken a position of cover rather than place himself within any path from which Le may have approached.  Dkt. 108 at 21-23.  Consistent with that, Plaintiffs' own expert testified that Molina's fear that Le could seriously injury him or others justified Molina's use of his taser.[2]  Dkt. 89 at 2.

The question whether Tommy was shot in the back or while he was on the ground – a contention that is highly disputed and dubious at best[3] – also is not material under the circumstances of this case.  The law is clear: "[I]f police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *Plumhoff v. Rickard*, __ U.S. __, 134 S.Ct. 2012, 2022, 188 L.Ed.2d 1056 (2014); accord *Wilkinson v. Torres*, 610 F.3d 546, 552 (9th Cir. 2010)(officer not required to reevaluate whether deadly force has been eliminated after each shot).  Plaintiffs do not dispute that the only shots that actually impacted Le's advance were the last two that Molina fired.  If Molina was justified in firing the first four that failed to stop Le, he was justified in firing the last two that did.  *Wilkinson*, 610 F.3d at 552 (officer did not shoot mindlessly but ceased fire after he perceived the threat had been eliminated).

Plaintiffs cite to Le's size as an indicator that the officers could have eliminated his threat by tackling him.  But the law is also clear that officers are not required to put their lives in jeopardy if they have a reasonable basis for believing the suspect presents a risk of serious physical harm to them or others.  *Lal v. State of California*, 746 F.3d 1112, 1118 (9th Cir. 2014)

---

[2] It is worth re-noting:  Plaintiffs complaint does not contend that Molina's or Deputy Owens use of their tasers was excessive.  See Dkt. 1.

[3] Support for the contention comes from Plaintiffs' expert Wilson Hayes based on the condition of the bullet in Le's body.  He formed the opinion without examining the bullet, seeing the wound, or examining Le's clothes, and based solely on a photograph.  No witness supports the contention.  The medical examiner did make any such finding.  And, the State crime lab found no evidence that the bullet had actually impacted the pavement.  Dkt. 92-1 at 2.

DEPUTY SHERIFF CESAR MOLINA'S
REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT
[No. 2:18-cv-00055-TSZ]
Page - 3

GOSSELIN LAW OFFICE, PLLC
1901 JEFFERSON AVENUE, SUITE 304
TACOMA, WASHINGTON 98402
OFFICE: 253.627.0684 FACSIMILE: 253.627.2028

Many of Plaintiffs' factual assertions simply defy credulity. They claim Le would have responded if Molina had used a softer voice. There is no basis for believing a softer voice would have changed the outcome when Le had not only failed to retreat but charged after a civilian who had fired his gun at him. More importantly, there is no basis for a reasonable officer facing Le at the time to believe a softer voice would have been successful.

Plaintiffs claim Le "trotted" towards the officers and the civilians after being tased "probably to avoid being tased again" (dkt. 108 at 50), or because he "probably not understanding [sic] the commands being given to him." Dkt. 108 at 55. While no reasonable juror is likely to accept that a person being tased would run toward the officer in order to avoid being tased again, the contention again begs the question: What would a reasonable officer in Molina's position have believed? Plaintiffs produce no evidence suggesting a reasonable officer would have interpreted Le's actions as a desire to avoid being tased again or merely a "failure to understand."

Plaintiffs claim Le was moving away from the officers at the time of the shooting. That contradicts both the physical and the testimonial evidence. Even if Le made a momentary movement in one direction or another, all that shows is how quickly he was able to act. The fact, and indeed the physical evidence, remains undisputed that during the entire encounter, Le moved toward the officers and toward the civilians, never away from them.

Plaintiffs claim Le did not "resist arrest or attempt to flee." Dkt. 108 at 50. They are half right. They defy reason if they argue that ignoring commands and advancing on officers after being shot with a taser does not constitute resisting arrest. Certainly, they have presented no evidence that Le surrendered or was in the process of surrendering. They are correct that Le was not fleeing. In fact he was advancing towards the officers and civilians, worse than attempting to flee.

