UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BAO XUYEN LE, individually and as Personal Representative of the Estate of Tommy Le; HOAI "SUNNY" LE; DIEU HO; UYEN LE; KIM TUYET LE; QUOC NGUYEN; TAM NGUYEN; DUNG NGYUEN; and JEFFERSON HO, <br><br> Plaintiffs, <br><br> v. <br><br> REVEREND DR. MARTIN LUTHER KING, JR. COUNTY; and KING COUNTY DEPUTY SHERIFF CESAR MOLINA, <br><br> Defendants. | C18-55 TSZ <br><br> ORDER |

THIS MATTER came before the Court on a motion for summary judgment brought by defendant Reverend Dr. Martin Luther King, Jr. County ("King County"), docket no. 78. The Court previously ruled on King County's motion, *see* Minute Orders (docket nos. 143, 148, 163, & 178); Minutes (docket no. 167), and having considered all papers filed in support of, and in opposition to, the motion, as well as the oral arguments of counsel, the Court enters the following order explaining its decision to dismiss with prejudice plaintiffs' Third Cause of Action for outrage (intentional infliction of emotional distress).

ORDER - 1

**Background**

On June 14, 2017, Tommy Le was fatally shot by King County Deputy Sheriff Cesar Molina. The outrage claim asserted by Le's father, mother, grandmother, aunts, and siblings was not, however, premised on the shooting itself, but rather on events that transpired after Le's death. According to Bao Xuyen Le, one of Le's aunts, King County Detective Chris Johnson came to the family home during the afternoon of June 14, 2017, and told her, as well as Le's father and grandmother, that Le had been shot when he "attacked the deputies with a knife." Bao Xuyen Le Decl. at ¶ 31 (docket no. 129). Detective Johnson appears to deny making this statement, indicating that he does not recall exactly what he said, but remembers giving a "general account" of events, including that deputies responded to the scene after receiving a call about "a man coming at some people with a knife," and that no knife was found. Johnson Decl. at ¶ 14 (docket no. 82).

Two press releases about this incident were issued by the King County Sheriff's Office ("KCSO"), one on June 14, 2017, and the other on June 23, 2017. The first press release recounted that "[a] homeowner fired a warning shot at a man running at him with a sharp object in his hand," and "[w]hen Deputies responded to the scene, the suspect came at them as well." Ex. 1 to Houck Decl. (docket no. 81-1). It further indicated that the suspect did not comply with orders to get on the ground and drop what he was holding, "continued to advance" after being tasered, and was struck "in the torso" by at least one bullet. _Id._ It did not identify the suspect. _Id._

The second press release contained a similar summary of events, stating that the suspect attempted to stab the 9-1-1 caller with a knife before deputies arrived and the suspect was shot, and identifying Tommy Le as the suspect. Ex. 1 to West Decl. (docket no. 86-1). The second press release disclosed that "[t]he object the suspect had in his hand at the time of the shooting was a pen," but it did not discuss the autopsy results, and instead indicated that "[t]he number of times the suspect was hit will come from the Medical Examiner's Office." *See id.* Plaintiffs contend that, as a result of the press releases, and the KCSO's failure to correct alleged misstatements or omissions, they have been publicly shamed within the local Vietnamese community. *See* Bao Xuyen Le Decl. at ¶¶ 38-40 (docket no. 129).

This litigation commenced in January 2018. On June 20, 2018, a Use of Force Review Board convened pursuant to Chapter 6 of the KCSO General Orders Manual ("GOM"). *See* Ex. 81 to Arnold Decl. (docket no. 109-17). The Use of Force Review Board, which was chaired by Undersheriff Scott A. Somers, answered the questions set forth in GOM 6.03.010(6), indicating *inter alia* that the use of force was "justified." *Id.* Plaintiffs assert that the KCSO, and in particular Detective Johnson, withheld information from the Use of Force Review Board, as well as the public, in an attempt to cover up Deputy Molina's wrongful conduct and shield King County from liability,[1] and that such

---

[1] Plaintiffs also suggest that a black Paper Mate pen found at the scene was "planted," but they offer no evidence to support this assertion, and they will not be permitted to proceed to trial on a theory founded entirely on speculation or conjecture.

ORDER - 3

1 intentional acts rise to the level of outrage.  King County contends that plaintiffs cannot,

2 as a matter of law, prevail on their outrage claim.  The Court agrees.

**Discussion**

**A.     Standard for Summary Judgment**

Summary judgment may be granted if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the adverse party must present "affirmative evidence," which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn, *id.* at 255, 257, showing that a rational trier of fact could find for such party on matters as to which such party will bear the burden of proof at trial, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 587 (1986); *see also Celotex*, 477 U.S. at 322.

**B.     Outrage**

In Washington, outrage is the same tort as intentional infliction of emotional distress.  *Kloepfel v. Bokor*, 149 Wn.2d 192, 193 n.1, 66 P.3d 630 (2003).  Under Washington law, the elements of outrage are: (i) extreme and outrageous conduct; (ii) intentional or reckless infliction of emotional distress; and (iii) actual result to the plaintiff of severe emotional distress.  *Kloepfel*, 149 Wn.2d at 195; *Dombrosky v. Farmers Ins. Co. of Wash.*, 84 Wn. App. 245, 261, 928 P.2d 1127 (1996).  The claim

must be predicated on conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kloepfel*, 149 Wn.2d at 196; *Dombrosky*, 84 Wn. App. at 261. The tort of outrage does not extend to mere insults, indignities, threats, annoyances, or petty oppressions. *Kloepfel*, 149 Wn.2d at 196. Similarly, "a certain degree of rough language, unkindness, and lack of consideration" is not actionable as outrage. *See id.* The question of whether particular conduct rises to the requisite level of outrageousness is "ordinarily a question of fact for the jury." *Dombrosky*, 84 Wn. App. at 261. The Court, however, may dismiss an outrage claim if reasonable minds could not differ as to the conclusion that the alleged behavior was not sufficiently extreme. *Id.* at 261-62.

