1

The Honorable Thomas S. Zilly

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9  BAO XUYEN LE, as Personal Representative of
the Estate of TOMMY LE; HOAI "SUNNY" LE;
and DIEU HO,

No. 2:18-CV-00055-TSZ

10

Plaintiffs,

11

DEFENDANT KING COUNTY'S
MOTION FOR SUMMARY
JUDGMENT

vs.

12

13  REVEREND DR. MARTIN LUTHER KING JR.
COUNTY; and KING COUNTY DEPUTY
SHERIFF CESAR MOLINA,

*Noted for: March 5, 2021*

14

Defendants.

15

16                  **I.   RELIEF REQUESTED**

17         With discovery closed and trial approaching, a number of issues must be determined as a

18  matter of law in order to focus these proceedings.  Plaintiffs, who have the burden of proof at trial,

19  have failed to establish the factual record necessary to sustain their claims as a matter of law.

20  Plaintiffs' newly asserted state law claims should be dismissed under Washington's felony bar

21  statute, RCW 4.24.420.   Because this Court dismissed Plaintiffs' previous state law claims

22  outright, it has yet to rule on the felony bar issue.  *See*  Dkt. 148 (Minute Order at 1).   Plaintiffs

23  also lack colorable proof of negligence or causation.  Moreover, Plaintiffs have failed in their

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1   burden and promise to establish the facts necessary for King County's *Monell* liability under a

2   ratification theory.  For these reasons and those stated below, the Court should grant summary

3   judgment dismissing Plaintiffs' state law claims and its 42 U.S.C. § 1983 claim against King

4   County.[1]

## II.   STATEMENT OF FACTS

### A.   FACTS MATERIAL TO MOTION

7          On June 13, 2017, just before midnight, King County 911 dispatch received calls from

8   two civilians, Zachry Schwiethale and Kevin Hernandez, who reported that they had each been

9   chased and threatened by a man with a knife, later identified as Tommy Le.  Declaration of

10  Daniel L. Kinerk (Kinerk Decl.), Exh. 1; Exh. 2, 10:21-25 – 11:1-3, 24:10-22, 27:23-25, 28:1-17,

11  32:3-5, 33:7-25; Ex. 3; Ex. 4; Ex. 5, 2:6-16; Ex. 6, 36:18-25 – 37:1-8, 42:3-10, 43:15-19, 47:14-

12  25.  When police responded a few minutes later, Le appeared on the scene.  Kinerk Decl., Exh. 6,

13  57:13-25 – 58:1-14; Exh. 7, p. 4.  Deputy Cesar Molina attempted to talk to Le, "Hey, can we

14  talk to you?  We want to talk to you."  Kinerk Decl., Ex. 6, 58:15-25 – 59:1.  The deputies asked

15  Le to show his hands but he kept walking toward them. Kinerk Decl., Exh. 2, 50:18-23; Exh. 6,

16  59:11-14.  Le did not stop nor show his hands. Kinerk Decl., Exh. 2, 50:8-11.  Hernandez warned

17  the deputies, "he has a knife, he has a knife."  Kinerk Decl, Exh. 7, p. 4.   Deputies Molina and

18  Owens Tased Le.  Kinerk Decl, Exh. 2, 50:24-25 – 51:1-9; Ex. 6, 59:22-24, 60:15-19; Exh. 8, p.

19  3-4. But Le continued to advance.  Kinerk Decl, Exh. 6, 59:22-24  Ultimately, as Le moved to

20  within 3-5 feet of Deputy Molina and towards Deputy Paul and the civilian witnesses, Deputy

21

22

23

---

[1] King County understands that Deputy Molina is also joining in the County's felony bar arguments.

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1  Molina fired his weapon, killing Le.  Dkt. 108, p. 16 (Plaintiff's Opposition to Defendants'

2  Motions for Summary Judgment).

3          Other facts will be discussed below as relevant to the arguments.

4      **B.      PROCEDURAL HISTORY**

5          Plaintiffs originally asserted four state law claims against King County and Deputy

6  Molina. Dkt. 17. King County and Deputy Molina moved for summary judgment on March 29,

7  2019 and, on April 26, 2019, this Court granted the defendants' summary judgment motion on

8  the state law claims. Dkts. 78, 148.

9          On May 16, 2019, the court heard oral argument on the question of municipal liability

10  under the *Monell* standards, among other things.  In a subsequent minute order, the court denied

11  summary judgment on the *Monell* issues due to an unspecified material issue of fact:

12          King County's motion for summary judgment is otherwise DENIED. Having reviewed
           the entire transcript of the Rule 30(b)(6) deposition of Chief Lisa Mulligan, docket no.
13          175-1, the certification signed by Erin Overbey, Legal Advisor for the King County
           Sheriff's Office, docket no. 176, and the other materials presented by the parties, and
14          having considered the oral arguments of counsel at the hearing on May 16, 2019, the
           Court CONCLUDES that genuine disputes of material fact preclude summary judgment
15          with respect to whether King County may be held liable pursuant to *Monell v. Dep't of
           Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978), and its progeny. *See* Fed. R. Civ. P. 56(a).

