1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

5
6
7
8

BAO XUYEN LE, as Personal
Representative of the Estate of Tommy Le;
HOAI "SUNNY" LE; and DIEU HO,

9

                    Plaintiffs,

10

        v.

11

REVEREND DR. MARTIN LUTHER
KING, JR. COUNTY; and KING
COUNTY DEPUTY SHERIFF CESAR
MOLINA,

12
13
14

                    Defendants.

C18-55 TSZ

ORDER FOR VIRTUAL
CIVIL JURY TRIAL

15        THIS MATTER involves the June 14, 2017, fatal shooting of Tommy Le by

16  King County Sheriff's Deputy Cesar Molina.  Tommy Le's aunt, Bao Xuyen Le, who is

17  the personal representative of his estate, has alleged the following claims against Molina

18  and/or his employer, King County:  (i) use of excessive force in violation of 42 U.S.C.

19  § 1983; and (ii) negligence.  _See_ Plas.' 2d Corrected 3d Am. Compl. (docket no. 234).

20  Le's parents, Hoai "Sunny" Le and Dieu Ho, bring claims under § 1983 for deprivation

21  of their rights under the Fourteenth Amendment to the companionship and society of

22  their son.  _Id._

23

1    This case was set for trial on June 10, 2019.  Shortly before the trial date, on

2  May 28, 2019, Molina and King County filed Notices of Appeal, docket nos. 191 and

3  193, seeking review as to *inter alia* the Court's denial of qualified immunity.  The trial

4  date was stricken and the matter was stayed.  *See* Order (docket no. 209).  Over a year

5  later, the United States Court of Appeals for the Ninth Circuit dismissed the appeals for

6  lack of jurisdiction and concluded that they were frivolous.  *See* Memo. (docket no. 224);

7  Orders (docket nos. 230 & 231).  In the meanwhile, efforts to reduce the spread of the

8  pathogen that causes Coronavirus Disease 2019 ("COVID-19") had shuttered the

9  courthouse, *see* General Orders 01-20, 02-20, & 03-20, and all in-person jury trials,

10  criminal and civil, now remain suspended until at least March 31, 2021, *see* General

11  Order 18-20.  The Court anticipates that civil jury trials will not take place within the

12  courthouse for several more months.

13    After the Ninth Circuit issued its mandate, and having reviewed the parties' Joint

14  Status Report, docket no. 244, the Court set a trial date of April 19, 2021.  *See* Minute

15  Order (docket no. 245).  During a subsequent status conference, which was conducted via

16  the ZoomGov platform on October 15, 2020, the parties agreed to conduct jury selection

17  by remote means.  Minutes (docket no. 246).  With regard to other portions of the trial,

18  however, the parties dispute whether proceeding virtually is appropriate.  King County

19  and Molina object to the trial being held entirely on ZoomGov, and they propose to either

20  continue the trial date to an unspecified time when this District might resume "normal"

21  operations or to press forward with an in-person trial on the current trial date.  Plaintiffs

22  prefer to keep the current trial date and to present the testimony and other evidence, as

23

well as the opening statements and closing arguments, virtually.  Having reviewed the

parties' briefs, docket nos. 268, 271, 275, 277, and 278, and having considered the oral

arguments of counsel via ZoomGov on February 25, 2021, the Court issued a Minute

Order, docket no. 279, indicating that trial in this matter shall be conducted remotely,

commencing on April 19, 2021.  This Order explains the Court's reasoning.

**A.**     **Authority to Convene a Jury Trial By Remote Means**

The Court's analysis begins with the following proclamation:

> Every trial on the merits must be conducted in open court and, so far as
> convenient, in a regular courtroom.  Any other act or proceeding may be done
> or conducted by a judge in chambers . . . and anywhere inside or outside the
> district.

