Judge Thomas S. Zilly
Trial Date: 04-19-20

IN THE U.S. DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

BAO XUYEN LE, as Personal Representative of the Estate of Tommy Le; HOAI "SUNNY" LE; and DIEU HO,

Plaintiffs,

v.

REVEREND DR. MARTIN LUTHER KING, JR. COUNTY; and KING COUNTY DEPUTY SHERIFF CESAR MOLINA,

Defendants.

NO. 2:18-cv-00055-TSZ

**PLAINTIFFS' SUPPLEMENTAL MOTIONS *IN LIMINE***

Note on motion calendar for 04-02-21

## I. ATTORNEY CERTIFICATION

Plaintiffs' counsel certifies that on March 18, 2021, Philip G. Arnold and Jeffrey M. Campiche met and conferred by telephone with Defendant King County's Sr. Prosecuting Attorneys, Daniel Kinerk and Carla Carlstrom, and Defendant Molina's attorney, Timothy Gosselin regarding Plaintiffs' and Defendants' Motions *in Limine*. The following motions are ones upon which counsel could not reach agreement.

## II. RELIEF REQUESTED PLAINTIFFS' MOTION *IN LIMINE* – No. 1
### Re: Hernandez's 911 Call

**The Court should exclude the 911 call made by Kevin Hernandez pursuant to Fed. Evid. Rule 403 as its prejudicial effect, its tendency to suggest decision on an improper, emotional basis, outweighs its relevance.**

PLAINTIFFS' SUPPLEMENTAL MOTIONs *IN LIMINE* - 1
NO. 2:cv-18-00055-TSZ

CAMPICHE ARNOLD, PLLC
111 Queen Anne Avenue N., Suite 510
Seattle, WA 98109
TEL: (206) 281-9000
FAX: (206) 281-9111

### III.  BACKGROUND AND FACTS
### Re:  Hernandez's 911 Call

Kevin Hernandez is one of several people who called 911 regarding Tommy Le ("Tommy") shortly before Tommy was shot to death by Defendant Molina.  Plaintiffs believe that Defendants will attempt to introduce as evidence the audio of Hernandez's call[1] in order to demonstrate that Tommy Le was so dangerous that shooting him was reasonable.  Hernandez claims in this 911 call that he "is reporting a man with a knife," and that "he tried to stab me."[2]  It has become abundantly clear that Tommy did not, at any time, have a knife, and this information is false.  This call was never heard by Deputy now Detective Molina or any other deputy present at the scene where Tommy was shot. It is evident from the call that Hernandez was extremely emotional and agitated, but the evidence shows that this agitation, emotion, and fear was due in part from the actions of another witness, Zach Schwiethale.

Hernandez lived in a house on 3rd Ave., several blocks south of the house on 3rd Ave. where Tommy had been living.  Hernandez was sitting in his living room, talking with his mother, shortly before midnight, June 13, 2017.  From his police statement, "I heard, uh, someone knock on my door. A gentle knock at first.  And um I was, when I was about to um get up from my couch to go to the door um there was three loud bangs.  BAM, BAM, BAM, let me in!"[3]

```
      And then literally, like, as, like, it happened so
13 quickly, it was like knock, knock, knock, and then it was,
14 like, boom, boom, boom, boom, boom, like, you know, my door
15 was getting pounded down, like police or something, you
16 know. Just someone's trying to get into my house.[4]
```

---

[1]  Arnold Decl. Exh. A (Hernandez 911 audio).
[2]  Id. at Exh. B p.2 (Hernandez verbatim transcript of 911 call).
[3]  Id. at Exh. C. p.3 (Hernandez police statement).
[4]  Id. at Exh. D.p.19:10-16 (Hernandez deposition).

