UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BAO XUYEN LE, as Personal Representative of the Estate of Tommy Le; HOAI "SUNNY" LE; and DIEU HO;

Plaintiffs,

v.

REVEREND DR. MARTIN LUTHER KING, JR. COUNTY; and KING COUNTY DEPUTY SHERIFF CESAR MOLINA,

Defendants.

C18-55 TSZ

MINUTE ORDER

The following Minute Order is made by direction of the Court, the Honorable Thomas S. Zilly, United States District Judge:

(1) Defendant King County's motion for summary judgment, docket no. 262, is DENIED for the reasons set forth below.

    (a) **Felony Bar**: In seeking dismissal of plaintiffs' negligence claim, King County relies on RCW 4.24.420, which provides "a complete defense to any action for damages for personal injury or wrongful death . . . [when] the person injured or killed was engaged in the commission of a felony at the time of the occurrence causing the injury or death and the felony was a proximate cause of the injury or death." Whether Tommy Le was committing a felony (for example, assault of a law enforcement officer, see RCW 9A.36.031(1)(g)) at the time he was fatally shot and whether any such felony was a proximate cause of his death constitute questions of fact precluding summary judgment. See *Watness v. City of Seattle*, --- P.3d ---, 2021 WL 606674, at *5-6 (Wash. Ct. App. Feb. 16, 2021); *Davis v. King County*, 479 P.3d 1181, 1187 (Wash. Ct. App. 2021); see also Fed. R. Civ. P. 56(a).

MINUTE ORDER - 1

(b) **Negligence Claim**: To prevail on a negligence claim, a plaintiff must prove (i) the defendant owed a duty; (ii) the defendant breach that duty; (iii) an injury resulted; and (iv) the breach of duty was a proximate cause of the injury. *See* Mancini v. City of Tacoma, 479 P.3d 656, 664 (Wash. 2021). King County asserts that plaintiffs cannot establish either breach or proximate cause. It contends that the applicable standard of care is set forth in RCW 9A.16.040, which provides that "[h]omicide or the use of deadly force is justifiable . . . [w]hen necessarily used by a peace officer meeting the good faith standard . . . [t]o arrest or apprehend a person who the officer reasonably believes has committed, has attempted to commit, is committing, or is attempting to commit a felony." RCW 9A.16.040(1)(c)(i). Whether Tommy Le had committed or was committing a felony at the time he was shot involves disputes of fact, and thus, summary judgment cannot be granted, regardless of whether "good faith" can be established. "Good faith" is judged by "an objective standard," considering "all the facts, circumstances, and information known to the officer at the time to determine whether a similarly situated reasonable officer would have believed that the use of deadly force was necessary to prevent death or serious physical harm to the officer or another individual." RCW 9A.16.040(4). Plaintiffs contend that the King County Sheriff's deputies involved violated this "good faith" standard by failing to formulate a tactical plan upon arrival at the scene, failing to move to positions of cover and take steps to de-escalate the situation, failing to determine that Tommy Le was experiencing a mental crisis, and failing to use less lethal force, including redeployment or re-engagement of a Taser. *See* DeFoe Report at 16-17 & 23-27 (Opinions 1, 2, 7, 8, 9, & 10), Ex. A to DeFoe Decl. (docket no. 111-1).[1] Whether deadly force was used in "good faith" in this matter involves factual issues properly reserved for a jury. *See* Beltran-Serrano v. City of Tacoma, 442 P.3d 608, 611-13 (Wash. 2019). Similarly, whether any of the alleged breaches of duty identified by plaintiffs was a "but for" proximate cause

---

[1] The Court has previously ruled that, at trial, expert witnesses will not be permitted to (i) testify about whether Deputy Sheriff Cesar Molina used lawful, reasonable, justified, or appropriate force when he shot Tommy Le on June 14, 2017; (ii) opine about which version of events is more credible or which facts actually occurred; (iii) speculate about the intent, motive, or state of mind of anyone involved, including Tommy Le and Deputy Molina; or (iv) testify about the law concerning the use of force. Minute Order at ¶ 1(a) (docket no. 195). The Court also ruled that Scott DeFoe and other experts will be permitted to testify at trial about law enforcement practices, tactics, techniques, and training, subject to the Court's rulings on any objections made during the course of their testimony. *Id.* at ¶ 1(b). In connection with the pending motions for summary judgment, neither King County nor Deputy Molina has challenged the admissibility of, or moved to strike, the opinions referenced above, and the Court has considered them in a manner that is consistent with its previous Minute Order. The Court makes no ruling at this time concerning the scope of expert testimony at trial, which defendants now seek to further limit in their recently-filed supplemental motions in limine, docket no. 291.