Plaintiffs contend only Molina pulled his weapon, and that was because neither Owens or

DEPUTY SHERIFF CESAR MOLINA'S
REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT
[No. 2:18-cv-00055-TSZ]
Page - 4

GOSSELIN LAW OFFICE, PLLC
1901 JEFFERSON AVENUE, SUITE 304
TACOMA, WASHINGTON 98402
OFFICE: 253.627.0684 FACSIMILE: 253.627.2028

Paul thought deadly force was necessary. Dkt. 108 at 34, ln. 12. That simply ignores Deputy Owens' testimony that he feared for the safety of the others. Dkt. 83 at 5.

Along the same lines, Plaintiffs contend other officers did not perceive Le as a threat by citing to Deputy Owens' testimony that he did not believe Le was a threat to his life at the moment the shooting occurred. Dkt. 108 at 25. They contend this shows both that Le was not a threat overall, and that Molina's belief that Le presented a threat to Owens was wrong. All it actually shows is that Deputy Owens was not personally threatened at the time. The contentions, ignore Owens' testimony that he believed Le was a threat to other officers and the civilians. Dkt. 83 at 5. Moreover, they beg the question: Despite Owens' personal belief, could Molina have reasonably believed Owens was in danger? Police may use deadly force even if their belief that another officer is in jeopardy is wrong, if it is reasonable under the circumstances. *Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010)(officer thought his partner may have already been run over by the minivan once and was lying or standing in the mud nearby, possibly disoriented, at risk of being hit again).

Plaintiffs offer a list of acts they contend Molina should have taken, from hiding behind a brick wall, to planning a response, to waiting for other officers to arrive, to calling for air support and a canine unit. They do this while conceding a critically important fact: Molina had no time to deliberate about his actions. Dkt. 108 at 59. Though Plaintiffs largely ignore the fact, they do not dispute that this entire event unfolded for Molina in 105 second, and his encounter with Le occupied a very brief few of those.

With the benefit of hindsight, perhaps Plaintiff can make the case that Molina could have done something differently. But qualified immunity is based on the premise that officers in the line of fire do not have that luxury. Molina has already noted: "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount

DEPUTY SHERIFF CESAR MOLINA'S
REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT
[No. 2:18-cv-00055-TSZ]
Page - 5

GOSSELIN LAW OFFICE, PLLC
1901 JEFFERSON AVENUE, SUITE 304
TACOMA, WASHINGTON 98402
OFFICE: 253.627.0684 FACSIMILE: 253.627.2028

of force that is necessary in a particular situation." *Graham v. Connor*, 109 S.Ct. 1865, 1872 (1989). "From the vantage point of an officer whose life is jeopardized, a potential arrestee who is neither physically subdued nor compliantly yielding remains capable of generating surprise, aggression, and death." *Miller v. Clark County*, 340 F.3d 959, 965 (9th Cir. 2003). Molina had information that Le was armed and dangerous and only seconds to act against a suspect who was neither compliant nor subdued.

Plaintiff's contend their Fourteenth Amendment claim survives under the "shocks the conscience"standard.[4] They have not met that standard. Where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may be found to shock the conscience only if he acts "with a purpose to harm unrelated to legitimate law enforcement objectives." *Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013). Purposes to harm unrelated to legitimate law enforcement objectives include purposes to "teach him a lesson" or to "get even." *Porter v. Osborn*, 546 F.3d 1131, 1140 (9th Cir. 2008). The standard "contemplates such "rare situations where the nature of an officer's deliberate physical contact is such that a reasonable fact finder would conclude the officer intended to harm, terrorize or kill." *Id*. at 1141, quoting *Davis v. Township of Hillside*, 190 F.3d 167, 174 (3d Cir.1999)

Plaintiffs have produced no evidence that Deputy Molina had any ulterior motives for using force against Le. See *Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003) (explaining that "speculation as to . . . improper motive does not rise to the level of evidence sufficient to survive summary judgment"). There is no evidence Molina knew Le, that he had ever encountered Le, that he harbored a racial animus towards people of Asian background, or persons acting erratically, or any other characteristic Le possessed. Regardless of Plaintiffs' claim that Molina should have used a gentle voice to calm Le, Molina did not create the

---

[4] In their complaint, Plaintiffs based this claim on racial animus. Dkt. 1 at 19, ¶127. Plaintiffs apparently have abandoned that claim.