**C.    King County's Motion**

In moving for summary judgment, King County made three distinct arguments, namely that (i) King County has a qualified privilege with respect to statements made to the media, (ii) family members who were not present when Detective Johnson visited the family home have no cognizable claim based on the comments he allegedly made, and (iii) plaintiffs cannot establish the elements of outrage. Each contention has merit.

The Court agrees with King County that the two press releases at issue cannot form the basis of an outrage claim. King County enjoys a qualified privilege to release information to the public through the media, so long as it does not make "gratuitous statements concerning the facts of a case or disparaging the character of other parties to an action." *Bender v. City of Seattle*, 99 Wn.2d 582, 601, 664 P.2d 492 (1983). Plaintiffs

bear the burden of establishing that King County abused its qualified privilege because it knew of or acted with reckless disregard as to the falsity of one or more statements in the press releases. See id. at 601-02. Plaintiffs have not made the requisite showing of any triable issue concerning King County's knowledge or reckless disregard as to any inaccuracy of the material in the press releases.

The Court also agrees with King County that, to the extent the outrage claim is based on statements allegedly made by Detective Johnson on June 14, 2017, Tommy Le's mother (Dieu Ho), one of his aunts (Uyen Le), and his siblings (Quoc Nguyen, Tam Nguyen, Dung Nguyen, and Jefferson Ho) cannot recover because they were not present at the time. See Restatement (Second) of Torts § 46(2)(a) & cmt. l (AM. LAW INST. 1965) (cited with approval in Grimsby v. Samson, 85 Wn.2d 52, 59-60, 530 P.2d 291 (1975)).

Finally, the Court agrees with King County that plaintiffs have not identified conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See, e.g., Kloepfel, 149 Wn.2d at 196. The KCSO's press releases do not, as a matter of law, meet this standard. The initial press release did not even identify Tommy Le. See Ex. 1 to Houck Decl. (docket no. 81-1). The second press release was consistent with the data available at the time, bearing in mind that an investigation was then on-going. Compare Ex. 1 to West Decl. (docket no. 86-1) with Johnson Report, Ex. 74 to Arnold Decl. (docket no. 109-15).

Detective Johnson's alleged statement that Tommy Le "attacked the deputies with a knife" is likewise not actionable. When Detective Johnson first visited the family

home, he was not even certain that Le was the individual who had been shot by Deputy Molina.  *See* Johnson Report at 13, Ex. 74 to Arnold Decl. (docket no. 109-15).  When he returned to the family home about an hour and a half later, having confirmed the identity of the person who had been killed, the investigation was still in a nascent stage and information about what transpired was still being gathered.  *See id.* at 15.  Although the family would have been understandably upset by hearing an accusation that Tommy Le was attacking law enforcement personnel with a knife, such statement, if made, was not so inconsistent with the events leading up to the shooting, even as plaintiffs suggest they unfolded, that it could be considered outrageous.

Finally, plaintiffs' challenges to the thoroughness of Detective Johnson's investigation and to the adequacy of the Use of Force Review Board's examination do not establish an outrage claim.  Plaintiffs have not named Detective Johnson as a defendant, and they have not explained why King County would be liable under an outrage theory for any lack of diligence and/or candor on Detective Johnson's part in conducting his investigation and presenting his findings to the Use of Force Review Board.  Plaintiffs' criticisms concerning the work of Detective Johnson and the Use of Force Review Board remain at issue in the case, but in the context of King County's potential liability under *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978), and its progeny.  Plaintiffs have provided no basis for pursuing this matter under what would essentially be a duplicative claim for outrage.

**Conclusion**

For the foregoing reasons, the Court previously GRANTED in part King County's motion for summary judgment, docket no. 78, and DISMISSED with prejudice plaintiffs' outrage claim (Third Cause of Action). *See* Minute Order at ¶ 1(a) (docket no. 178). The Court further ORDERS:

(1) The Clerk is DIRECTED to (a) TERMINATE as plaintiffs Uyen Le, Kim Tuyet Le, Quoc Nguyen, Tam Nguyen, Dung Nguyen, and Jefferson Ho; and (b) AMEND the description for plaintiff Bao Xuyen Le to reflect that she sues only as Personal Representative of the Estate of Tommy Le and not individually;

(2) The caption of this action shall now be as follows:

BAO XUYEN LE, as Personal Representative of the Estate of Tommy Le; HOAI "SUNNY" LE; and DIEU HO,

                           Plaintiffs,

    v.

REVEREND DR. MARTIN LUTHER KING, JR. COUNTY; and KING COUNTY DEPUTY SHERIFF CESAR MOLINA,

                           Defendants.

(3) The Clerk is further DIRECTED to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 24th day of May, 2019.

                                                Thomas S. Zilly
                                                United States District Judge