16  Dkt. 178 at 1.

17          On December 2, 2019, this Court permitted plaintiffs to reassert a state law negligence

18  claim due to the Washington Supreme Court's opinion in *Beltran-Serrano v. City of Tacoma*,

19  193 Wn.2d 537, 442 P.3d 608 (2019).  Dkt. 221.  Plaintiffs subsequently filed their 2nd

20  Corrected Third Amended Complaint on August 14, 2020 pleading common law negligence

21  against the defendants for "negligently causing foreseeable harm in the course of Officer

22  Molina's law enforcement interaction that caused the death of Tommy Le."  Dkt. 234.

23

DEFENDANT KING COUNTY'S MOTION
FOR SUMMARY JUDGMENT [18-cv-00055-TSZ] - 3

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1

### III.  STATEMENT OF ISSUE

2

1. Should plaintiffs' state law claim against King County be dismissed under vicarious liability principles when their claims against Deputy Molina and other deputies are barred by RCW 4.24.420 and all of the deputies were acting within the course and scope of their employment?

3

4

2. Should plaintiffs' state law claim against King County be dismissed when plaintiffs have failed to prove negligence and causation due to negligence by deputies that caused Le's death?

5

6

3. Should plaintiffs' §1983 claims against King County be dismissed when the evidence demonstrates that no elected Sheriff ratified Deputy Molina's actions?

7

8

### IV.  EVIDENCE RELIED UPON

9

King County's Motion for Summary Judgment is based on the following evidence:

10

1. Declaration of Daniel L. Kinerk, with exhibits;

11

2. Declaration of Mitzi Johanknecht, with exhibit; and

12

3. The pleadings on file with this Court.

13

14

### V.  AUTHORITY AND ARGUMENT

15

Summary judgment is appropriate when, viewing the facts in the light most favorable to

16

the nonmoving party, there is no genuine issue of material fact which would preclude summary

17

judgment as a matter of law. Fed. R. Civ. P. 56.  Once the moving party has satisfied its burden,

18

it is entitled to summary judgment if the non-moving party fails to present, by affidavits,

19

depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is

20

a genuine issue for trial." *Celotex Corp. v. Cotrett*, 477 U.S. 317, 324,106 S. Ct. 2548, 91

21

L.Ed.2d 265 (1986). "The mere existence of a scintilla of evidence in support of the non-moving

22

party's position is not sufficient." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th

23

Cir.1995). Factual disputes whose resolution would not affect the outcome of the suit are

DEFENDANT KING COUNTY'S MOTION
FOR SUMMARY JUDGMENT [18-cv-00055-TSZ] - 4

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1   irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby,*

2   *Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, "summary

3   judgment should be granted where the nonmoving party fails to offer evidence from which a

4   reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### A.  PLAINTIFFS' STATE LAW CLAIM OF NEGLIGENCE AGAINST KING COUNTY MUST BE DISMISSED PURSUANT TO RCW 4.24.420 BECAUSE LE WAS IN THE COURSE OF COMMITTING MULTIPLE FELONIES AT THE TIME HE WAS SHOT.

Plaintiffs' state law claim of common law negligence against King County should be

dismissed pursuant to RCW 4.24.420 because Le was in the course of committing multiple

felonies at the time he was shot and his commission of those felonies was the proximate cause of

his death. Because Deputy Molina and the other deputies were acting in the course and scope of

their employment at the time of their use of force, their statutory immunity pursuant to RCW

4.24.420 extends to defendant King County under vicarious liability principles.

Known as the felony bar statute, RCW 4.24.420 provides a complete defense to liability

against all state law claims:

> It is a complete defense to any action for damages for personal injury or wrongful death that the person injured or killed was engaged in the commission of a felony at the time of the occurrence causing the injury or death and the felony was a proximate cause of the injury or death.

The Legislature's intent in enacting the felony bar statute was to enact tort reform in an

environment where counties were faced with increased exposure to lawsuits, resulting in higher

taxes to its citizens:

> The purpose of this chapter is to enact further reforms in order to create a more equitable distribution of the cost and risk of injury and increase the availability and affordability of insurance. . . . The legislature finds that counties, cities, and other governmental entities are faced with increased exposure to lawsuits and awards and dramatic increases in the cost of insurance coverage. These escalating costs ultimately affect the public through

DEFENDANT KING COUNTY'S MOTION
FOR SUMMARY JUDGMENT [18-cv-00055-TSZ] - 5

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

high taxes, loss of essential services, and loss of the protection provided by adequate insurance.