Fed. R. Civ. P. 77(b).  This rule does not define "open court" or "regular courtroom," and

no authority construing these terms has come to the Court's attention.  *See* *Gould Elecs.*

*Inc. v. Livingston Cnty. Rd. Comm.*, 470 F. Supp. 3d 735, 738 (E.D. Mich. 2020).  Given,

however, Rule 77(b)'s juxtaposition of "open court" as the manner of conducting trial

with "chambers" in relation to other proceedings, the Court concludes that "open court"

is not synonymous with a physical courtroom, but rather suggests that the public should

ordinarily have access to a trial, as opposed to pre-trial activities.  *See id.* at 739 (citing

Black's Law Dictionary).  This view is bolstered by the rule's inclusion of the phrase "in

a regular courtroom," which would otherwise be superfluous.  With respect to "a regular

courtroom," Rule 77(b) sets forth the caveat "so far as convenient," which is in stark

contrast to the imperative "must," used in connection with "open court," and which offers

the flexibility to conduct trials in "non-traditional ways."  *See id.* at 738-40; *see also*

*Kieffaber v. Ethicon, Inc.*, No. 20-1177, 2021 WL 425822, at *2 (D. Kan. Feb. 8, 2021);

*Liu v. State Farm Mut. Auto. Ins. Co.*, --- F. Supp. 3d ---, 2020 WL 8465987, at *1 (W.D. Wash. Dec. 17, 2020).

While Rule 77(b) contemplates that designated brick-and-mortar spaces might not be available or "convenient" for holding trials, a different court rule acknowledges that witnesses might not be able to provide testimony in person:

> At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

Fed. R. Civ. P. 43(a). This rule likewise contains no definition of the term "open court," but its drafting history supports an understanding that the phrase has a functional rather than physical meaning. *See Gould*, 470 F. Supp. 3d at 738-39. Rule 43(a)'s reference to "open court" eschews an earlier practice of presenting evidence by way of affidavits or edited deposition transcripts in favor of "live" testimony, on the record, in proceedings that are open to the public. *See id.* The "open court" requirement serves two purposes: (i) ensuring that witness testimony may be tested by cross-examination, and (ii) allowing the trier of fact to observe the demeanor of the witness. *See Kieffaber*, 2021 WL 425822, at *3 (citing *In re Adair*, 965 F.2d 777, 780 (9th Cir. 1992)). Videoconference platforms like ZoomGov adequately allow for cross-examination and the "near instantaneous transmission of testimony with no discernable difference" from "live" testimony allows jurors "to judge credibility unimpeded." *Liu*, 2020 WL 8465987, at *2. Nothing about a virtual jury trial is inconsistent with the principles underlying Rules 43(a) and 77(b), *see Gould*, 470 F. Supp. 3d at 739, and the Court concludes that it has the authority to require

1    the parties in this matter to try this case via remote means.  *See Liu*, 2020 WL 8465987,

2    at *1; *see also Flores v. Town of Islip*, No. 18-cv-3549, 2020 WL 5211052, at *1-2

3    (E.D.N.Y. Sep. 1, 2020) (rejecting the notion that a party's objection (or lack of consent)

4    is dispositive on the issue of a virtual trial).

5    **B.    Circumstances Necessitating Virtual Jury Trial**

6           Having determined that Rules 43(a) and 77(b) authorize a trial via ZoomGov, the

7    Court must decide whether to exercise its discretion to proceed remotely over defendants'

8    objections.  In considering the issue, the Court will apply the more stringent standard of

9    Rule 43(a), which requires "good cause in compelling circumstances" and "appropriate

10   safeguards," rather than the "convenience" rubric of Rule 77(b).  To find the requisite

11   "good cause" and "compelling circumstances," the Court need look no farther than

12   General Orders 01-20 and 02-20, which set forth the reasons for closing the courthouses

13   in Seattle and Tacoma, and General Order 18-20, which articulated the basis for keeping

14   the doors essentially shut through at least March 31, 2021.

15          This district was one of the first places in the nation to experience an outbreak of

16   COVID-19, which is a severe and often fatal illness.  *See* General Order 01-20.  In

17   February 2020, Washington State Governor Jay Inslee declared a state of emergency,

18   *see* General Order 02-20, and even now, over a year later, indoor gatherings are curtailed

19   and businesses are limited to 25% of their indoor capacity, *see* Healthy Washington –

20   Roadmap to Recovery (Feb. 14, 2021) (available at https://www.governor.wa.gov/issues/

21   issues/covid-19-resources/covid-19-reopening-guidance-businesses-and-workers).