PLAINTIFFS' SUPPLEMENTAL
MOTIONs IN LIMINE           - 2
NO. 2:cv-18-00055-TSZ

CAMPICHE ARNOLD, PLLC
111 Queen Anne Avenue N., Suite 510
Seattle, WA 98109
TEL: (206) 281-9000
FAX: (206) 281-9111

1   Hernandez was not expecting any visitors.[5]  Fearing someone was trying to break in, Kevin woke his family and told his wife "to grab the kids and get inside like the room, the back room." [6] Kevin testified that he went into "**protective mode**" after hearing the pounding on his door.[7] "[T]hat was my first initial reaction, was to get my family to be safe…"[8]

When asked how long it took him to secure his family, Kevin testified:

```
    I couldn't tell you, honestly; it just happened so
19 quickly. It's, you know -- like, it's just instinct. Like,
20 you, you feel danger or you un- -- or just -- you just don't
21 know what's going on, right? And it's an aggressive sound,
22 so I just rushed, you know. I honestly couldn't tell you,
23 like, a time frame.
```
[9]

Kevin got out his handgun. "I always um carry, um concealed carry so my concealed carry was on me."[10]

```
    I always carry, you
20 know, before I go to bed, and then that's when I lock my
21 stuff in my safe. But it's just a habit to always carry. I
22 mean, that's, that's what I do.
```
[11]

Hernandez's need to carry a gun may be the result living in a neighborhood where "we get a lot of commotions, you know shouting, yelling and every two weeks or so we about two or three gun shots or something like that." And "We have a lot of homeless people that campout and stuff on the, uh along 136th uh, right by 4th and stuff over here."[12]

---

[5]  *Id.* at Exh. D.p.17:1-4 (Hernandez deposition).
[6]  *Id.* at Exh. C. p.10 (Hernandez police statement).
[7]  *Id.* at Exh. D.p.19:22-23 (Hernandez deposition).
[8]  *Id.* at Exh. D.p.20:12-13 (Hernandez deposition).
[9]  *Id.* at Exh. D.p.20:18-23 (Hernandez deposition).
[10] *Id.* at Exh. C. p.3 (Hernandez police statement).
[11] *Id.* at Exh. D.p.24:19-22 (Hernandez deposition).
[12] *Id.* at Exh. E. p.1-2 (Rice police statement).

PLAINTIFFS' SUPPLEMENTAL
MOTIONs *IN LIMINE*       - 3
NO. 2:cv-18-00055-TSZ

CAMPICHE ARNOLD, PLLC
111 Queen Anne Avenue N., Suite 510
Seattle, WA 98109
TEL: (206) 281-9000
FAX: (206) 281-9111

The person actually banging on his front door was a friend, Zach Schwiethale. Schwiethale had not told Hernandez that he was going to drop by.[13] Schwiethale never yelled out to identify himself as he pounded on the door. Instead, Schwiethale ran off.

Schwiethale was dropping in, unannounced,[14] to apologize for dropping in, unannounced, earlier in the evening. Schwiethale had parked his car and approached Hernandez's front door. Schwiethale then saw Tommy Le who was coming southbound on 3rd Ave. and heard Tommy yell "I'm the creator.[15] Schwiethale described Tommy as "clearly deranged." Schwiethale went to Hernandez's door and knocked a few times, then started pounding on the door.[16] Schwiethale then ran away, southbound on 3rd Ave. Tommy followed Schwiethale a bit and then continued to trot south on 3rd. Schwiethale then called 911.[17]

In the 911 call Schwiethale says "I am following a man running on the road with a knife or something in his hand." And the operator says "Why are you following him if he has a weapon, sir? The operator asks, "And he threatened you?" Schwiethale says, "Yeah, he started coming towards me." There is the sound of heavy breathing and Schwiethale tells the operator that "he started coming towards me." And then "I'm running away from him now."[18] Schwiethale apparently sees Hernandez outside his front door and yells "Hey, there's a dude, he has a fucking knife."[19] Hernandez saw Schwiethale from his front yard, then saw Tommy who was "quite a feet (sic) behind him.".[20] For

---

[13] *Id.* at Exh. D.p.17:1-2 (Hernandez deposition).
[14] *Id.* at Exh. F.p.11:22-24 (Schwiethale deposition).
[15] *Id.* at. Exh. G. p.2 (Schwiethale police statement).
[16] *Id.* at Exh. C. p.3 (Hernandez police statement).
[17] *Id.* at Decl. Exh. H (Schwiethale 911 audio, Exh I (Schwiethale 911verbatim transcript).
[18] *Id.* at Decl. Exh. I p. 2 (Schwiethale 911verbatim transcript).
[19] *Id.* at Decl. Exh. I p. 2 (Schwiethale 911verbatim transcript).
[20] *Id.* at Decl. Exh. D.p.23:16-19 (Hernandez deposition).