MINUTE ORDER - 2

(or cause in fact) of Tommy Le's death cannot be decided on summary judgment.[2] In addition, the acts on which plaintiffs premise their negligence claim are not "too remote or insubstantial" to be the "legal cause" of Tommy Le's death, and the Court "cannot preclude liability as a matter of law." See Meyers v. Ferndale Sch. Dist., --- P.3d ---, 2021 WL 822221, at *7 (Wash. Mar. 4, 2021).

(c)     *Monell* **Liability**:  The Court has previously rejected King County's argument that plaintiffs have not made a sufficient showing under Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658 (1978), and its progeny, to proceed to trial against King County on their claims under 42 U.S.C. § 1983. See Minute Order at ¶ 1(b) (docket no. 178); Minute Order at ¶ 1 (docket no. 215).  In its now pending motion, King County again contends that plaintiffs' Monell claim lacks merit.  The Court has considered the issue anew and still concludes that genuine disputes of material fact preclude summary judgment.  A municipality may not be held liable under § 1983 on a respondeat superior theory.  Monell, 436 U.S. at 691.  Instead, municipal liability must be premised on one of four theories:  (i) a policy or longstanding practice or custom from which the alleged constitutional violation resulted; (ii) an unconstitutional action by an official with final policy-making authority; (iii) ratification by an official with final policy-making authority of a subordinate's unconstitutional conduct; or (iv) a failure to adequately train employees that amounts to deliberate indifference concerning the constitutional

---

[2] In also arguing that plaintiffs cannot prove proximate cause, defendant Deputy Sheriff Cesar Molina has cited to an unpublished decision of the Washington Court of Appeals, Lacy v. Snohomish County, No. 79294-6-I, 2020 WL 5891897 (Wash. Ct. App. Oct. 5, 2020).  King County has not relied on this authority.  Lacy is procedurally and factually distinguishable.  In Lacy, the appellate court reviewed the grant of a motion for a directed verdict, issued after plaintiff had presented her evidence at trial and rested her case.  Id. at *4.  In contrast, the pending motions are for summary judgment.  In Lacy, the plaintiff had three theories of negligence:  (i) failure to immediately stage lifesaving aid; (ii) negligent escalation of the situation in a manner leading to the use of excessive force, which included a leg sweep, causing the decedent to land in a prone position in a ditch, while a deputy put weight on his back; and (iii) failure to properly administer cardiac pulmonary resuscitation (CPR).  Id. at *2 & *5.  The first and third theories and related facts bear no resemblance to those at issue in this case.  With respect to the second theory, the plaintiff in Lacy presented at trial "no evidence from which a reasonable juror could find, without speculating, that had [the deputy] used proper de-escalation tactics and not escalated the situation [by threatening to deploy his stun gun], [the decedent] more likely than not would have survived."  Id. at *7.  In contrast, in this matter, plaintiffs have offered expert opinions, which must be taken as true for purposes of summary judgment, that "if Deputy Sheriff Cesar Molina would have utilized proper cover, he may have been able to see that Mr. Tommy Le did not possess a weapon" and that, "[h]ad tactically sound procedures been applied, it is more likely than not that Mr. Tommy Le's death could have been avoided."  DeFoe Report at 18 & 20 (docket no. 111-1).  Again, the Court makes no ruling regarding defendants' pending supplemental motions in limine, docket no. 291.  See supra note 1.