DEPUTY SHERIFF CESAR MOLINA'S
REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT
[No. 2:18-cv-00055-TSZ]
Page - 6

GOSSELIN LAW OFFICE, PLLC
1901 JEFFERSON AVENUE, SUITE 304
TACOMA, WASHINGTON 98402
OFFICE: 253.627.0684 FACSIMILE: 253.627.2028

emergency that led to the force.   Le came onto the scene and moved towards the officers.  Compare *Porter v. Osborn*, supra.  There is no evidence Le was trying to leave the scene peacefully.  *Id*. There is no evidence Molina used force after stopping Le.  Compare *Zion v. County of Orange*, 874 F.3d 1072, 1077 (9th Cir. 2017)("Higgins didn't violate the Fourteenth Amendment by emptying his weapon at Zion. The two volleys came in rapid succession, without time for reflection. Whether excessive or not, the shootings served the legitimate purpose of stopping a dangerous suspect. The head stomps are different. After the two volleys, the video shows Higgins walking around in a circle for several seconds before returning for the head strikes.") The amount of force was only what was needed to stop Le.   Molina fired six shots, only the last two of which debilitated Le.  Application of force stopped when Le was stopped. Compare *A.D. v. California Highway Patrol*, 712 F.3d 446, 451, 458 (9th Cir. 2013)(officer fired twelve shots at the suspect and reloaded after being ordered by supervisor to stop).  Le was not running away, he was advancing towards the officers and the civilians.  Compare *Estate of Elkins v. Pelayo*, 737 Fed. App'x 830, (9th Cir. 2018) (suspect shot simply to stop him from running away).  Plaintiffs have produced no evidence that could support a conclusion that Molina "intended to harm, terrorize or kill" Le.  See *Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014)(Reasonable jury could not find that officer who shot suspect once in the head as suspect was attempting drive away had a purpose to harm).

With regard to their Fourth amendment claim, Plaintiffs were tasked with showing that the facts and the law existing at the time of the incident show that Molina was "plainly incompetent" to not know that what he was doing violated Le's constitutional rights.  *District of Columbia v. Wesby*, __ U.S. __, 138 S.Ct. 577, 589 (2018).  Yet they have utterly failed to cite a single case that presents similar facts where a court found a Fourth Amendment violation, let alone that the violation was clearly established.

In assessing Plaintiffs' arguments, it helps to rephrase the scenario they present.  They

DEPUTY SHERIFF CESAR MOLINA'S
REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT
[No. 2:18-cv-00055-TSZ]
Page - 7

GOSSELIN LAW OFFICE, PLLC
1901 JEFFERSON AVENUE, SUITE 304
TACOMA, WASHINGTON 98402
OFFICE: 253.627.0684 FACSIMILE: 253.627.2028

acknowledge that Molina was told Le had attacked civilians and threatened them with a knife. They agree Le returned to scene after leaving. They agree Le was acting erratically. Despite how they might characterize Le's movements, they cannot credibly dispute he moved towards the officers and the civilians – he was not fleeing. Though they contend Le either had nothing in his hand or only had a pen, they do not dispute that Le could have been carrying a weapon. Stated another way, they do not contend that Molina had reason to know Le was unarmed. They agree that Le refused commands to get on the ground. They agree Molina initially employed less-than-lethal-force and that Le resisted at least one taser fire. They agree that only Molina's last two shots were the debilitating shots. They contend these last two shots occurred when Le was either on or close to the ground. Under Plaintiffs' version, these are the "totality of the circumstances." The question thus becomes, do they show a violation of the Fourth Amendment, and if they do, was the violation clearly established.