1986 WA Laws, ch. 305, §100.  The commission of a felony constitutes an absolute bar to liability for state law causes of action.  *See Estate of Lee ex rel. Lee v. City of Spokane*, 101 Wn. App. 158, 178, 2 P.3d 979 (2000) (dismissing action).

Under the facts of this case, King County Deputies were called to the scene because Le was in the course of committing multiple felonies.  The reports of Le's actions toward his neighbors constituted felony assault.  Washington law recognizes three definitions of assault:

> (1) an unlawful touching (actual battery); (2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it (attempted battery); and (3) putting another in apprehension of harm.

*State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009).  A person commits the crime of assault in the second degree when he "assaults another with a deadly weapon."  RCW 9A.36.021(1)(c). A person commits the crime of assault in the third degree when he "assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault."  RCW 9A.36.031(1)(g).

When the deputies arrived on the scene, Le had already assaulted Schwiethale and Hernandez with a knife or screwdriver by putting each of them in reasonable apprehension of harm.  Indeed, Hernandez was so fearful of Le's actions that he fired his gun.  When Le approached the intersection shortly after deputies had arrived and were interviewing the civilian witnesses, Le was *continuing* his ongoing assault against Schwiethale and Hernandez by "walking aggressively" toward them, and not responding to police commands to stop. At the same time, Le's movements toward the deputies and the civilians behind them further escalated the scene.  The report by Hernandez, warning deputies, "he has a knife, he has a knife" (Kinerk Decl, Exh. 7, p. 4), demonstrates continued and reasonable apprehension of harm.  Some on the

DEFENDANT KING COUNTY'S MOTION
FOR SUMMARY JUDGMENT [18-cv-00055-TSZ] - 6

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1    scene reported seeing an object in Le's clenched hand.  Le responded to neither commands nor

2    Taser.  Deputy Molina was sufficiently concerned about his own safety and the safety of others

3    that he fired his service weapon, thereby killing Mr. Le.

4           Although it turns out that Le was not actually holding a weapon, it is reasonable to infer

5    his intent to "create reasonable apprehension" in others by the way he acted.  When Le

6    threatened Schwiethale and Hernandez with a knife or screwdriver and came at Deputies Molina,

7    Owens and Paul with an apparent object in his hands, hands clenched as though holding a

8    weapon, there is no *genuine* issue of material fact as to whether he intended to create a

9    reasonable apprehension of harm to others.  Unlike *Davis v. King County*, 2021 WL 321659, ___

10   Wn. App. 2d ____ (2021), there is no evidence to refute this inference of assault.  Le was not

11   struggling with any mental health or suicidal ideation issues.   Dkt. 133, Ex. B, p. 5.  The more

12   likely explanation is Le was under the influence of LSD.  Dkt. 133, Ex. B, p. 5.  In the present

13   case, viewing the facts in the light most favorable to plaintiffs, at the time Le was shot, he was

14   assaulting Zachry Schwiethale and Kevin Hernandez, as well as Deputies Molina, Owens, and

15   Paul, by putting them in *apprehension of harm* – one of the legal definitions of assault.  For

16   Schwiethale and Hernandez, because Le had a knife or other sharp object, it was assault in the

17   second degree (assault with a deadly weapon).  For Deputies Molina and Owens, because they

18   were law enforcement officers, it was assault in the third degree.  All of the crimes being

19   committed by Le were felonies.

20          But for Le's actions of assaulting the civilians and the deputies, he would not have been

21   shot.  Therefore, his felony assaults were the proximate cause of him getting shot.

22          The language of RCW 4.24.420 is clear:  if a person is committing a felony then they

23   cannot later seek civil damages under state law.  As a result, this Court should dismiss plaintiffs'

DEFENDANT KING COUNTY'S MOTION
FOR SUMMARY JUDGMENT [18-cv-00055-TSZ] - 7

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

state law claim of negligence because Le was committing felonies at the time he was shot and the commission of those felonies was the proximate cause of his death.

**B.  PLAINTIFFS' STATE LAW CLAIM OF NEGLIGENCE SHOULD BE DISMISSED.**

Plaintiffs' negligence claim should be dismissed because they have not alleged negligence by King County deputies that directly led to Le's death.  In the present case, King County deputies were responding to an emergent situation in which Le had assaulted civilians and continued his assaultive behavior by moving aggressively toward deputies and civilians.  Unlike recent cases in which deputies voluntarily engaged in actions, such as a search warrant or surveillance to arrest a suspect, the King County deputies in this case were forced to respond in just 105 seconds to Le, who would not stop and appeared armed with a weapon.  Furthermore, plaintiffs have failed to show that had deputies acted differently, that the outcome would have been any different.