22   Although the number of infections, hospitalizations, and deaths have recently declined,

23

1    and inoculation efforts are underway, the majority of the general public will not be fully

2    vaccinated before the trial date in this matter, and social distancing remains a necessary

3    component of our collective response to COVID-19.  _See_ General Order 18-20; _see also_

4    Washington's COVID-19 Vaccine Phases (indicating that Phase 2 of the vaccination

5    process will not commence until sometime after April 26, 2021, and that information

6    about Phases 3 and 4 is forthcoming) _and_ COVID-19 Vaccine Prioritization Guidance

7    and Interim Allocation Framework (Mar. 4, 2021) (defining Phase 2 as potentially

8    including "critical" workers and certain disabled individuals, Phase 3 as targeting

9    "essential" workers and youths, and Phase 4 as involving the remainder of Washington's

10   population) (both documents available at https://www.doh.wa.gov/Emergencies/

11   COVID19/VaccineInformation/AllocationandPrioritization) (last visited Mar. 8, 2021);

12   _cf. Liu_, 2020 WL 8465987, at *2 (relying on an earlier prediction of May 2021 as the date

13   by which inoculation of the general public might begin).

14          Defendants' suggestion that, given the present conditions, the Court could proceed

15   with an in-person jury trial as currently scheduled defies logic.  Defendants' alternative

16   request that the trial date be continued until proceedings may safely be conducted in the

17   courthouse is DENIED for the following reasons.  This matter has been pending for

18   over three years, since January 2018.  It was ready for trial almost two years ago, in

19   May 2019, before defendants took a frivolous interlocutory appeal to the Ninth Circuit.

20   To the extent defendants believe that a virtual trial will be somehow inferior to a

21   traditional one (a view that the Court does not share), defendants have only themselves to

22   blame.  Had they accepted the Court's determination that questions of fact precluded

23

ORDER FOR VIRTUAL CIVIL JURY TRIAL - 6

1    summary judgment on the issue of qualified immunity and not made misrepresentations

2    to both this Court and the Ninth Circuit about the nature of their appeal, defendants could

3    have had a trial in the Seattle courthouse in mid-2019, several months before the current

4    pandemic started.  In light of this procedural posture, the Court will not ask plaintiffs to

5    wait another three to six months, or perhaps a year or more, to present their claims to a

6    jury.  *See* *Liu*, 2020 WL 8465987, at *3.

7    Neither defendants nor the Court can predict when or in what manner a civil jury

8    trial may be conducted in the courthouse.  Defendants have suggested that, because

9    criminal jury trials are currently proceeding in King County Superior Court, an in-person

10   civil jury trial can be held immediately or within the near future in this district.  This

11   argument ignores the different rights at stake in criminal and civil matters, as well as the

12   logistics of re-opening the doors at 700 Stewart Street.  No criminal cases have been tried

13   in this district for over a year, and when the court reconstitutes itself, criminal matters

14   must be given priority over civil actions with respect to the summoning and selection of

15   jurors and the commencement of trial.  Dealing with the district-wide backlog of criminal

16   proceedings would likely delay in an unpredictable fashion any in-person trial in this

17   case.

18   Defendants' contention that the Court can simply return to business as usual is

19   likewise unrealistic given what is known and unknown about the mutations of the

20   pathogen that causes COVID-19, the effectiveness of the various vaccines against the

21   different strains of the coronavirus, and the rates and mechanisms of infection among

22   vaccinated and unvaccinated individuals.  Even if "herd immunity" is eventually believed

23

ORDER FOR VIRTUAL CIVIL JURY TRIAL - 7

1  to have been achieved, safe practices for the conduct of trial will likely include specific

2  limitations on the number of people in a particular area (for example, the jury room) and

3  other social distancing protocols, the use of personal protective equipment, and the

4  implementation of methods to avoid the sharing of items like microphones and trial

5  exhibits.  Some of these practices might impact jurors' abilities to see the witnesses, view

6  the physical evidence, and engage in deliberations, and thus, defendants cannot use as a

7  baseline for comparison the way in which trials were handled pre-pandemic.