PLAINTIFFS' SUPPLEMENTAL
MOTIONs *IN LIMINE*  - 4
NO. 2:cv-18-00055-TSZ

CAMPICHE ARNOLD, PLLC
111 Queen Anne Avenue N., Suite 510
Seattle, WA 98109
TEL: (206) 281-9000
FAX: (206) 281-9111

unknown reasons, Schwiethale does not run to Hernandez's house but continues to run past, northbound.[21]

Kevin states he "saw [Tommy] with the knife in his hand as he got closer to the street."[22] "And in his right hand, he, he had a -- he had a sharp -- it was a blade. I saw it; it was a knife."[23] Hernandez is convinced that Tommy had a knife. Kevin insists he saw the knife again, after Tommy was shot, in Tommy's hand.[24]

According to Dr. Crump, Defendants' Human Factors expert:

> Expectations can be set relatively easily, such that **perception of an object or scene is affected by information received immediately prior to viewing**. Specifically, repeated presentations of a given stimulus (i.e., a knife) tend to facilitate future perception and identification of that stimulus.[163] This phenomenon is termed "perceptual priming." While perceptual priming may be considered primarily the result of focusing attention on expected stimuli, studies of brain activity during perceptual priming have found that the effect actually alters visual processing entirely: neural activity in visual areas is reduced in response to these priming cues, indicating that people who have been primed process less of a given visual scene as they direct their visual search. Priming can also increase the likelihood that something is perceived, even if nothing was there.
>
> \*\*\*
>
> **It is well-documented that, when confronted with ambiguous situations or objects, individuals with high levels of anxiety are likely to respond as if the ambiguous object is actually threatening to them.**[25]

Tommy began to approach Hernandez who told him to drop the knife, that he felt threatened, that he was armed, but Tommy kept approaching[26] so Hernandez fired a round into the ground. This caused Tommy to approach even faster and Hernandez retreated into his house, thankful that the front door was not locked.

---

[21] *Id.* at Decl. Exh. D.p.26:2-7 (Hernandez deposition)..
[22] *Id.* at Decl. Exh. C. p.4 (Hernandez police statement).
[23] *Id.* at Decl. Exh. D.p.32:3-6 (Hernandez deposition).
[24] *Id.* at Exh. C. p.22 (Hernandez police statement).
[25] *Id.* at Exh J p13-14 (Crump report).
[26] *Id.* at Exh. C. p.4 (Hernandez police statement).

**PLAINTIFFS' SUPPLEMENTAL MOTIONs *IN LIMINE* - 5**
NO. 2:cv-18-00055-TSZ

**CAMPICHE ARNOLD, PLLC**
111 Queen Anne Avenue N., Suite 510
Seattle, WA 98109
TEL: (206) 281-9000
FAX: (206) 281-9111

Concerned for the safety of Schwiethale [27] Hernandez came back out and saw that Tommy was going North on 3rd and that Schwiethale was across the street. Hernandez called 911

Kevin's emotional state when he made this call was the result in part to the fear and panic Hernandez felt when Schwiethale pounded on Hernandez's door and then ran away. It is caused in part by Schwiethale's shout that Tommy "has a fucking knife" even though Schwiethale is telling the 911 operator that he does not really know what is in Tommy's hand. It was caused in part by Hernandez's decision to fire his gun in a residential neighborhood. And it was caused in part by Tommy behaving in a bizarre manner and holding his fist as if he were carrying something.

### IV. LAW & ARGUMENT – Re: Hernandez's 911 Call

Fed. Evid. R. 403 provides that "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.[28]

1. Unfair prejudice. 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (citing advisory committee notes). One commentator has argued that unfair prejudice should be seen not as a matter of emotion, but of erroneous inferences that undermine the goal of the rules to promote accurate fact finding and fairness. *See* Victor J. Gold, *Federal Rule of Evidence 403: Observations on the Nature of Unfairly Prejudicial Evidence,* 58 Wash. L. Rev. 497 (1983).

---

[27] Arnold Decl. Exh. C. p.6 (Hernandez police statement)
[28] Plaintiffs do not concede that the audio of Hernandez's 911 is even relevant to "the totality of the circumstances".