MINUTE ORDER - 3

right at issue.  *See* *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005); *see also* *City of Canton v. Harris*, 489 U.S. 378, 386-92 (1989).  Plaintiffs do not appear to pursue a *Monell* claim pursuant to the second or fourth theories.  *See* Plas.' Resp. at 12-14 (docket no. 281); *see also* Stipulation and Order (docket no. 65).  With regard to the first theory, King County alleges that plaintiffs have abandoned any "policy, practice, or custom" claim, but it is mistaken.  *See* Plas.' Resp. at 6 & 8 (docket no. 212) (referring to "official policies" and "a culture where officers . . . felt they could 'get away with anything'").  A policy, practice, or custom may be inferred if, after the constitutional tort, officials "took no steps to reprimand or discharge the [tortfeasors], or if they otherwise failed to admit the [tortfeasors'] conduct was in error." *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986); *see* *Larez v. City of Los Angeles*, 946 F.2d 630, 645-48 (9th Cir. 1991); *see also* *Velasquez v. City of Long Beach*, 793 F.3d 1010, 1027-29 (9th Cir. 2015).  Ratification may also be inferred, for purposes of the third theory of *Monell* liability, from a failure to discipline for a constitutional violation, but "something more" than a "mere refusal to overrule a subordinate's completed act" is required.  *See* *Christie v. Iopa*, 176 F.3d 1231, 1239-40 (9th Cir. 1999); *Kanae v. Hodson*, 294 F. Supp. 2d 1179, 1190 (D. Haw. 2003) (describing the requisite "something more" as "holes" and "inconsistencies" in the subsequent investigation that "should have been apparent to any reasonable administrator," expert testimony that "it was nearly impossible for an officer to be disciplined as a result of a citizen complaint" and that "a unit was allowed to investigate itself," or officer conduct that was "so outrageous that a reasonable administrator should have known that he or she should do something about it"); *see also* *Thomas v. Cannon*, No. 3:15-5346, 2017 WL 2289081, at *12-13 (W.D. Wash. May 25, 2017).  Plaintiffs have offered direct evidence that Deputy Molina received no sanction for his actions and was later promoted, as well as circumstantial evidence that the investigation conducted by the King County Sheriff's Office concerning the shooting of Tommy Le was less than thorough;[3] if jurors believe plaintiffs' version of events, they might be persuaded that a reasonable administrator would have taken steps to further investigate and/or disapprove of Deputy Molina's conduct.  *See* Molina Dep. at 83:21-84:12, Ex. A to Arnold Decl. (docket no. 109-24); Hayes Report at ¶¶ 27 & 50, Ex. A to Hayes Decl. (docket no. 113-1) (indicating that the police

---

[3] In response to King County's motion, plaintiffs have proffered certain reports prepared for King County's Office of Law Enforcement Oversight ("OLEO"), Exs. K & L to Arnold Decl. (docket nos. 282-11 & 282-12), as well as deposition testimony of Deborah Jacobs, former director of OLEO, Ex. C to Arnold Decl. (docket no. 282-3).  The Court has not considered this evidence in concluding that plaintiffs have presented sufficient evidence in support of *Monell* liability to survive King County's motion for summary judgment.  King County's motion to strike, docket no. 284, is therefore STRICKEN as moot.  The Court makes no ruling at this time concerning the admissibility at trial of either the OLEO reports or Ms. Jacobs's prior statements and/or testimony.

MINUTE ORDER - 4

reports, Use of Force Review Board findings, and press releases made "no mention of . . . crucial evidence" from the autopsy report); Mulligan Dep. at 25:10-26:14, 35:24-37:22, 39:20-40:6, Ex. A to Arnold Decl. (docket no. 175-1) (identifying evidence that the Use of Force Review Board did not hear); *see also* Autopsy Report, Ex. 23B to Arnold Decl. (docket no. 109-3 at 6); Supervisor Checklist for Deputy Involved Shootings, Ex. 2 to Abbott Dep., Ex. B to Arnold Decl. (docket no. 282-2) (indicating "unknown" in response to the question of whether the "suspect" was armed); Certification (docket no. 176).[4] Plaintiffs have presented triable issues, and they may present their "policy, practice, or custom" and ratification theories for *Monell* liability to the jury.

(2)  Defendant Deputy Sheriff Cesar Molina's motion for partial summary judgment, docket no. 265, is DENIED for the reasons set forth below.