While plaintiffs have stated broad principles, they have not produced a single case where the totality of the circumstances resemble the circumstances Molina faced. A review of the cases they cite shows this failure.

For example, the court in *Deorle v Rutherford*, 272 F.3d 1272 (9th Cir. 2001), gave the following statement of the circumstances of that case:

> Police Officer Greg Rutherford fired a "less lethal" lead-filled "beanbag round" into the face of Richard Leo Deorle, an emotionally disturbed resident of Butte County, California, who was walking at a "steady gait" in his direction. He did so although Deorle was unarmed, had not attacked or even touched anyone, had generally obeyed the instructions given him by various police officers, and had not committed any serious offense. Rutherford did not warn Deorle that he would be shot if he physically crossed an undisclosed line or order him to halt. Rutherford simply fired at Deorle when he arrived at a spot Rutherford had predetermined.

272 F.3d at 1275.

In *Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011), the suspect had not threatened anyone, held a pocket knife only to his own neck threatening suicide, was not in a

DEPUTY SHERIFF CESAR MOLINA'S
REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT
[No. 2:18-cv-00055-TSZ]
Page - 8

GOSSELIN LAW OFFICE, PLLC
1901 JEFFERSON AVENUE, SUITE 304
TACOMA, WASHINGTON 98402
OFFICE: 253.627.0684 FACSIMILE: 253.627.2028

physical altercation when the officers arrived, had committed no severe crime, did not attack or threaten to attack officers, and did not even move until officers fired on him. The officers also had information from family members regarding the nature of the suspect's metal condition: He was heavily intoxicated.

In *Zion v. County of Orange*, 874 F.3d 1072 (9th Cir. 2017), the court described the facts as follows:

> Connor Zion suffered several seizures. He then had a seemingly related episode where he bit his mother and cut her and his roommate with a kitchen knife. Police were called. Deputy Juan Lopez arrived at Zion's apartment complex. As Lopez exited his police car, Zion ran at him and stabbed him in the arms. Deputy Michael Higgins drove up separately and witnessed the attack on Lopez.
>
> What happened next is captured in two videos taken by cameras mounted on the dashboards of the two police cruisers. Zion is seen running toward the apartment complex. Higgins shoots at him from about fifteen feet away. Nine shots are heard and Zion falls to the ground. Higgins then runs to where Zion has fallen and fires nine more rounds at Zion's body from a distance of about four feet, emptying his weapon. Zion curls up on his side. Higgins pauses and walks in a circle. Zion is still moving. Higgins then takes a running start and stomps on Zion's head three times.

874 F.3d at 1075.

The closet case Plaintiffs cite is a trial court decision, *Chien Van Bui v. City & County of San Francisco*, 61 F.Supp.3d 877 (N.D.Cal. 2014).[5] But even that case involved reporting citizens who at best were unconcerned about the threat the victim posed, in a setting where officers had far more opportunity to deliberate about the appropriate actions, when facing a far more compliant and docile suspect. On these facts the court distinguished cases where the suspect either attacked or threatened the safety of the officers or others. 61 F.3d at 894. It, too, fails to provide law that, in the circumstances of this case, was "sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v.*

---

[5] In District of Columbia v. Wesby, __ U.S. __, 138 S.Ct. at 591 n.8. (2018), the Court suggested but did not decide that only its precedent may qualify as controlling authorities for purposes of qualified immunity. Even if that is not the case, the statement suggests that single judges sitting in their trial capacity do not provide controlling authority for purposes of this case.