To "prevail on a negligence claim, a plaintiff 'must show (1) the existence of a duty to plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury." *Mancini v. City of Tacoma*, 2021 WL 279715, ___ P.3d ____ , ¶ 32 (1/28/21)(quoting *Ehrhart v. King County*, 195 Wn.2d 388, 396, 460 P.3d 612 (2020)).  In the context of law enforcement, the common law duty "encompasses the duty to refrain from directly causing harm to another through affirmative acts of misfeasance."  *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 550, 442 P.3d 608 (2019).

If an officer does act, "the officer has a duty to act with reasonable care."  *Id.* at 551 (citing *Coffel v. Clallam County*, 47 Wn. App. 397, 735 P.2d 686 (1987).  In *Beltran-Serrano*, an officer encountered a mentally ill homeless man and  the "simple social contact" escalated to use of deadly force.  *Beltran-Serrano*, 193 Wn.2d at 540.  The court held that because the officer had

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1   direct contact with Beltran-Serrano and the officer's affirmative actions led to the deadly force,

2   that Beltran-Serrano's claims of negligence could survive a summary judgment motion. *Id.* at

3   551-52.

4       In *Mancini*, *supra*, the police served a search warrant at the wrong apartment based on

5   misinformation from a confidential informant. *Mancini*, 2021 WL 279715, at ¶ 3-10.  The

6   Washington Supreme Court held that police executing a search warrant owe the same duty of

7   reasonable care that they owe when discharging other duties. *Id.* at ¶ 35.  In *Mancini*, plaintiff

8   alleged that the police actions leading up to the search warrant fell below a reasonable standard

9   of care because the police failed to conduct surveillance at the apartment and do a controlled

10  buy, which were steps usually taken to ensure they had the correct apartment before executing a

11  search warrant. *Id.* at ¶ 5.  In support of their holding, the *Mancini* court cited numerous cases in

12  which the police acted negligently in carrying out their duties:  failure to release the wrong

13  suspect, negligent emergency response, negligent high-speed chase in pursuit of suspect.

14  *Mancini*, n.8.

15      *Beltran-Serrano*, *Mancini*, and the duty of care cases cited within those opinions involve

16  alleged negligence in *affirmative* acts by police carrying out their duties that led to injury to a

17  plaintiff.  In *Beltran-Serrano,* the police officer approached a homeless man sitting on the street,

18  not committing any crime.  In *Mancini*, the police served a search warrant in the home of an

19  innocent person.  In both cases, the police were able to control the timing of their actions and

20  when to act.

21      Similarly, in a recent decision by this Court, *Briscoe v. City of Seattle*, 2020 WL 5203588

22  (W.D. Wash. Sept 1, 2020), police were conducting a surveillance operation at a residence. *Id.*

23  at ¶ 2.  Police observed a convicted felon, Che Taylor, enter the house.  *Id.*  Police observed a

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1     black handgun in a holster on Taylor's right hip.  *Id.*  A decision was made to arrest Taylor when

2     he came out of the house.  *Id.*  However, when Taylor exited, police lost sight of him and he was

3     able to leave.  *Id.*  Sometime later, while police were still at the location, a car arrived back at the

4     house and Taylor exited the car.  *Id.*  Police then moved in to arrest Taylor and Taylor was shot

5     and killed when, according to the officers, Taylor did not show his hands and appeared to be

6     going for a weapon.  *Id.* at ¶ 2-3.

7         In denying a motion for summary judgment on the negligence claims in *Briscoe*, this

8     Court noted that "a plaintiff may not base a claim of negligence on an intentional act, like the use

9     of excessive force, but may sue for negligent acts leading up to the ultimate use of force."  *Id.* at

10    n. 15 (citing *Beltran-Serrano*, *supra)*.  This Court then listed the deficiencies alleged by plaintiff

11    in the police department's "handling of matter immediately before Taylor was shot."  *Id.*

12         In the present case, unlike *Beltran-Serrano*, *Mancini*, and *Briscoe*, the police were

13    *responding* to an emergent situation where a violent crime had been and was still being

14    committed.  The police were not able to prepare or set up their response because an armed man

15    had assaulted citizens and was refusing to stop and was aggressively approaching the police and

16    civilians.   The entire encounter with police lasted 105 seconds.