8          Having presided over two virtual trials in which the jurors deliberated to a verdict,

9  the Court is persuaded that defendants' concerns regarding remote proceedings are

10  unwarranted.  The district's Virtual Trial Committee anticipated a number of defendants'

11  fears and has addressed them.  For example, to ensure that potential jurors are not

12  precluded from participating in virtual trials by lack of access to the necessary equipment

13  and/or connectivity, the district is prepared to loan out devices with cellular Internet

14  service.  *See Liu*, 2020 WL 8465987, at *3.  The Virtual Trial Committee's forethought

15  and investment in such technology has significantly reduced the chances of inadvertently

16  altering the demographics of the jury venire on socio-economic or similar bases.  Indeed,

17  the district has experienced a higher response rate to jury summonses in connection with

18  remote trials than it has historically seen.  This fact undermines defendants' assertion that

19  an in-person trial will produce a more adequate spectrum of jurors.  At least five of the

20  27 potential jurors in the Court's most recent virtual trial resided more than a 90-minute

21  drive away from the Seattle courthouse, and most, if not all, of them might have been less

22  likely to participate had they been required to travel such distances, stay overnight in

23

1  nearby hotels and attempt to forage for food among the few open restaurants, and thereby

2  face a greater risk than other jurors of becoming infected with the coronavirus and/or

3  transmitting the disease to one or more members of their households.  By insisting on an

4  in-person trial, defendants propose to produce the very harm they wish to avoid, namely

5  skewing the jury pool by inhibiting persons who reside outside the immediate radius of

6  the courthouse from serving as jurors.

7        Defendants' speculation that individuals who serve on a jury remotely will be

8  preoccupied with other matters, inattentive, distracted, or otherwise not focused on the

9  testimony and other evidence is not consistent with the data acquired over the course of

10 the virtual trials completed to date.  Jurors are acutely aware that they can be seen in the

11 gallery windows on the ZoomGov platform, and they are actually more likely to stay

12 engaged during remote proceedings than they would during in-person trials.  _See_ Cara

13 Salvatore, Law360 (Feb. 9, 2021), https://www.law360.com/articles/1353728/clear-

14 exhibits-abrupt-goodbyes-life-as-a-zoom-juror [hereinafter "Law360"] (indicating that a

15 recent juror described the virtual experience as better "in almost all respects" than his

16 prior jury service in a courtroom, but identified as a "downside" that he "felt compelled

17 to keep [his] face pointed at the camera the entire time so it was clear [he] was paying

18 attention," whereas in a physical courtroom, he could "occasionally look around the room

19 and out the windows").

20       Having foreseen defendants' objections, however, the Court has adopted "robust

21 procedures" to "monitor jurors" and ensure that they remain connected to the ZoomGov

22 session, are watching the proceedings, and do not show signs of fatigue or other distress.

23

ORDER FOR VIRTUAL CIVIL JURY TRIAL - 9

1    *See Liu*, 2020 WL 8465987, at *3.  These protocols have successfully identified instances

2    during which jurors unexpectedly lost connectivity and, as a result, the Court was able to

3    halt the trial until the juror or jurors could be re-admitted to the virtual courtroom.  These

4    types of interruptions were much less prevalent in the more recent trial, perhaps as a

5    function of improvements made by the videoconferencing platform and/or Internet

6    service providers, but they are expected to occur, and the Court has the means and

7    expertise to handle them.  Of course, in-person trials also have their share of disruptions

8    (for example, fire alarms or drills, illness of a participant, inclement weather, power

9    failures, etc.), and litigants must be prepared to adjust accordingly regardless of how the

10   proceedings are conducted.