**PLAINTIFFS' SUPPLEMENTAL MOTIONs *IN LIMINE*** - 6
NO. 2:cv-18-00055-TSZ

**CAMPICHE ARNOLD, PLLC**
111 Queen Anne Avenue N., Suite 510
Seattle, WA 98109
TEL: (206) 281-9000
FAX: (206) 281-9111

In *Larez v. City of Los Angeles,* 946 F.2d 630, 637-38, 34 Fed. R. Evid. Serv. 1103 (9th Cir. 1991), where Plaintiffs alleged abuse of constitutional rights and excessive force in the execution of a search warrant, Defendant police officers contended that they were prejudiced by the court's refusal to let them explain that they wished to have a SWAT team serve the search warrant to rebut the inference that Defendants were on a personal vendetta.  The trial court's exclusion of was upheld.  "[I]ts admission may have been unfairly prejudicial under Fed. R. Evid. 403, as it implied that the [plaintiffs] were especially dangerous. Excluding this evidence, therefore, was not an abuse of discretion."  See also, *United States v. Gonzalez-Flores*, 418 F.3d. 1093, 1099 (9th Cir. 2005), where evidence that a smuggler of illegals had caused severe injuries of heat stroke and dehydration was not admitted as the evidence might "trigger an emotional response" of sympathy to the victims and a desire to punish the defendant, and had slight probative value to the issues.  "Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *United States v. Hitt,* 981 F.2d 422, 424 (9th Cir.1992).

In *City of Auburn v. Hedland.* 165 Wash.2d 645 (2009), the Court held that it was error to admit a 911 call describing the aftermath of a horrendous automobile crash that resulted in multiple deaths.

> Admission of the 911 tape was an abuse of discretion because the recording was inflammatory and of dubious probative value. The caller was excited, exaggerated the circumstances, and described a gruesome scene.

> The use of the caller's assertion, repeated no less than five times during the call, that someone had been decapitated appears calculated to inflame the passions of the jury, especially since it was conceded to be untrue… *see also State v. Pendergrass,* 179 Mont. 106, 111–12, 586 P.2d 691 (1978) (holding trial court abused its discretion in admitting rape victim's 911 call because the "emotional and nearly incoherent outpourings of the victim in the immediate aftermath of a violent crime" necessarily induced a feeling of outrage against the defendant).

*Id,* at 654.

**PLAINTIFFS' SUPPLEMENTAL MOTIONs *IN LIMINE*** - 7
NO. 2:cv-18-00055-TSZ

**CAMPICHE ARNOLD, PLLC**
111 Queen Anne Avenue N., Suite 510
Seattle, WA 98109
TEL: (206) 281-9000
FAX: (206) 281-9111

2. Mislead the jury. Evidence that would mislead the jury (e.g., by creating a false impression or giving a distorted representation of the facts) should be excluded if that risk substantially outweighs the probative value of the evidence.

3. Undue Delay, Waste of Time, Cumulative Evidence. Finally, relevant evidence that is otherwise admissible and probative should be excluded if its value is substantially outweighed by considerations of undue delay, waste of the court's or the jury's time, or because the evidence is needlessly cumulative in light of other evidence already introduced. Introduction of the audio of Hernandez's 911 call will result in a mini trial regarding all of the above factual circumstances that preceded the 911 call.

### V. CONCLUSION – Re: Hernandez's 911 Call

The Hernandez 911 call is inflammatory in its emotional tone and created in part by Mr. Schwiethale's actions paying the late night and unannounced visit to Mr. Hernandez's home. The 911 call was not heard by Defendant Deputy Molina. Its slight probative value, if any, is substantially outweighed by the prejudice it creates inviting the jury to react emotionally overlooking the facts of this case. Plaintiffs respectfully request the Court to exclude this 911 call from the evidence of this case.

### VI. RELIEF REQUESTED PLAINTIFFS' MOTION *IN LIMINE* – Motion 2
### Re: Goodwill and Harborview Records

Relying on Fed. R. Evid. 802 and 805, Plaintiffs seek an Order in *Limine* excluding reference to the following out of court statements attributed to Tommy Le:

1. Tommy Le's checked statement box in Seattle Goodwill Voluntary Employee Self Identification Survey, which says "I am or was homeless/transient";[29] and,

---

[29] Counsel's Decl., Exh. L, PLTFs No. 28:8-9 (excerpts of Seattle Goodwill Industries, July 24, 2016 Seattle Goodwill Voluntary Employee Self Identification Survey).