    (a)  **Negligence**: For the reasons set forth in Paragraphs 1(a) and (b), above, Deputy Molina's motion for partial summary judgment is denied as to invocation of the felony bar set forth in RCW 4.24.420 and denial of any breach of duty and proximate causation. Deputy Molina also relies on a footnote in *Briscoe v. City of Seattle*, 483 F. Supp. 3d 999 (W.D. Wash. 2020), to assert that negligence liability does not extend to individual law enforcement officers acting within the course of their employment. *Briscoe*, however, does not stand for such proposition. *Briscoe* concerned the shooting death of Che Andre Taylor. *Id.* at 1002. In *Briscoe*, plaintiffs argued that two officers (namely Audi Acuesta and Timothy Barnes) should be held individually liable because they gave inconsistent commands to Taylor before he was shot by other officers. *Id.* at 1009 n.9. Neither Acuesta nor Barnes instigated the arrest of nor fired a weapon at Taylor, and their alleged negligence in commanding Taylor to get on the ground was not itself a proximate cause of Taylor's death. As a result, the proper defendant for any negligence claim premised on the instructions given to Taylor prior to his death was the City of Seattle, who employed all the officers involved, including those who eventually shot Taylor. The present case is distinguishable. Molina was not an assisting officer like Acuesta or Barnes, but rather the person who fired the fatal rounds, and any negligence on his part would itself have the requisite link to Tommy Le's death to support tort liability. Moreover, Washington considers the liability of an employee and the vicarious liability of an employer (on a respondeat

---

[4] The certification filed by King County on May 17, 2019, docket no. 176, was signed by Erin Overbey, Chief Legal Advisor for the King County Sheriff's Office. Contemporaneously with its reply brief, King County filed a declaration by Ms. Overbey, docket no. 286, attempting to provide, for the first time, further information about internal procedures relating to the Use of Force Review Board's findings. Plaintiffs' motion to strike, docket no. 290, is GRANTED. Ms. Overbey's declaration was not timely submitted, and plaintiffs have had no opportunity to respond to it.

MINUTE ORDER - 5

superior theory) to be joint and several.  *See Johns v. Hake*, 131 P.2d 933, 935 (Wash. 1942) ("A master and his servant are jointly and severally liable for the negligent acts of the servant in the course of his employment.  The act of the servant is the act of the master.  One damaged by an act of the servant may sue both the master and the servant, or he may sue either separately."); *Howe v. N. Pac. Ry. Co.*, 70 P. 1100, 1102 (Wash. 1902).  Thus, plaintiffs' negligence claim may proceed against both Deputy Molina and King County.  With regard to Deputy Molina's separate argument that he owed no duty to Tommy Le, such assertion runs contrary to Washington law.  *See Beltran-Serrano*, 442 P.3d at 611-15; *see also Watness*, 2021 WL 606674, at *4 ("an officer owes a legal duty to exercise reasonable care when engaging in affirmative conduct toward others, whether they be crime victims or individuals suspected of committing crimes").

(b) **Qualified Immunity**:  Deputy Molina asks the Court to decide, or clarify that it has decided, the portion of his earlier motion for summary judgment in which he supposedly invoked qualified immunity as to the Fourteenth Amendment claims of Tommy Le's parents.  The Court's Minute Order entered May 24, 2019, reads as follows:

> The deferred portion of the motion for summary judgment brought by defendant King County Deputy Sheriff Cesar Molina, docket no. 87, in which he sought qualified immunity as a matter of law, is DENIED.

Minute Order at ¶ 1 (docket no. 190).  The ruling could not be more clear:  Deputy Molina's motion was denied as to qualified immunity.  The analysis explained that the questions of whether Deputy Molina used excessive force and whether he violated a "clearly established" Fourth Amendment right involve genuine disputes of material fact.  *Id.*  In a separate, earlier ruling, the Court explained how the excessive force and Fourteenth Amendment claims are interrelated:

> With regard to whether Deputy Molina used excessive force in tasering and/or shooting Tommy Le (First Cause of Action), and whether any use of excessive force deprived Le's parents of a liberty interest in the companionship and society of their son (First Cause of Action), the Court concludes that genuine disputes of material fact exist, and Deputy Molina's motion for summary judgment on those issues is DENIED . . . .

Minute Order at ¶ 2(c) (docket no. 148).  As the record reflects, the issue of qualified immunity was previously decided, and the Court's earlier rulings constitute the law of the case.

(3)     The Clerk is directed to send a copy of this Minute Order to all counsel of record.

Dated this 22nd day of March, 2021.

William M. McCool<br>
Clerk<br>
<br>
s/Gail Glass<br>
Deputy Clerk

MINUTE ORDER - 7