DEPUTY SHERIFF CESAR MOLINA'S
REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT
[No. 2:18-cv-00055-TSZ]
Page - 9

GOSSELIN LAW OFFICE, PLLC
1901 JEFFERSON AVENUE, SUITE 304
TACOMA, WASHINGTON 98402
OFFICE: 253.627.0684 FACSIMILE: 253.627.2028

*Wesby*, __ U.S. __, 138 S.Ct. 577, 589 (2018).

Regarding their state law claims, Plaintiffs are incorrect that immunity under RCW 4.20.020 does not apply. Even if issues exist whether Le met the standards for intimidating a public servant, he was necessarily committing a crime if their Fourth Amendment claim does not survive. If the use of deadly force was appropriate, then Le was presenting an immediate threat to the safety of the officers or others at the time he was shot. *Vos v. City of Newport Beach*, 892 F.3d 1024, 1031 (9th Cir. 2018). Even Plaintiffs cannot contend that was not a felony, RCW 9A.36.03l), or does not qualify Molina for immunity. *Estate of Lee ex rel. Lee v. City of Spokane*, 101 Wn. App. 158, 177, 2 P.3d 979 (2000); *Estate of Villarreal ex rel. Villarreal v. Cooper*, 929 F.Supp.2d 1063, 1078 (E.D. Wn. 2013); *Haugen v. Brosseau*, 339 F.3d 857 (9th Cir. 2003) (rev. on other grounds, 543 U.S. 194 (2004)). Any other rule would deprive officers of the immunity even if the use of deadly force was correct.

## CONCLUSION

For the foregoing reasons, as well as those stated in Molina's Motion for Summary Judgment, Defendant King County's Motion for Summary Judgment, and Defendant King County's Reply In Support of Motion for Summary Judgment, Defendant Molina asks that Plaintiffs' claims against him be dismissed in their entirety with prejudice.

Dated this 12th day of April, 2019,

By : *s/ Timothy R. Gosselin*
Timothy R. Gosselin, WSBA #13730
GOSSELIN LAW OFFICE, PLLC
1901 Jefferson Ave., Suite 304
Tacoma, WA 98402
253-627-0684
tim@gosselinlawoffice.com
Attorney for Defendant Molina

DEPUTY SHERIFF CESAR MOLINA'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
[No. 2:18-cv-00055-TSZ]
Page - 10

GOSSELIN LAW OFFICE, PLLC
1901 JEFFERSON AVENUE, SUITE 304
TACOMA, WASHINGTON 98402
OFFICE: 253.627.0684 FACSIMILE: 253.627.2028

## CERTIFICATE OF MAILING AND SERVICE

I hereby certify that on the 12th day of April, 2019, I electronically filed the foregoing document(s) with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

| | |
|---|---|
| Jeffrey M Campiche | Daniel Kinerk |
| Philip G. Arnold | Kathy Van Olst |
| Jacqueline Hackler | Senior Deputy Prosecuting Attorney |
| Attorneys for Plaintiff | King County Prosecuting Attorney's Office, |
| CAMPICHE ARNOLD PLLC | Civil Division |
| 2025 First Avenue, Suite 830 | 500 Fourth Avenue, Suite 900 |
| Seattle, WA 98121 | Seattle, Washington 98104 |
| (206) 281-9000 | 206-296-8820 |
| jcampiche@campichearnold.com | dan.kinerk@kingcounty.gov |
| parnold@campichearnold.com | kathy.vanolst@kingcounty.gov |
| jhackler@campichearnold.com | |

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

DATED this 12th day of April, 2019 at Seattle, Washington.

*s/ Timothy R. Gosselin*
TIMOTHY R. GOSSELIN

DEPUTY SHERIFF CESAR MOLINA'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
[No. 2:18-cv-00055-TSZ]
Page - 11

GOSSELIN LAW OFFICE, PLLC
1901 JEFFERSON AVENUE, SUITE 304
TACOMA, WASHINGTON 98402
OFFICE: 253.627.0684 FACSIMILE: 253.627.2028