17         No court has directly addressed the standard of care for police use of deadly force, but it

18    is set out and defined in statute.  RCW 9A.16.040 governs the use of deadly force by police in

19    this type of situation:

20         (1) Homicide or the use of deadly force is justifiable in the following cases:

21                                       **. . .**

22         (c) When necessarily used by a peace officer meeting the good faith standard of this
             section or person acting under the officer's command and in the officer's aid:

23         (i) To arrest or apprehend a person who the officer reasonably believes has committed,
             has attempted to commit, is committing, or is attempting to commit a felony;

DEFENDANT KING COUNTY'S MOTION
FOR SUMMARY JUDGMENT [18-cv-00055-TSZ] - 10

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1

2   RCW 9A.16.040(1)(c).  By this statute, the "necessarily used" duty of care owed by police is

3   expressly modified by the "good faith standard" in subsection (4) of the same statute:

4   (4) A peace officer shall not be held criminally liable for using deadly force in *good faith*, where

5   *"good faith" is an objective standard which shall consider all the facts, circumstances, and*

6   *information known to the officer at the time to determine whether a similarly situated reasonable*

7   *officer would have believed that the use of deadly force was necessary to prevent death or*

8   *serious physical harm to the officer or another individual.* RCW 9A.16.040(4)(emphasis added).

9        Thus, in order for plaintiffs' negligence claims to proceed, they must allege deficiencies

10   in how the police handled the situation immediately before Le was shot applying the standard as

11   set forth by RCW 9A.16.040.  In other words, deficiencies in the 105 seconds deputies had to

12   deal with Le advancing on them and the civilians with what they believed was a weapon in his

13   clenched fists.  The deputies asked Le to stop, show his hands, and drop his weapon, and he

14   ignored them.  Deputies Owens and Molina then Tased Le and Le continued to move

15   aggressively toward them and the civilians.  At that point, Le was shot.  Under all the facts,

16   circumstances, and information known to these officers, plaintiffs have presented no proof that

17   officers violated the "good faith" standard of care in using deadly force, which necessarily

18   causes their negligence claim to fail as a matter of law.

19        The deficiencies alleged in *Briscoe*, that this Court held were enough to allow the

20   negligence claims to proceed to trial, simply did not exist in this situation where police were

21   responding to a rapidly unfolding situation with an armed man advancing on them.  Moreover,

22   *Briscoe* does not indicate that the statutory standard of care in deadly force cases was brought to

23

DEFENDANT KING COUNTY'S MOTION
FOR SUMMARY JUDGMENT [18-cv-00055-TSZ] - 11

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1    the court's attention.  Absent proof under the statutory standard, Plaintiffs have failed to allege

2    negligence that can proceed to trial.

3           Furthermore, not only do plaintiffs have to allege viable claims of negligence, but they

4    have to establish cause - that "but for" the alleged negligence, the injury would not have

5    occurred.  In the present case, plaintiffs have failed to establish that any different actions by the

6    police would have resulted in a different outcome.  For example, plaintiffs have no evidence that

7    if the deputies had talked more softly to Le that he would have stopped his advance or complied

8    with the deputies' directions.  Plaintiffs also have not established that if Deputy Molina had used

9    force other than a gun, that Le would have stopped and not been killed, or that the deputies had

10   an obligation to risk bodily injury by going "hands on" with Le after being warned of a knife.

11   Only a few minutes earlier, Le had been undeterred when Kevin Hernandez had fired a gun at his

12   feet, continuing to chase Hernandez into his home.  There is no evidence to support that "but for"

13   the actions of the deputies that Le would not have been shot.

14          Plaintiffs have failed to establish a genuine issue of fact regarding negligence to allow the

15   claim to proceed to trial and this Court should dismiss plaintiff's state law negligence claim.  On

16   all of these matters, plaintiffs have the burden of proof and must present that proof to avoid

17   summary judgment.

18          **C.    PLAINTIFFS' RATIFICATION THEORY FAILS BECAUSE NO**
             **ELECTED SHERIFF EVER APPROVED THE FINDINGS OF THE USE**
19          **OF FORCE BOARD.**

20          Although this court denied a prior summary judgment motion on King County's *Monell*

21   liability based on unspecified material issues of fact, recent developments in case law and the

22   completion of discovery merit judgment as a matter of law on this issue.  Rather than waste

23   valuable trial time presenting testimony, a liability theory that should be dismissed through a

DEFENDANT KING COUNTY'S MOTION
FOR SUMMARY JUDGMENT [18-cv-00055-TSZ] - 12

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1    half-time motion, King County respectfully requests a ruling dismissing plaintiffs' *Monell* claims

2    under Rule 56 because there are currently no material issues of fact and dismissal of this claim is

3    appropriate as a matter of law.  A second summary judgment motion brought "months later" and

4    "prior to the dispositive motions deadline . . . is timely and is properly filed under this district's

5    local rules."  *Jinni Tech Ltd. v. Red.com, Inc.*, C17-0217JLR, 2020 WL 5095458, at *3 (W.D.

6    Wash. Aug. 28, 2020).

7            In response to King County's previous *Monell* motion, plaintiffs indicated that their

8    *Monell* claims were predicated on a ratification theory because Deputy Molina's actions were

9    supposedly "ratified" by the King County Sheriff.  Dkt. 108 (Pls's Opposition at 71-74).