11         Defendants also contend that virtual methods limit social interaction among jurors.

12   In a feedback session after the Court's first remote trial, jurors identified this issue, and

13   the Court has since taken steps to address it.  As explained by a juror in the more recent

14   trial:

15         The jury was asked to connect to the Zoom call up to 30 minutes prior to
           resumption of the trial each day.  Clerks stated at least once that this was so
16         that jurors could get to know each other.  Items behind jurors (pets, posters,
           guitars, etc.) provided great starting points for conversation.  Socialization
17         wasn't as good over Zoom as it was for me in person at the prior trial, but
           the duration for this trial was much shorter, so that's expected.  I feel like
18         socialization was in a good place prior to deliberations.

19   Law360, *supra*.  In this case as well, jurors will have an adequate opportunity to become

20   acquainted prior to deliberations.

21         Defendants have expressed concerns about their counsel and litigation staff being

22   in close quarters during the course of trial if the matter proceeds virtually.  The Court

23

ORDER FOR VIRTUAL CIVIL JURY TRIAL - 10

1   does not understand how the interaction among counsel and litigation staff would be any

2   different or safer if the proceedings occurred in a courtroom, in which counsel and

3   litigation staff would congregate together, while perhaps also occasionally occupying one

4   of the small, windowless conference rooms adjacent to the courtroom.  A remote trial

5   provides counsel and litigation staff the options of being in different rooms or buildings,

6   and reduces their exposure to other individuals, including plaintiffs' attorneys and their

7   assistants, witnesses, jurors, court staff, and security personnel.

8          Another issue raised by defendants involves the manner in which various King

9   County Sheriff's deputies might wish to testify by, for example, physically demonstrating

10  the actions they took on the day Tommy Le was killed.  Defendants are encouraged to

11  explore technological solutions.  The attorneys in the most recent trial used multiple

12  cameras with different lens types to either show an individual standing while speaking or

13  zoom in on a tiny component of a physical piece of evidence.  The litigants in the first

14  trial played video-recorded footage of the scene of an accident, while asking a witness to

15  narrate.  Rather than diluting the impact of visual evidence, as defendants suggest,

16  ZoomGov offers opportunities for presenting illustrative information in a more intimate

17  way, and all counsel should consider the full range of possibilities.

18         With respect to the formality of the judicial process, defendants' assertion that

19  virtual trials lack sufficient decorum has no merit.  All participants, including the jurors,

20  in the remote trials conducted to date have comported themselves in the same manner as

21  they would were they in a physical courtroom.  They have used the appropriate level of

22  formality in addressing each other and the Court, and have taken seriously the oaths

23

1   sworn to serve as legal representatives for their clients, as witnesses, or as jurors.  To

2   uphold the dignity of the Court, the presiding judge has worn a robe, and court personnel

3   have used, as backgrounds for their ZoomGov windows, depictions of the Court's bench,

4   containing the district's seal and the flag of the United States.  If anything, defendants'

5   proposal to allow most witnesses to testify remotely, while a few testify in person, would

6   detract from the decorum of the Court by suggesting that some witnesses (namely, those

7   employed by King County) are more important than others.  *See* *Guardant Health, Inc. v.*

8   *Found. Med., Inc.*, No. 17-1616, 2020 WL 6120186, at *2 (D. Del. Oct. 16, 2020).

9   Adopting such plan would unfairly prejudice plaintiffs, *see id.* at *2 n.3, who raise

10  legitimate concerns that jurors who were required to attend trial at the courthouse in the

11  wake of COVID-19 might already feel resentment towards plaintiffs.

12  **<u>Conclusion</u>**

13          For the foregoing reasons, the Court has concluded that "good cause in compelling

14  circumstances" justify conducting this trial via a videoconferencing platform, that

15  "appropriate safeguards" for doing so are in place, and that a continuance of the trial date

16  is unnecessary and would be prejudicial to plaintiffs.  The applicable procedures and

17  protocols for the virtual trial will be set forth in a separate order.

18          IT IS SO ORDERED.

19          The Clerk is DIRECTED to send a copy of this Order to all counsel of record.

20          Dated this 8th day of March, 2021.

21

22                                          Thomas S. Zilly
                                            United States District Judge

23