PLAINTIFFS' SUPPLEMENTAL
MOTIONs *IN LIMINE* - 8
NO. 2:cv-18-00055-TSZ

CAMPICHE ARNOLD, PLLC
111 Queen Anne Avenue N., Suite 510
Seattle, WA 98109
TEL: (206) 281-9000
FAX: (206) 281-9111

2. Several statements attributed to Tommy Le by Harborview Medical Center social workers and doctors regarding the frequency of his contact with his mother or parents, specifically:

   a. "Patient reports his parents are divorced and he has not seen his mother in years";[30]
   b. "Pt reports that prior to this hospitalization he had not seen his mom for four years";[31]
   c. "Pt reports and prior to that it was maybe once a year";[32] and,
   d. "…does not see parents regularly."[33]

## VII.  BACKGROUND AND FACTS Re:  Goodwill and Harborview Records

Plaintiffs seek an order to exclude the following out-of-court statements: (1) Tommy's checked statement box in Seattle Goodwill Voluntary Employee Self Identification Survey;[34] and, (2) several statements attributed to Tommy by Harborview Medical Center social workers and doctors regarding the frequency of his contact with his mother or parents.

Tommy applied for employment at Seattle Goodwill Industries ("Goodwill") on July 24, 2016.[35] Goodwill asks several questions relating to the applicant's "Potential Barriers." Tommy checked the box that stated "I am or was homeless/transient"[36] in "Seattle Goodwill Voluntary Employee Self Identification Survey" or the job application form.

Tommy was taken by his Grandma Kim Tyut Le on March 27, 2014 to Harborview Medical Center's Emergency Department, admitted and where he was later diagnosed and treated for gastrointestinal bleeding.  Tommy's father Plaintiff Hoai "Sunny" Le was in Vietnam at the time and

---

[30] *Id,* at Exh. L, (Harborview Medical Center, March 27, 2014 Emergency Department (ED) and social worker chart notes at PLTFs 33C:69-70 chart note excerpts, Lindsay Bedard MSW).
[31] *Id,* at Exh. L, (at PLTFs 33C:82-84 Social Work Assessment, Bianca Quesada LICSW/MSW).
[32] *Id.*
[33] *Id.* at Exh. L, (at PLTFs 33C:77, March 28, 2014 Pediatric ICU Progress Note, Helen Chea, MD and Mary King MD).
[34] *Id.* at Exh. K (July 24, 2016 Seattle Goodwill Job Application/Survey at PLTFs 28:8-9).
[35] *Id.*
[36] *Id.*

**PLAINTIFFS' SUPPLEMENTAL MOTIONs *IN LIMINE*** - 9
NO. 2:cv-18-00055-TSZ

**CAMPICHE ARNOLD, PLLC**
111 Queen Anne Avenue N., Suite 510
Seattle, WA 98109
TEL: (206) 281-9000
FAX: (206) 281-9111

his mother Plaintiff Dieu Ho was called in because of his medical emergency and for her to approve admission and treatment as Tommy was then a minor.[37]

Tommy was treated at Harborview Medical Center Pediatric Intensive Care Unit on March 27, 2014 for the diagnosis of "[u]pper gastrointestinal hemorrhage, likely associated with a gastric ulcer."[38] Based on this assessment, the Department of Gastroenterology evaluated Tommy for "melena and significant anemia."[39] The non-medical, social workers charted several statements attributed to Tommy relating to the frequency of his contacts with his mother:

1. "Patient reports his parents are divorced and he has not seen his mother in years";[40]

2. "Pt reports that prior to this hospitalization he had not seen his mom for four years";[41] and

3. "Pt reports and prior to that it was maybe once a year."[42]

In addition, two doctors charted the following statement attributed to Tommy: "…does not see parents regularly";[43] All of these statements occurred in the course of diagnosing and treating Tommy for his gastrointestinal bleed.