10   Plaintiffs made no effort to present actual evidence of the elected Sheriff's approval, claiming

11   instead that "[t]he Sheriff has therefore given final approval as required by GOM 6.03.030(1) ***by***

12   ***default*.*"  *Id.* at 73 (emphasis added).  Although it was Plaintiffs' burden to present affirmative

13   evidence of ratification, there was no evidence in the record when this court denied summary

14   judgment affirmatively demonstrating that either former Sheriff John Urquhart or Sheriff

15   Johanknecht ratified anything.[2]  Plaintiffs have made no further effort to develop evidence that

16   would satisfy their burden of proof to demonstrate ratification at trial.  The statements of former

17   Sheriff Urquhart, along with the Declaration of Sheriff Johanknecht, exceeds King County's

18   summary judgment burden by showing that no elected Sheriff ratified Deputy Molina's actions

19   or approved the Board's findings.

20           In the recent case of *Estate of Wangsheng Leng by & through Liping Yang v. City of*

21   *Issaquah*, C19-490 TSZ, 2020 WL 7398749, at *5 (W.D. Wash. Dec. 17, 2020), this Court

22

23   ---

     [2] At the court's request, King County provided factual responses to three questions posed by the
     court.  Dkt. 176.  These responses do not state whether the Sheriff concurred or did not concur
     with the Use of Force Board ("Board") findings.  *Id.*

DEFENDANT KING COUNTY'S MOTION
FOR SUMMARY JUDGMENT [18-cv-00055-TSZ] - 13

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

*focused* the inquiry necessary for a successful ratification claim.  In order to satisfy *Monell*, the

evidence must demonstrate a "conscious, affirmative choice" to approve the officer's conduct:

> In the absence of a 'conscious, affirmative choice' to approve Lucht's and Whittom's actions on the part of the IPD and/or the City of Issaquah, plaintiff cannot establish ratification. *See Johnson v. Shasta County*, 83 F. Supp. 3d 918, 933 (E.D. Cal. 2015) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992)); *see also Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) ("a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval").

*Id.* at \*6.  There was no ratification in *Leng* as a matter of law because the municipality had not

"officially exonerated" either officer.  *Id.*  Plaintiffs' claims of ratification "by default" fall far

short of this "conscious, affirmative choice" standard and therefore fail as a matter of law.

As in *Leng*, there is no evidence that the official policy maker for the King County

Sheriff's Office ("KCSO"), which was the elected Sheriff, formally approved Deputy Molina's

actions.[3]  Certainly, plaintiffs admit that former Sheriff Urquhart did nothing to ratify Deputy

Molina's actions.  Dkt.108 (Pls' Ops. at 72).  Plaintiffs claim that Sheriff Urquhart stated that it

was not necessary for Deputy Molina to shoot Tommy, and that he should have "wrestled Tommy

to the ground and taken the plastic pen from his hand."  *Id.*  These statements, submitted by

Plaintiff, actually defeat their own ratification claim.  At the time of the incident, Sheriff

Urquhart was the official policymaker and he apparently did not approve of Deputy Molina's

actions.

Sheriff Johanknecht, who was the final policy maker by the time the Use of Force

Review Board ("Board") issued its findings, took no action to ratify the Board's decisions or

Deputy Molina's actions; she made no "conscious, affirmative choice."  Sheriff Johanknecht

---

[3] The adoption of various amendments to the King County Charter in November 2020 alter the status of the elected Sheriff as the final policy maker for KCSO.  Charter Amendment 5 makes the Sheriff an appointed position and Charter Amendment 6 allows the County Council to determine the duties of the Sheriff by ordinance.

DEFENDANT KING COUNTY'S MOTION
FOR SUMMARY JUDGMENT [18-cv-00055-TSZ] - 14

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1    points out that she was aware of the Board's decision and "reviewed" the memorandum, but took

2    no further actions except to inform deputies in the Sheriff's of the Board's findings.

3    (Johanknecht Decl. at  7).  Although the Sheriff had the option of either signing the Board's

4    memorandum or sending it back for further review, the Sheriff "did not do either of these things

5    with the Use of Force Review Board memorandum in the Tommy Le incident." *Id.* at  9.  Thus,

6    the Sheriff never formally signed off, approved, or ratified the Use of Force Review Board

7    memorandum reviewing the Le shooting.

8            In the face of this affirmative evidence, Plaintiffs' claim of "ratification by default" fails

9    as a matter of law.  In the *Christie* decision cited in *Leng*, the Ninth Circuit pointed out that a

10   plaintiff claiming ratification "must prove that the 'authorized policymakers approve[d] a

11   subordinate's decision and the basis for it.'"   *Christie*, 176 F.3d at 1239 (*quoting* City of St.