Defendants' counsel referred to these statements from the medical records during Ms. Ho's deposition of March, 2019 and she testified that the statement that Tommy had not seen his mother for years was incorrect.[44]

---

[37]  *Id.* at Exh. L (at Harborview Medical Center at PLTFs 33C:53. Admission note, Zimmerman, MD).
[38]  *Id.* at Exh. L (at Harborview Medical Center, PLTFs 33C:54).
[39]  *Id.* at Exh. L (Harborview Medical Center, March 27, 2014 GI Initial Consult Note, Jason Harper and Bryan Balmadrid MDs, at 33C:56).
[40]  *Id.* at Exh. L (Harborview Medical Center, March 27, 2014 Emergency Department (ED) chart note Bedard MSW, at PLTFs 33C:69-70).
[41]  *Id.* at Exh. L (Harborview Medical Center, March 28, 2014 Social Work Assessment, Quesada LICSW/MSW, at PLTFs 33C:82).
[42]  *Id.*
[43]  *Id.* at Exh. L (March 28, 2014 Pediatric ICU Progress Note, Chea and King, MDs, at PLTFs 33C:77).
[44]  *Id.* at Exh. M (Depo excerpts from Dieu Ho, Tommy's mother, and Exh. 2 (Harborview chart note).

PLAINTIFFS' SUPPLEMENTAL MOTIONs *IN LIMINE* - 10
NO. 2:cv-18-00055-TSZ

CAMPICHE ARNOLD, PLLC
111 Queen Anne Avenue N., Suite 510
Seattle, WA 98109
TEL: (206) 281-9000
FAX: (206) 281-9111

### VIII.  LAW AND ARGUMENT Re:  Goodwill and Harborview Records

"Hearsay" means a statement that "the declarant does not make while testifying at the current trial" and, that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Under Rule 802, "[h]earsay is not admissible unless any of the following providers otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed. R. Evid. 802. Hearsay statements must meet an exception under Rule 803 or Rule 804 to be admissible. In addition, Rule 805 provides that hearsay within hearsay is inadmissible if any part of the combined statement fails to conform with an exception to the rule. Fed. R. Evid. 805.  Any portions of the hearsay within hearsay that do not conform with an exception can be redacted.

**1. This Court should exclude Tommy Le's marked statement in his job application form because the statement fails to fall under "Statement of Personal or Family History" under Rule 804(b)(4).**

Rule 804(b)(4) qualifies as a hearsay exception a statement about "the declarant's own birth, adoption, legitimacy, ancestry, marriage, divorce, relationship by blood, adoption, or marriage, or similar facts of personal or family history." Fed. R. Evid. 804(b)(4). The focus of Rule 804(b)(4) is narrow. "It is not enough that a fact is personal or that it is important." § 7013 Interpretation and Application of the Rule 804(b)(4) Exception, 30B Fed. Prac. & Proc. Evid. § 7013 (2020 ed.). For example, a person's "blood type," "work history,"  "criminal alias," or, "educational background and qualifications" do not qualify for admission under Rule 804(b)(4). *Id.* Rule 804(b)(4) encompasses statements that relate only to matters of "pedigree," such as "the dates of a birth, marriage, or death, and the fact and degree of family relationships." *Vega-Alvarado v. Holder*, No. CV 09-5591-RSWL AJWX, 2011 WL 333101, at *4 (C.D. Cal. Jan. 28, 2011). Courts have denied statements concerning circumstances and backgrounds of a declarant's pedigree as "statements of personal or family history."

The out of court statement in the job application that Tommy was "homeless" fails to fall within the confines of 804(b)(4) Statement of Personal or Family History. This out of court statement does not

PLAINTIFFS' SUPPLEMENTAL
MOTIONs *IN LIMINE*     - 11
NO. 2:cv-18-00055-TSZ

CAMPICHE ARNOLD, PLLC
111 Queen Anne Avenue N., Suite 510
Seattle, WA 98109
TEL: (206) 281-9000
FAX: (206) 281-9111

pertain to his "pedigree" or family lineage. Rather, the statement is more like Tommy's current or prior financial circumstances than his pedigree. Hence, Tommy's marked box sentence falls outside the scope of Rule(b)(4). This Court should exclude Tommy's marked box statement in the Survey as inadmissible hearsay.