12   Louis v. *Praprotnik,* 485 U.S. 112, 127 (1988) (plurality)).  Sheriff Johanknect's actions in

13   neither approving or disapproving of the Board's  findings does not constitute ratification

14   because "it is well-settled that a policymaker's mere refusal to overrule a subordinate's completed

15   act does not constitute approval." *Id.  See also Weisbuch v. County of Los Angeles,* 119 F.3d 778,

16   781 (9th Cir.1997) ("To hold cities liable under section 1983 whenever policymakers fail to

17   overrule the unconstitutional discretionary acts of subordinates would simply

18   smuggle *respondeat superior* liability into section 1983.").  In short, ratification cannot occur

19   "by default," but requires evidence that the policymaker "made a deliberate choice to endorse"

20   the subordinate employee's actions. *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992).

21   *See also Dixon v. Pinal Cty.*, CV-10-325-PHX-DGC, 2011 WL 2669245, at *2 (D. Ariz. July 7,

22   2011) (A Defendants' inaction, standing alone, is not enough to create a triable ratification issue).

23

DEFENDANT KING COUNTY'S MOTION
FOR SUMMARY JUDGMENT [18-cv-00055-TSZ] - 15

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1    Further, plaintiffs' *Monell* claims fail because they have no evidence demonstrating that

2   any alleged ratification *caused* Deputy Molina to shoot Mr. Le.  Municipal liability exists only

3   where "the harm was caused in the implementation of 'official municipal policy.'"  *Lozman v.*

4   *City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1951, 201 L. Ed. 2d 342 (2018).  Ratification is a

5   way to prove the existence of an official policy, but causation still must be present for a

6   successful §1983 claim.  *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016)

7   (Pointing out the need for "a direct causal link between a municipal policy or custom and the

8   alleged constitutional deprivation."); *Waters v. Madson*, 921 F.3d 725, 743 (8th Cir. 2019)

9   ("There must be a causal connection between the municipal policy or custom and the alleged

10  constitutional violation in order to state a valid claim under § 1983.").

11       In some limited circumstances, after-the-fact ratification provides a direct causal link to

12  the earlier actions of a municipal employee because it continues an ongoing constitutional

13  violation.  For example, if a school superintendent fires a teacher for unconstitutional reasons

14  and then the school board approves the firing with knowledge of the superintendent's improper

15  purpose, it both "ratifies" the firing and perpetuates the constitutional harm through its own

16  actions.  A causal link between the ratification and the official school board action exists in this

17  circumstance.  *See Praprotnik,* 485 U.S. at 127,  ("[W]hen a subordinate's decision is subject to

18  review by the municipality's authorized policymakers, they have retained the authority to

19  measure the official's conduct for conformance with their policies. If the authorized

20  policymakers approve a subordinate's decision and the basis for it, their ratification would be

21  chargeable to the municipality because their decision is final.").  Ratification also overcomes

22  causation problems when the after-the-fact ratification is evidence of the policies that constrained

23

DEFENDANT KING COUNTY'S MOTION
FOR SUMMARY JUDGMENT [18-cv-00055-TSZ] - 16

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

the municipal employee to take an unconstitutional action.  *Id.* But neither circumstance exists in this case.

With an alleged excessive force incident, no causal link can exist between any *single* instance of ratification (or nonratification) and the shooting of Mr. Le.  Unlike a school board whose actions can resolve an unconstitutional firing, the Sheriff has absolutely no power to undo the Le shooting, which by itself, completely precludes the causal connection necessary for a viable § 1983 cause of action.   Similarly, there is nothing about an after-the-fact approval that evidences a policy that might have constrained Deputy Molina toward the single choice to shoot Mr. Le despite other options.  Unlike ministerial municipal employees who might be constrained by official policy, later ratified, to take an unconstitutional action, the options open to a deputy in a use of force incident are myriad.  Any after-the-fact approval by the Sheriff does not constrain a deputy's choice of discretionary actions, but merely approves one possible course of conduct out of nearly infinite possibilities.

Even if an elected Sheriff had ratified Deputy Molina's actions through approval of the Board's findings (which the evidence fails to support), causation for a legally sufficient §1983 claim cannot rest on this single incident.  An "after-the-fact approval of the investigation" did not cause Le's death, and "a contrary holding 'would effectively make the [sheriff's office] liable on the basis of *respondeat superior*, which is specifically prohibited by *Monell*.'"  *Pineda v. Hamilton Cty., Ohio*, 977 F.3d 483, 496 (6th Cir. 2020) (citation omitted).  *See also Waters v. Madson*, 921 F.3d 725, 743 (8th Cir. 2019) ("Chief Wise's after-the-fact determination [as official policy maker] did not cause the alleged violations of Appellants' constitutional rights and that Appellants, therefore, cannot premise a <u>Monell</u> claim on Chief Wise's actions.").

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1    Finally, Plaintiffs cannot satisfy *Monell* by claiming inadequacies in the Board's Le

2  investigation alone without proving other prior instances of so-called "sham investigations."