**2. This Court should exclude several statements attributed to Tommy by Harborview Medical Center social workers and doctors because those statements are not pertinent to "medical diagnosis or treatment" under Rule 803(4).**

Under Rule 803(4), two prongs must be satisfied to meet the medical diagnosis and treatment hearsay exception. A statement must be "reasonably pertinent to" medical diagnosis or treatment; and the statement must describe "medical history, past or present symptoms or sensations, their inception, or their general cause." Fed. R. Evid. 803(4). A declarant's statement "[g]enerally considered not pertinent to medical purposes…are such things as the identity of the inflictor of the wound, the place of occurrence, and the like, in contradistinction to what happened, how it happened, and what was the instrumentality." FEDRLSEV R 803 (3d ed.); The Ninth Circuit Court has characterized the out-of-court statements pertinent to medical records as statements "made for purposes of medical diagnosis or treatment and describing . . . the inception or general character of the cause or external source (of pain or symptoms) insofar as reasonably pertinent to diagnosis or treatment." *United States v. Nick*, 604 F.2d 1199, 1202 (9th Cir. 1979).

The statements attributed to Tommy by Harborview Medical Center social workers and doctors records fail to satisfy the two prong requirements under Rule 803(4) because none of those statements describes the inception, general cause, or character of the pain, the medical history, and past or present symptoms or sensations. The statements attributed to Tommy concern the frequency of Tommy's contact with his mother or parents. These statements are not reasonably pertinent to medical diagnosis or treatment particularly when Tommy's diagnosis and treatment involved physical conditions such as "[u]pper gastrointestinal hemorrhage, likely associated with a gastric ulcer." Furthermore, the

PLAINTIFFS' SUPPLEMENTAL MOTIONs *IN LIMINE* - 12
NO. 2:cv-18-00055-TSZ

CAMPICHE ARNOLD, PLLC
111 Queen Anne Avenue N., Suite 510
Seattle, WA 98109
TEL: (206) 281-9000
FAX: (206) 281-9111

following three statements were charted by the social workers: "Patient reports his parents are divorced and he has not seen his mother in years"; "Pt reports that prior to this hospitalization he had not seen his mom for four years"; and, "Pt reports and prior to that it was maybe once a year." These statements were made for social workers, who are not physicians diagnosing and treating physical injury. Therefore, the statements attributed to Tommy in his Harborview Medical Center chart notes by the social workers and doctors are inadmissible hearsay. This Court should exclude those statements.

### IX. CONCLUSION Re: Goodwill and Harborview Records

The out of court statements are inflammatory in their nature and inadmissible under Rules 802 and 805; happened in 2014 and 2016; and their slight probative value, if any, is substantially outweighed by the prejudice it creates inviting the jury to react emotionally overlooking the facts of this case. Plaintiffs respectfully request the Court to issue an order to exclude the following out-of-court statements: (1) Tommy's checked statement box in Seattle Goodwill Voluntary Employee Self Identification Survey; and, (2) several statements attributed to Tommy by Harborview Medical Center social workers and doctors regarding the frequency of his contact with his mother or parents.

RESPECTFULLY SUBMITTED March 18, 2021.

By    s/ Philip G. Arnold
Philip G. Arnold, WSBA No. 2675
Jeffery M. Campiche, WSBA No. 7592
Effect Jeffrey J. Kratz, WSBA No. 55785
CAMPICHE ARNOLD PLLC
Attorneys for Plaintiffs Le family
111 Queen Anne Avenue N., Suite 510
Seattle, WA 98109
Tele: 206.281.9000 Facsimile: 206.281.9111
Email addresses:
jcampiche@campichearnold.com
parnold@campichearnold.com
jkratz@campichearnold.com
lrichard@campichearnold.com
lharris@campichearnold.com
tlane@campichearnold.com

PLAINTIFFS' SUPPLEMENTAL
MOTIONs IN LIMINE   - 13
NO. 2:cv-18-00055-TSZ

CAMPICHE ARNOLD, PLLC
111 Queen Anne Avenue N., Suite 510
Seattle, WA 98109
TEL: (206) 281-9000
FAX: (206) 281-9111

## CERTIFICATE OF SERVICE

I certify under penalty of perjury under the laws of Washington state and the United States that I caused this pleading to be served by filing in the Court's ECF system.

Dated March 18, 2021.

By: ___*s/ Leslie S. Harris, Paralegal*___

PLAINTIFFS' SUPPLEMENTAL
MOTIONs *IN LIMINE*   - 14
NO. 2:cv-18-00055-TSZ

**CAMPICHE ARNOLD, PLLC**
111 Queen Anne Avenue N., Suite 510
Seattle, WA 98109
TEL: (206) 281-9000
FAX: (206) 281-9111