3  Plaintiffs have abandoned any "pattern and practice claim" (*see* Dkt. 108 Pls's Opp. at 71), but

4  "an allegation of a *single* failure to investigate a single plaintiff's claim does not

5  suffice." *Pineda v. Hamilton Cty., Ohio*, 977 F.3d 483, 495 (6th Cir. 2020). As the Sixth

6  Circuit explains, the requirement for proof of *multiple* failures to investigate follows from

7  §1983's causation element:

8          This requirement (that there be multiple failures to investigate) also follows
   from § 1983's causation element. To protect against *respondeat superior* liability, the
9  Supreme Court has held that § 1983 imposes a "rigorous" causation standard where, as
   here, a plaintiff seeks to hold a local entity liable for its employee's actions. *Brown*, 520
10 U.S. at 405, 117 S.Ct. 1382. A plaintiff must show that the *entity's* unconstitutional
   custom—not just the *employee's* unconstitutional action—caused the plaintiff's
11 injury. *Id.* at 404, 117 S.Ct. 1382. In this case's context, there must be a "link between"
   the local entity's failure to investigate and the plaintiff's injury. *Meirs*, 821 Fed.Appx. at
12 453; *see Smith v. City of Troy*, 874 F.3d 938, 947 (6th Cir. 2017). ***And an entity's failure
   to investigate the plaintiff's specific claim will, by definition, come after the employee's
13 action that caused the injury about which the plaintiff complains. Because the injury
   will have already occurred by the time of the specific investigation, "there can be no
14 causation" from that single failure to investigate.*** *David*, 706 F. App'x at 853. As the
   Eleventh Circuit noted, "a single failure to investigate an incident cannot have caused that
15 incident." *Salvato v. Miley*, 790 F.3d 1286, 1297 (11th Cir. 2015); *cf. Ellis ex rel.
   Pendergrass v Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 701 n.5 (6th Cir. 2006). A series
16 of investigative failures before the plaintiff's injury, by contrast, might at least suggest
   that the local entity's custom led to the employee's harmful action in the plaintiff's own
17 case. *See Brown*, 520 U.S. at 407, 117 S.Ct. 1382.

18 *Id.* at 495 (emphasis added). Because there was no ratification by the elected Sheriff and

19 plaintiffs have failed to pursue other avenues to satisfy *Monell*, their §1983 claims against King

20 County must be dismissed.

21

22

23

DEFENDANT KING COUNTY'S MOTION
FOR SUMMARY JUDGMENT [18-cv-00055-TSZ] - 18

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## V.  <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant summary judgment and dismiss

plaintiffs' claims against King County.


DATED this 11th day of February, 2021 at Seattle, Washington.


                                   DANIEL T. SATTERBERG
                                   King County Prosecuting Attorney


                                    *s/Daniel L. Kinerk*_____
                                   DANIEL KINERK, WSBA #13537
                                   CARLA B. CARLSTROM, WSBA #27521
                                   Senior Deputy Prosecuting Attorneys
                                   Attorney for Defendant King County
                                   King County Prosecuting Attorney
                                   500 Fourth Avenue, Suite 900
                                   Seattle, WA.  98104
                                   (206) 296-8820   Fax (206) 296-8819
                                   dan.kinerk@kingcounty.gov
                                   carla.carlstrom@kingcounty.gov

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1

**<u>CERTIFICATE OF SERVICE</u>**

2        I hereby certify that on February 11, 2021, I electronically filed the foregoing document(s)

3   with the Clerk of the Court using the CM/ECF System which will send notification of such filing

4   to the following participants:

5                          Jeffrey M Campiche
                           Philip G. Arnold
6                          Jeffrey Katz
                           Attorneys for Plaintiffs
7                          CAMPICHE ARNOLD PLLC
                           111 Queen Anne Avenue North, Suite 510
8                          Seattle, WA 98109
                           (206) 281-9000
9                          jcampiche@campichearnold.com
                           parnold@campichearnold.com
10                         jkratz@campichearnold.com

11                         Timothy R. Gosselin
                           GOSSELIN LAW OFFICE, PLLC
12                         1901 Jefferson Ave., Suite 304
                           Tacoma, WA 98402
13                         253-627-0684
                           tim@gosselinlawoffice.com

14

15        I declare under penalty of perjury under the laws of the United States and the State of

16   Washington that the foregoing is true and correct.

17

18        DATED this 11th day of February, 2021 at Bellevue, Washington.

19

20                         _____
                           Rafael A. Munoz-Cintron
21                         Legal Assistant
                           King County Prosecuting Attorney's Office

22

23

DEFENDANT KING COUNTY'S MOTION
FOR SUMMARY JUDGMENT [18-cv-00055-TSZ] - 20

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819